ROCK ISLAND, IL

2004 FEB 20  A 10:09

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF IOWA

DAVENPORT DIVISION

| | | |
|---|---|---|
| ROBERT W. KRAMER, III | ) | |
| d/b/a CIS INTERNET SERVICES, | ) | |
| Plaintiff. | ) | |
| | ) | |
| v. | ) | Case No. 3:03 CV 80109 |
| | ) | |
| JOHN DOES 1-300, | ) | |
| Defendants. | ) | FIRST AMENDED COMPLAINT |
| | ) | |

## FIRST AMENDED COMPLAINT

## FOR INJUNCTION AND DAMAGES

Plaintiff Robert W. Kramer d/b/a CIS Internet Services ("CIS") hereby files this First

Amended Complaint for Injunction and Damages, identifying certain of the John Doe

defendants, whose wrongful acts have, individually and in combination, caused  and, on

information and belief, are continuing to cause substantial and irreparable harm to CIS.  CIS

hereby incorporates by reference the entirety of its original Verified Complaint, a copy of which

is attached hereto as Exhibit A and replaces Paragraph 1 thereof with the following:

### Jurisdictional Allegations

Plaintiff CIS Internet Services is a sole proprietorship owned and operated by Robert W.

Kramer III with a principal place of business at 2423 North 3rd St., Clinton, IA 52732 and with

## DEFENDANTS

Cash Link Systems, A Florida Corporation

AmeriP.O.S., Inc., A Florida Corporation

OTB Products, A Florida Corporation

AMP Dollar Savings, Inc. d/b/a MortgageLeads.tv d/b/a Leads.tv, an Arizona Corporation

Al Gold d/b/a New Century, Inc., A California Corporation

Bob F. Fresnahan, a Florida Corporation

MoneyNest Holdings, Inc. d/b/a MoneyNest.com, a California Corporation

James McCalla a/k/a James McNully a/k/a webgost79@yahoo.com a/k/a "Mr. James MC"
      d/b/a JMC Internet Marketing d/b/a JM Internet Marketing, a Florida Corporation

Damon Decrescenzo, a Florida Corporation

Healthstop, Inc. d/b/a Health Stop Shop, a Minnesota Corporation

Michael Moebeck, a Minnesota resident

Joseph Ingersoll, a Minnesota resident

Internet Services Zocalo, Inc., a California Corporation

GZ Media, Inc. d/b/a 24/7 Downloads, a New York Corporation

Debt Solutions, Inc., a Florida Corporation

TEI Marketing Group, Inc. a Florida Corporation

Sal Santoro, a Kentucky resident

Janet Smith, a Kentucky resident

Tom Smith, a Kentucky resident

John Doe 20, a Kentucky resident, using e-mail address jkclearl@ruse.net

Frank Sperry, a Kentucky resident

National Credit Systems, Inc. a New York Corporation

Jerry Poole, a Florida resident

Carmen Lyman a/k/a Carmen Rodriguez, a Massachusetts resident

users located in Iowa and other states. Defendants, whose names and identities were not initially known, committed illegal acts intended to and that did cause harm to CIS in the State of Iowa. CIS has learned the identities of certain of these John Doe Defendants and identifies them in this First Amended Complaint.  CIS shows that the below-named defendants maintained systematic and continuous contacts with Iowa via the below-described e-mail and Internet-related crimes and schemes.  These Defendants are also subject to jurisdiction pursuant to, among other sources, the Iowa Long-Arm Statute, Iowa Code § 617.3, the Iowa anti-spamming/spoofing statute, Iowa Code § 714E.1, and the principles set forth in <u>Calder v. Jones</u>, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984).  These Defendants are identified as follows:

(a)

John Doe 1 is hereby identified as Cash Link Systems, a Florida corporation which may be served through its registered agent, Alan Levine, at its registered office at 10800 Biscayne Blvd. #600, Miami, Florida 33161.

(b)

John Doe 2 is hereby identified as AmeriP.O.S., Inc. a Florida corporation which may be served through its registered agent, Richard Nye, at its registered office at 1250 East Hallendale Blvd., Suite 505, Hallandale, Florida 33009.

(c)

John Doe 3 is hereby identified as OTB Products, a Florida corporation which may be served through its registered agent, Kevin M. Brinkworth, at its registered office at 12399 Belcher Road South, Suite 160, Largo, Florida 33773.

(d)

John Doe 4 is hereby identified as AMP Dollar Savings, Inc. d/b/a MortgageLeads.tv d/b/a Leads.tv, an Arizona Corporation which may be served through its registered agent, Gary C. Brown, at its registered office at 6616 E. Mountain View Rd., Scottsdale, Arizona 85253.

(e)

John Doe 5 is hereby identified as Al Gold d/b/a New Century, Inc., a California resident whose address is 1144 N. Orange Grove #14, Los Angeles, California 90046.

(f)

John Doe 6 is hereby identified as Bob F. Bresnahan, a Florida resident whose address is 2900 Banyon Street #405, Ft. Lauderdale, Florida 33316.

(g)

John Doe 7 is hereby identified as MoneyNest Holdings, Inc. d/b/a MoneyNest.com, a California corporation which may be served through its registered agent, Douglas Tokarik, at its registered office at 4151 Udall St., Suite 2, San Diego, California 92107.

(h)

John Doe 8 is hereby identified as James McCalla a/k/a James McNully a/k/a "webgost79@yahoo.com" a/k/a "Mr. James MC" d/b/a JMC Internet Marketing d/b/a JM Internet Marketing, a Florida resident whose address is 7200 NW 179th Street, Miami, Florida, 33101.

(i)

John Doe 9 is hereby identified as Damon Decrescenzo, a Florida resident whose address is 1000 West Avenue, Miami Beach, Florida, 33139-4759.

(j)

John Doe 10 is hereby identified as Healthstop, Inc. d/b/a Health Stop Shop, a Minnesota Corporation which may be served through its officers at its principal place of business, 155 5th Avenue South, Suite 150, Minneapolis, Minnesota, 55401.

(k)

John Doe 11 is hereby identified as Michael Moebeck, a Minnesota resident who may be served at 155 5th Avenue South, Suite 150, Minneapolis, Minnesota, 55401.

(l)

John Doe 12 is hereby identified as Joseph Ingersoll, a Minnesota resident who may be served at 155 5th Avenue South, Suite 150, Minneapolis, Minnesota, 55401.

(m)

John Doe 13 is hereby identified as Internet Services Zocalo, Inc., a California corporation which may be served through its registered agent, Edward L. Blum, at its registered office at 201 19th Street, Suite 200, Oakland, California 94612.

(n)

John Doe 14 is hereby identified as GZ Media, Inc. d/b/a 24/7 Downloads, a New York corporation which may be served at its registered office at 460 State Street, Suite 303, Rochester, New York 14608.

(o)

John Doe 15 is hereby identified as Debt Solutions, Inc., a Florida corporation which may be served through its registered agent, Kenneth Schwartz, at its registered office at 7300 North Federal Highway, Suite 105, Boca Raton, Florida 33487.

(p)

John Doe 16 is hereby identified as TEI Marketing Group, Inc., a Florida corporation which may be served through its registered agent, Ronald Scott, at its registered office at 702 Heathrow Lane, Palm Harbor, Florida 34683.

(q)

John Doe 17 is hereby identified as Sal Santoro, a Kentucky resident who resides at 596 Waterlot Ct., Florence, Kentucky, 41042-3177.

(r)

John Doe 18 is hereby identified as Janet Smith, a Kentucky resident who resides at 10236 Crossbow Ct., Unit 11, Florence, Kentucky 41042-5253.

(s)

John Doe 19 is hereby identified as Tom Smith, a Kentucky resident who resides at 10236 Crossbow Ct., Unit 11, Florence, Kentucky 41042-5253.

(t)

John Doe 20 is hereby identified as the Kentucky resident using e-mail address "jkclear1@fuse.net" who resides at 10236 Crossbow Ct., Unit 11, Florence, Kentucky 41042-5253.

(u)

John Doe 21 is hereby identified as Frank Sperry, a Kentucky resident who resides at 125 Center Street, Apartment 2, Crittenden, Kentucky, 41030-9605.

(v)

John Doe 22 is hereby identified as National Credit Systems, Inc., a New York corporation which may be served via its officers located at its principal place of business at 11 East 36th Street, 10th Floor, New York, New York 10016.

(w)

John Doe 23 is hereby identified as Jerry Poole, a Florida resident who resides at 7498

Greenville Circle, Lake Worth, Florida 33467-7139.

(x)

John Doe 24 is hereby identified as Carmen Lyman a/k/a Carmen Rodriguez, a

Massachusetts resident who resides at 8 Summit Drive, Bondsville Massachusetts, 01009.

This _____ day of February, 2004.

Respectfully Submitted,

PILLARS LAW OFFICES, P.C.

G. Wylie Pillers, III
Iowa Bar No. CN0004389

1127 North 2nd St., Suite D
Executive Plaza Office Bldg.
Clinton, IA 52732
Phone:                    (563) 243-2450
Fax:                      (563) 243-1440
E-mail:                   wpillers@ppz.com

Paul F. Wellborn, III *(admitted pro hac vice)*
Georgia Bar No. 746720


Wellborn & Butler, LLC
1372 Peachtree St., N.E., Suite 204
Atlanta, GA 30309

Phone:                    (404) 815-9595
Fax:                      (404) 815-9957
E-mail:                   pete@wellbornlaw.com

Kelly O. Wallace *(admitted pro hac vice)*
Georgia Bar No. 734166

Wellborn & Butler, LLC
1372 Peachtree St., N.E., Suite 204
Atlanta, GA 30309

| | |
|---|---|
| Phone: | (404) 815-7714 |
| Fax: | (404) 815-9957 |
| E-mail: | kelly@wellbornlaw.com |

FILED
ROCK ISLAND, IL

2003 OCT 10  A 10: 14

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | | |
|---|---|---|
| ROBERT W. KRAMER, III | ) | Case No. _____ |
| d/b/a CIS INTERNET SERVICES | ) | |
| Plaintiff | ) | 3  03 CV 80109 |
| Vs. | ) | |
| JOHN DOES 1 – 300 | ) | |
| Defendants | ) | COMPLAINT |

## VERIFIED COMPLAINT FOR INJUNCTIONS AND DAMAGES

Plaintiffs CIS Internet Services ("CIS") files this Verified Complaint For

Injunction And Damages against John Does 1-300, persons and entities whose identities

are not yet known and who acted separately and/or in concert with one or more other

defendants to produce the damages described herein.  CIS shows as follows:

### JURISDICTIONAL ALLEGATIONS

1.

Plaintiff CIS Internet Services is a sole proprietorship owned and operated by

Robert W. Kramer III with a principal place of business at 2423 North 3rd St., Clinton,

IA 52732 and with users located in Iowa and other states. Defendants, whose names and

identities are not yet known, committed illegal acts intended to and that did cause harm to

CIS in the State of Iowa. As soon as CIS learns the identity(s) of these John Doe

Defendants, CIS will file an Amended Complaint identifying these Defendants and will

1

Scanned

EXHIBIT

serve those Defendants. Defendants maintain systematic and continuous contacts with

Iowa via the below-described e-mail and Internet-related crimes and schemes, which are

directed to, among others, Iowa Internet users and which cause harm to the Plaintiff in

Iowa.  Defendants are also subject to jurisdiction pursuant to, among other sources, the

Iowa long-arm statute, Iowa Code § 617.3, the Iowa anti-spamming/spoofing statute,

Iowa Code § 714E.1, and the principles set forth in Calder v. Jones, 465 U.S. 783, 104 S.

Ct. 1482, 79 L. Ed. 2d 804 (1984).

2.

This Court has proper subject matter jurisdiction.

3.

Venue is proper in this judicial district.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### PARTIES AND BACKGROUND FACTS

#### *E-mail Violations On The Internet: "Spamming" And "Spoofing"*

4.

The acts complained of herein were committed by Defendants through use of the

Internet.  Often called the "Information Superhighway," the Internet is a complex

communications network that links private and public computer networks, systems, and

individuals.  It consists of computers and computer databases connected primarily

through telephone lines, fiber optic cables, and other high-speed dedicated lines.  A small

portion of the components of the Internet are owned by governmental organizations.

Most components, however, are proprietary and are owned and/or administered by

"Internet Service Providers" ("ISP's") and other private parties.  Specifically, ISP's own

2

computers and other devices that enable their customers to obtain various services including Internet access and the ability to communicate with other Internet users via electronic mail ("e-mail"). In many ways, the Internet resembles our highway transportation system. The phone lines are similar to highways over which goods are transferred from one location to another. Likewise, the computer domain sites operated by Internet users are similar to privately-owned warehouses in which goods are stored and from which they are disseminated to various destinations.

5.

The e-mail systems of the various ISP's serving Internet users around the world were created solely for the benefit of the ISP's and their respective subscribers. The use restrictions imposed by most ISP's, as well as by State and federal law, impose restraints on the manner in which those systems may be used. Among the types of prohibited conduct is the sending of unsolicited commercial e-mails. (See, e.g., CompuServe, Inc. v. Cyber Promotions, Inc., 962 F. Supp. 1015 (S.D. Ohio 1997)). The CIS Internet Services Net Abuse Policy, which governs the use of the CIS addresses and equipment, likewise prohibits such activities. This electronic junk mail is often referred to pejoratively as "spam". It is prohibited because it constitutes a trespass, conversion, and invasion of privacy, because it jeopardizes the performance and viability of the ISP's computer system, because the receiving user must pay for the online time spent reading and deleting the message, and because the advertised products and services are often fraudulent and/or illegal.

6.

"Spam" is the equivalent of a COD package that the recipient is forced to accept, or a series of collect calls that the recipient has no way to decline and that tie up and adversely affect the performance of the recipient's phone system. Such junk e-mail impairs the efficiency of the Internet as a whole and of the Internet-related and proprietary services offered by the victim ISP's. Further, this junk mail illegally causes the user-recipients to incur additional expenses of time, money, and computer resources in relation to the storage, review, and inevitable deletion of the unwanted spam. Finally, and perhaps most importantly, this junk e-mail severely and irreparably damages the business reputation of innocent individuals or companies who are often falsely identified or implied by the spammer as having had some role in the origination or transmission of the offending e-mail.

7.

Such misidentification is pejoratively known as "spoofing" and represents actionable conduct as to any ISP, e-mail service, or other entity wrongfully and falsely identified as having been associated with the e-mail. This fraudulent and deceitful misidentification of the source of a message may be accomplished, among other means, by:

- manipulating the message header to alter the identification of the sender's true name and domain (i.e., manually forging the originating address);

- reference in the text of the message to a particular person or entity; and/or

- by routing the e-mail or message through the innocent ISP's system and otherwise converting that ISP's finite computer resources to create a trail that falsely indicates that the ISP was voluntarily involved in the sending and/or transport of the spam.

4

8.

The depth and degree of the universal hatred of unsolicited commercial e-mail by Internet users is amazing. Indeed, the primary portion of a victimized party's "spoofing"-related damages arises from the incredible and inevitable backlash of complaints and anger by the e-mail recipients against the innocent entity(s) wrongfully believed by the recipients to have sent or helped send the e-mail. With the sending of each "spoofed" e-mail, the innocent party's reputation is damaged, and money and manpower are wasted as the party attempts to respond to the complaints and to identify the true spammer/spoofer. Further, the "spoofing" complained of herein is also harmful and illegal because it represents the wrongful use of the innocent company's name and marks.

9.

The scope and scale of the unsolicited email sent either to CIS users or using forged "cis.net" addresses in the "from" portion of the email address has been gigantic, especially in comparison with the overall size of the CIS system altogether. The result of the flood of fraudulent and illegal that had to be dealt with by CIS's computer systems effectively "shut down" the service at times, effecting what is known as a "denial of service" ("DoS") attack.

10.

On the Internet, a "denial of service" attack is an incident in which a user or organization is deprived of the services of a resource they would normally expect to have. Typically, the loss of service is the inability of a particular network service, such as e-mail, to be available or the temporary loss of all network connectivity and services. A

denial of service attack can also destroy programming and files in a computer system. These attacks can cost the target person or company a great deal of time and money.

11.

A good "real-world" analogy for the denial of service attacks suffered by CIS would be the delivery of so many unsolicited pieces of mail and COD packages to one's home that it is impossible to get to the door from the outside, and impossible to open from the inside due to the sheer weight and volume of the garbage piled up outside. However, unlike postal "junk mail" or COD packages (where the marketer must pay for, at least, the paper and the postage), there is essentially no cost to the Defendants for sending these messages. All of the costs are borne by CIS and its subscribers.

*Plaintiff CIS Internet Services*

12.

Plaintiff CIS (Robert W. Kramer III doing business as CIS) was founded in 1996 and has been the owner of the domain name "cis.net" since 1998. CIS is an ISP, providing Internet connectivity, web hosting, and other Internet-related services to its customers. Among the Internet-related services offered by CIS is e-mail service, by which CIS's members are allowed to compose, send, and retrieve e-mail messages. CIS members may send and receive e-mails to and from other CIS members, as well as any other Internet user. CIS's costs of doing business are borne by membership fees and service fees paid by its members. CIS's web site – www.cis.net – has received over five million hits since its inception in 1998.

13.

CIS has invested substantial sums of money in developing and marketing its
Internet-related and e-mail-related services. CIS's e-mail systems are operated through
dedicated computers known as "servers" which store and route e-mail messages for its
members. These systems were created and are maintained solely for the benefit of CIS's
members, who must agree to specific terms of use prior to activation of their accounts.
These terms include, and have at all relevant times included, strict prohibitions against
use of the systems or the ISP name in relation to spamming or spoofing, as well as the
use of false or fraudulent information in relation to account activation. For example, a
true and correct copy of the CIS Acceptable Use Policy, to which all "dial-up" Internet
account holders must agree, can be found at http://www.cis.net/help/aup.htm.
Furthermore, a true and correct copy of the CIS Abuse Policy, to which all CIS members
must agree, can also be found at that web site.

14.

Each CIS member is given a unique CIS address so that he or she can send and
receive e-mail via personal computer. Each member's address consists of a unique name
selected by the member plus the CIS domain designation. (For example, user John Doe
III might choose "johndoeIII@cis.net" as his e-mail address.) Some CIS users have e-
mail addresses that end in other domains (such as "caves.net" and "illowa.net"), which
are other domains owned and operated by Robert W. Kramer, the sole proprietor of CIS.
CIS's mail servers have a finite capacity designated to accommodate the demands
imposed by CIS's members. CIS's computer system is not designed to accommodate,

7

and is vulnerable to disruption by, indiscriminate mass mailings, as described below, from irresponsible and criminal parties such as Defendants.

### Defendants and Their Wrongful Acts, Generally

15.

Defendants are criminals. They have engaged in fraud, spamming, and spoofing to the extent that they have totally interrupted Plaintiff's business on numerous occasions. Specifically, they have engaged in unsolicited commercial e-mail campaigns in relation to which they have: converted and trespassed upon CIS's computer equipment for their own purposes; infringed upon the intellectual property of CIS, including the rights to and in "cis.net"; severely damaged CIS's business reputation; intentionally interfered with the services contracts that exist between CIS and its subscribers; and/or otherwise committed the wrongful acts described below. All of Defendants' conduct violates the civil and criminal laws of Iowa governing the misuse and abuse of electronic mail. Iowa Code § 714E.1.

### Defendants' Spamming And Spoofing Scheme

### And The Resulting Damages

16.

Each Defendant has engaged in a massive scheme of spamming and spoofing, and has intentionally disregarded the harm and damages caused to his victims. Each Defendant has at all times been aware of the illegality of and harm caused by its spamming and spoofing schemes. Nonetheless, Defendants have repeatedly sent unsolicited commercial e-mails to hundreds of thousands of Internet users (including CIS

users) by illegally hijacking CIS's computer resources and, in some cases, the "cis.net" name.

17.

Specifically, in certain of their illegal e-mails, Defendants fraudulently, falsely, and illegally represented that their e-mails originated from CIS or from some other user of the "cis.net" domain.  In these e-mails, Defendants used the "cis.net" domain as a part of the falsified "return address" or originating address for many of their e-mails. Defendants made these misrepresentations and otherwise disguised the true source of the e-mails to deflect the thousands of inevitable complaints from disgruntled recipients of the e-mails and the return of millions of "returned as undeliverable" e-mails (i.e., those e-mails sent to invalid addresses).  In other cases, Defendants sent e-mails to millions of randomly-generated CIS addresses, nearly shutting down CIS's servers with their voluminous undeliverable e-mails (effectively, a "DoS attack").  Defendants' illegal e-mails include:

(a)

An e-mail advertising a work-at-home "Get Rich Quick" scheme; and

(b)

An e-mail advertising the illegal Internet gambling site "www.desirescasino.com"; and

(c)

An e-mail advertising a pornographic web site called "Rachel's House"; and

(d)

An e-mail advertising a collection of Internet-related "how to" information known as "Search Engine Hell"; and

9

(e)

An email advertising a clearing house for consumer loans at

"EZManagement.net"; and

(f)

An e-mail advertising software used to harvest e-mail addresses from the Internet

for illegal purposes; and

(g)

An e-mail advertising a clearing house for life insurance quotes apparently sent by

an independent contractor salesperson of ReliaQuote.com; and

(h)

A "pump and dump" e-mail regarding a publicly-traded stock ("CBYI"), seeking

illegally and artificially to raise the price of the stock; and

(i)

An e-mail advertising a pornographic web site known as "teen-pie.com".

18.

Accordingly, CIS's phone lines, servers, and computers have been bombarded

with a multitude of complaint calls and e-mails from Internet users around the world who

mistakenly thought that CIS had somehow participated in or condoned Defendants'

spamming. Additionally, on the basis of the false "return addresses" inserted by the

Defendants, each illegal e-mail in relation to which the recipient address was not valid

was "returned" as undeliverable to cis.net. When such e-mail was sent both to

nonexistent "cis.net" subscribers and bore a forged CIS "from" address each message

effectively impaired CIS's systems <u>twice</u>. The quantity of returned mail and complaints

impaired the performance of CIS's servers and computer equipment.

19.

CIS has been forced to devote substantial time and resources to the problems caused by Defendants' illegal acts. These acts have resulted in substantial money damages for CIS, including damage and loss of reputation.

20.

Defendants knew that the quantity of complaints and returned mail resulting from their spamming schemes would damage the reputation of CIS and the performance of its systems. Defendants also knew that their use of CIS's name and computers was not authorized. Defendants also knew that they were prohibited from spamming CIS accounts with their illegal e-mails.

21.

Defendants have at all relevant times been aware of the damage to all legitimate and ethical Internet users and Internet-related companies (including CIS) caused by their illegal spamming and spoofing.

## COUNT I

### FEDERAL CIVIL RICO VIOLATIONS

22.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 21 above as if the same were set forth herein in full.

23.

18 U.S.C. § 1964 creates a private cause of action for persons and entities injured by violations of 18 U.S.C. § 1962 (the federal Racketeer Influenced & Corrupt Organizations Act).

24.

Defendants' e-mail schemes, mail fraud, and wire fraud detailed above (and, in fact, each individual e-mail sent by Defendants) constitute "racketeering activity" as that term is defined in 18 U.S.C. § 1961.

25.

Defendants' e-mails and e-mail schemes constitute a pattern of racketeering activity, as required by 18 U.S.C. § 1961.

26.

In violation of 18 U.S.C. § 1962(a), Defendants have, through the pattern of racketeering activity described above and through the income derived therefrom, used and/or invested such income and its proceeds to acquire, establish and operate an enterprise engaged in and affecting interstate and foreign commerce.

27.

In violation of 18 U.S.C. § 1962(b), Defendants have, through the pattern of racketeering activity described above and through the proceeds derived therefrom, acquired and/or maintained, directly or indirectly, an interest in and/or control of an enterprise engaged in and affecting interstate and foreign commerce.

28.

In violation of 18 U.S.C. § 1962(c), Defendants have, through a pattern of racketeering activity, conducted and participated in, directly or indirectly, an enterprise engaged in and affecting interstate and foreign commerce.

29.

In violation of 18 U.S.C. § 1962(d), Defendants have conspired and/or endeavored to violate the provisions of 18 U.S.C. §§ 1962 (a), (b) and (c).

12

30.

Pursuant to 18 U.S.C. § 1964, Defendants are liable to Plaintiffs for three times Plaintiffs' actual damages, punitive damages, attorneys' fees, investigative costs, and all other costs associated with or necessitated by the present litigation.

31.

Pursuant to 18 U.S.C. § 1964, Plaintiffs are entitled to a preliminary injunction and a permanent injunction directing Defendants to cease and desist from the above-described conduct.

## COUNT II

### VIOLATIONS OF IOWA ANTI-SPAMMNG & ANTI-SPOOFING STATUTE

32.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 31 above as if the same were set forth herein in full.

33.

Iowa Code § 714E.1 (3) creates a private cause of action for persons and entities injured by violations of Iowa Code § 714E.1, the Iowa law which restricts the use of electronic mail.

34.

Defendants' e-mail messages contained "advertisements" as that term is defined in Iowa Code § 714E.1 (1)(a).

35.

Defendants' messages that have affected Plaintiff CIS constitute "electronic mail" as that term is defined in Iowa Code § 714E.1 (1)(d).

13

36.

Plaintiff CIS is an "interactive computer service" as that term is defined in Iowa Code § 714E.1 (1)(e).

37.

In violation of Iowa Code § 714E (2)(a), Defendants have used the name of third parties in the return address field of bulk electronic mail without the permission of the third parties.

38.

In violation of Iowa Code § 714E (2)(b), Defendants have misrepresented the point of origin of the transmission path of the electronic mail messages sent to CIS and its subscribers.

39.

In violation of Iowa Code § 714E (2)(c), the messages sent by Defendants do not contain information identifying the true point of origin or true transmission path of the electronic mail messages.

40.

In violation of Iowa Code § 714E (2)(d), the messages sent by Defendants did not provide a readily identifiable email address to which the recipients of their bulk electronic mail could send a request to decline such mail.

41.

In violation of Iowa Code § 714E (2)(e), the Defendants have demonstrated a pattern of continuing to send unsolicited advertisements to recipients who have requested to not receive further mail from Defendants.

42.

Defendants were without authority to use the computer resources of Plaintiff CIS because they: (a) had no right or permission of Plaintiff CIS to use the computer; and (b) used the computer resources of Plaintiff CIS in a manner which exceeded their rights or permission.

43.

Pursuant to Iowa Code § 714E (3)(b), Defendants are liable to Plaintiff CIS for Plaintiff's attorney fees and costs in addition to the greater of: Plaintiff's actual damages, ten dollars per unsolicited bulk electronic mail message transmitted in violation of this section, or $25,000.

44.

Pursuant to Iowa Code § 714E (4), Plaintiff is entitled to an injunction prohibiting Defendants from transmitting any other electronic mail to or through Plaintiff CIS's systems.

45.

The above-mentioned acts by Defendants were despicable in nature and done in willful and wanton disregard of CIS's rights. This is especially true given Defendants' knowledge of the damage caused by Defendants' illegal conduct. Accordingly, CIS is entitled to punitive damages in an amount to be determined at trial.

## COUNT III

## VIOLATION OF THE ELECTRONIC

## COMMUNICATIONS PRIVACY ACT

46.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 45 above as if the same were set forth herein in full.

47.

Defendants have and are engaged in acts constituting a violation of Chapter 121 the Electronic Communications Privacy Act, 18 U.S.C. § 2701 et seq.

48.

CIS owns computer systems through which electronic communication services are provided to their respective customers.

49.

Defendants, through means of a computer(s) used in interstate commerce, intentionally obtained access to Plaintiff's facilities by causing to be transmitted into or through Plaintiff's systems excessive amounts of unsolicited electronic communications. Defendants' access to Plaintiff's systems occurred without Plaintiff's authorization and beyond the bounds of any authorization Defendants might reasonably claim. Defendants' acts complained of herein were done knowingly and with the specific intent of assisting in Defendants' scheme to distribute for profit, on an unsolicited, illegal, and improper basis, their own promotional material and advertisements.

16

50.

Defendants' violations of the Electronic Communications Privacy Act have caused and/or contributed to the cause of damage and/or diminution of speed and utility to the computers, computer systems, networks, information, data and programs of Plaintiff's servers and computer systems. This damage and diminution of performance prevent or diminish the authorized access to and/or use of Plaintiff's systems by Plaintiff's own customers and personnel thereby causing injury to Plaintiff.

51.

Defendants' violations of the Electronic Communications Privacy Act have caused and continue to cause Plaintiff to suffer irreparable injury, loss of reputation, and pecuniary damages to be proved at trial, in excess of the jurisdictional amount-in-controversy requirements of this Court, and of not less than $1,000,000.00 (one million dollars). Unless enjoined by this Court, Defendants will continue these acts of conversion, thereby causing Plaintiff further immediate and irreparable damage.

52.

The above-mentioned acts by Defendants were despicable in nature and done in willful and wanton disregard of CIS's rights. This is especially true given Defendants' knowledge of the damage caused by Defendants' illegal conduct. Accordingly, CIS is entitled to punitive damages in an amount to be determined at trial.

## COUNT IV

## VIOLATION OF THE COMPUTER

## FRAUD AND ABUSE ACT

### 53.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 52 above as if the same were set forth herein in full.

### 54.

Defendants have and are engaged in acts constituting a violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 et seq.

### 55.

Plaintiff maintains one or more computers as defined in § 1030(e) of the Computer Fraud and Abuse Act through which e-mail transmissions are received, stored and/or disseminated.

### 56.

Defendants, without authorization, or at the very least exceeding any authorization which they might have reasonably claimed, knowingly and willfully caused, through the means of a computer used in interstate commerce, the transmission of one or more programs, information, codes or commands to Plaintiff's computer facilities, with the intent, or at the very least, with reckless disregard of a substantial and unjustified risk, that their transmissions would damage, or cause damage to, a computer, computer system, network, information, data or program of Plaintiff's computer facilities.

57.

Defendants' willful transmission of one or more programs, information, codes or commands (i.e., those messages arising from the false return address on their undeliverable e-mails) to Plaintiff's computer facilities have in fact caused or contributed to damage to or diminished performance of the computer, computer systems, networks, information, data, and programs which comprise said facilities and furthermore have caused the withholding and denial of use of the computers, computer services, systems, networks information, data and programs of Plaintiff's computer facilities, thereby causing injury to Plaintiff.

58.

The foregoing acts and conduct of Defendants have caused, and if not enjoined will continue to cause, loss or damage to one or more other persons, including CIS, of a value aggregating $1,000 or more during the applicable one year period.

59.

As a result of Defendants' acts, Plaintiff has suffered and continues to suffer and incur irreparable injury, loss of reputation, and pecuniary damages to be proved at trial, in excess of the jurisdictional amount-in-controversy requirements of this Court, and of not less than $1,000,000.00 (one million dollars).  Unless enjoined by this Court, Defendants will continue these acts, thereby causing CIS further immediate and irreparable damage.

60.

The above-mentioned acts by Defendants were despicable in nature and done in willful and wanton disregard of CIS's rights.  This is especially true given Defendants'

19

knowledge of the damage caused by Defendants' illegal conduct.  Accordingly, CIS is entitled to punitive damages in an amount to be determined at trial.

## COUNT V

## UNFAIR COMPETITION THROUGH

## FALSE DESIGNATION (LANHAM ACT)

61.

CIS realleges and incorporates by reference the allegations contained in paragraphs 1 through 60 above as if the same were set forth herein in full.

62.

Defendants have and are engaged in acts of unfair competition through the use of false designations of origin and false advertising in violation of Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a).

63.

Defendants have used and are using the domain name and mark "cis.net" in relation to their illegal e-mails.  Accordingly, Defendants have made and are making false express and implied representations that their services and junk e-mails originate with, are associated with, and/or are endorsed by CIS (who owns this domain and mark) in such a manner as to create a likelihood of confusion among the recipients and readers of those e-mails, thereby inducing the belief that, contrary to fact, Defendants' advertisements are rendered, sponsored, or otherwise approved by, or connected with CIS.

64.

Defendants' acts have damaged, impaired and diluted that part of CIS's goodwill and good name symbolized by this domain and by the CIS name to CIS's immediate and irreparable damage, especially insofar as Defendants' acts induce those viewing or receiving Defendants' advertisements to conclude incorrectly on the basis of this misrepresentation that CIS was somehow connected with the illegal e-mails.

65.

Defendants' use of CIS's "cis.net" domain name in connection with their advertising constitutes use of a false designation of origin, and Defendants' representations that their services and advertisements originate with or are endorsed by CIS constitute a use of false descriptions or representations of fact, within the meaning of Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a).  Further, Defendants' use of CIS's domain name/service mark "cis.net" constitutes unfair competition entitling CIS to remedies afforded pursuant to Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a).

66.

As a result of Defendants' acts, CIS has suffered and continue to suffer and incur irreparable injury, loss of reputation, and pecuniary damages to be proved at trial, in excess of the jurisdictional amount-in-controversy requirements of this Court.  Unless enjoined by this Court, Defendants will continue these acts, thereby causing CIS further immediate and irreparable damage.

21

67.

The above-mentioned acts by Defendants were despicable in nature and done in
an intentional, malicious, and oppressive manner in conscious disregard of CIS's rights.
This is especially true given Defendants' knowledge of the damage caused by
Defendants' illegal conduct.  Accordingly, CIS is entitled to punitive damages in an
amount to be determined at trial.

## COUNT VI

## DILUTION OF FAMOUS MARK (LANHAM ACT)

68.

CIS realleges and incorporates by reference the allegations contained in
paragraphs 1 through 67 above as if the same were set forth herein in full.

69.

Defendants have and are engaged in acts constituting service mark dilution in
violation of Section 43(c) of the Trademark Act of 1946, 15 U.S.C. § 25(c).

70.

Defendants have made commercial use of the name and mark "cis.net" with the
willful intent to trade on CIS's reputation and to cause dilution of the famous mark/name
"cis.net".

71.

Defendants' use of this name and mark began long after CIS's mark and name
had become well known and famous (i.e., long after the mark was registered with
Network Solutions, which provides constructive notice to the world of such prior use.

72.

Defendants' use of this name and mark causes dilution of its distinctive quality.

22

73.

Defendants' use of this names and mark lessens its capacity to identify and distinguish CIS's goods, services, and customers.

74.

Defendants' activities complained of herein constitute service mark dilution within the meaning of Section 43(c) of the Trademark Act of 1946, 15 U.S.C. §§ 1125(c).

75.

As a result of Defendants' acts, CIS has suffered and continues to suffer and incur irreparable injury, loss of reputation, and pecuniary damages to be proved at trial, in excess of the jurisdictional amount-in-controversy requirements of this Court. Unless enjoined by this Court, Defendants will continue these acts, thereby causing CIS further immediate and irreparable damage.

76.

The above-mentioned acts by Defendants were despicable in nature and done in willful and wanton disregard of CIS's rights. This is especially true given Defendants' knowledge of the damage caused by Defendants' illegal conduct. Accordingly, CIS is entitled to punitive damages in an amount to be determined at trial.

## COUNT VII

## IOCCA VIOLATIONS

77.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 76 above as if the same were set forth herein in full.

78.

Iowa Code § 706A.3 (1) creates a private cause of action for persons and entities

injured by violations of Iowa Code § 706A (the Iowa Ongoing Criminal Conduct Act

("IOCCA")).

79.

Defendants' e-mail schemes detailed above (and, in fact, each individual e-mail

sent by Defendants) constitutes "ongoing criminal conduct" and subjects them to civil

and criminal liability under Iowa Code § 706A.

80.

In violation of Iowa Code § 706A.2 (1) (a) and (b), Defendants have, through the

pattern of ongoing criminal conduct described above and through the proceeds derived

therefrom, acquired and/or maintained, directly or indirectly, an interest in and/or control

of an enterprise or real property.

81.

In violation of Iowa Code § 706A.2 (1) (c), Defendants have, through a pattern of

ongoing criminal conduct, conducted and participated in, directly or indirectly, an

enterprise that they knew was being conducted through ongoing criminal conduct.

82.

In violation Iowa Code § 706A.2 (1) (d), Defendants have conspired and/or

attempted to violate and/or solicited and/or facilitated the violation of Iowa Code §

706A.2 (1), (2) and/or (3).

83.

Pursuant to Iowa Code § 706A.3 (7), Defendants are liable to Plaintiff for three times Plaintiff's actual damages, attorneys' fees, investigative costs, and all other costs associated with or necessitated by the present litigation.

84.

Pursuant to Iowa Code § 706A.3 (2), Plaintiff is entitled to a preliminary injunction and a permanent injunction directing Defendants to cease and desist from the above-described conduct.

85.

The above-mentioned acts by Defendants were despicable in nature and done in willful and wanton disregard of CIS's rights. This is especially true given Defendants' knowledge of the damage caused by Defendants' illegal conduct. Accordingly, CIS is entitled to punitive damages in an amount to be determined at trial.

## COUNT VIII

## UNFAIR COMPETITION (STATE)

86.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 85 above as if the same were set forth herein in full.

87.

Defendants have and are engaged in fraudulent acts or practices in violation of the prohibitions against unfair competition found in the common law of Iowa.

88.

Defendants have and are engaged in fraudulent acts or practices in violation of the prohibitions against consumer fraud found in Iowa Code § 714.16.

89.

Defendants have used and are using Plaintiff CIS's computer equipment and name in connection with the above-described e-mail schemes in such a manner as to misrepresent the source, sponsorship, approval, and/or certification of the e-mail schemes and advertisements. The use of this name and domain designation by Defendants creates the unreasonable risk that recipients and other readers of the e-mails described above may conclude that there exists some affiliation, connection or association between and among CIS, the e-mails, and the sender of the e-mails.

90.

Defendants' acts have damaged, impaired, and diluted that part of Plaintiff CIS's goodwill and good name symbolized by the above-discussed names and marks of Plaintiff CIS. The nature, probable tendency, and effect of Defendants' use of these names and properties in the manner alleged is to enable Defendants to deceive the public.

91.

Defendants' use of CIS's common-law service marks – the above-identified domain designations and names – as alleged constitutes trade name infringement under the common law of Iowa.

92.

Defendants had actual knowledge of CIS's rights at the time they decided to use CIS's mark and name(s) in connection with their illegal-e-mail-related schemes. Thus, Defendants willfully and deliberately infringed CIS's rights.

93.

Defendants' unfair business practices are of a recurring nature and harmful to the consumers and the public at large, as well as Plaintiff CIS. These practices constitute

unlawful, unfair, and fraudulent business practices and unfair, deceptive, untrue, and misleading advertising.

94.

As a result of Defendants' acts, CIS has suffered and continues to suffer and incur irreparable injury, loss of reputation, and pecuniary damages to be proved at trial, in excess of the jurisdictional amount-in-controversy requirements of this Court, and not less than $1,000,000.00 (one million dollars). Unless enjoined by this Court, Defendants will continue these acts, thereby causing CIS further immediate and irreparable damage.

95.

The above-mentioned acts by Defendants were despicable in nature and done in willful and wanton disregard of CIS's rights. This is especially true given Defendants' knowledge of the damage caused by Defendants' illegal conduct. Accordingly, CIS is entitled to punitive damages in an amount to be determined at trial.

## COUNT IX

## UNAUTHORIZED COMPUTER ACCESS

96.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 95 above as if the same were set forth herein in full.

97.

Defendants have and are engaged in acts of misappropriation in that Defendants, without authorization, have used CIS's proprietary e-mail system and proprietary computer resources in relation to the transmission of unsolicited and improper

27

promotional and advertising material (including the direct spamming of CIS members)

and have gained fraudulent access to such systems.

98.

Defendants' use of CIS's computer systems and resources, from which

Defendants derived profits or income to the detriment of CIS and its customers,

constitutes the unfair and unlawful misappropriation of extremely valuable commercial

property and resources owned by CIS.

99.

The activities of Defendants described herein constitute misappropriation of CIS's

commercial property and services in violation of Iowa Code § 716.6B.

100.

Iowa Code § 716.6B (2) provides a civil cause of action in Iowa to prevent,

remedy, and restrain such unauthorized access to CIS's computer network.

101.

Defendants' misappropriation of CIS's commercial property and services has

caused and continues to cause CIS to suffer irreparable injury, loss of reputation, and

pecuniary damages to be proved at trial, in excess of the jurisdictional amount-in-

controversy requirements of this Court, and of not less than $1,000,000.00 (one million

dollars).  Unless enjoined by this Court, Defendants will continue these acts of

misappropriation, thereby causing CIS further immediate and irreparable damage.

102.

The above-mentioned acts by Defendants were despicable in nature and done in

an intentional, malicious, and oppressive manner in conscious disregard of CIS's rights.

This is especially true given Defendants' knowledge of the damage caused by

Defendants' illegal conduct. Accordingly, CIS is entitled to punitive damages in an amount to be determined at trial.

## COUNT X

## CONVERSION

### 103.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 102 above as if the same were set forth herein in full.

### 104.

Defendants have and are engaged in acts of conversion in violation of the law of the State of Iowa.

### 105.

The computers, computer networks, and computer services that comprise CIS's e-mail systems are the personal property of CIS. Defendants, without authorization, have intentionally used CIS's e-mail systems for Defendants' own commercial benefit. This unauthorized use by Defendants has deprived CIS and its customers of the legitimate use of these proprietary and commercially valuable systems.

### 106.

Defendants' conversion of CIS's commercial property has caused and continues to cause CIS to suffer irreparable injury, loss of reputation, and pecuniary damages to be proved at trial, in excess of the jurisdictional amount-in-controversy requirements of this Court, and of not less than $1,000,000.00 (one million dollars). Unless enjoined by this Court, Defendants will continue these acts of conversion, thereby causing CIS further immediate and irreparable damage.

107.

The above-mentioned acts by Defendants were despicable in nature and done in willful and wanton disregard of CIS's rights. This is especially true given Defendants' knowledge of the damage caused by Defendants' illegal conduct. Accordingly, CIS is entitled to punitive damages in an amount to be determined at trial.

## COUNT XI

## TRESPASS

108.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 107 above as if the same were set forth herein in full.

109.

Defendants have and are engaged in acts of trespass to property in violation of the law of the State of Iowa.

110.

The computers, computer networks, and computer services that comprise CIS's e-mail system are the personal property of CIS. Defendants, without authorization, have intentionally used CIS's e-mail systems and computer resources for their own commercial benefit. This unauthorized use by Defendants has deprived CIS and its customers of the legitimate use of this proprietary and commercially valuable system.

111.

Defendants' trespass upon CIS's commercial property has caused and continues to cause CIS to suffer irreparable injury, loss of reputation, and pecuniary damages to be proved at trial, in excess of the jurisdictional amount-in-controversy requirements of this

Court, and of not less than $1,000,000.00 (one million dollars).  Unless enjoined by this

Court, Defendants will continue these acts of trespass, thereby causing CIS further

immediate and irreparable damage.

112.

The above-mentioned acts by Defendants were despicable in nature and done in

willful and wanton disregard of CIS's rights.  This is especially true given Defendants'

knowledge of the damage caused by Defendants' illegal conduct.  Accordingly, CIS is

entitled to punitive damages in an amount to be determined at trial.

**COUNT XII**

**UNJUST ENRICHMENT**

113.

Plaintiff realleges and incorporates by reference the allegations contained in

paragraphs 1 through 112 above as if the same were set forth herein in full.

114.

Defendants have derived economic benefit from the dissemination of unsolicited

commercial messages through the unauthorized use of CIS's proprietary computer

resources, equipment, and intellectual property.

115.

Defendants have paid no compensation to CIS for the dissemination of

Defendants' unsolicited messages and advertisements using CIS's names, marks, and

resources.

31

116.

As a result, Defendants have been unjustly enriched, entitling CIS to quasi-contract relief under the law of the State of Iowa.

117.

As a result of Defendants' acts, CIS has suffered and continue to suffer and incur irreparable injury, loss of reputation, and pecuniary damages to be proved at trial, in excess of the jurisdictional amount-in-controversy requirements of this Court, and of not less than $1,000,000.00 (one million dollars).  Unless enjoined by this Court, Defendants will continue these acts, thereby causing CIS further immediate and irreparable damage.

118.

The above-mentioned acts by Defendants were despicable in nature and done in willful and wanton disregard of CIS's rights.  This is especially true given Defendants' knowledge of the damage caused by Defendants' illegal conduct.  Accordingly, CIS is entitled to punitive damages in an amount to be determined at trial.

## COUNT XIII

## INTENTIONAL INTERFERENCE WITH CONTRACT

119.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 118 above as if the same were set forth herein in full.

120.

Plaintiff CIS has and had valuable contracts with its subscribers to provide internet services.

32

121.

Defendants knew at all times that CIS and its subscribers had entered into these contracts for the provision of internet services.

122.

Defendants' intentional sending of unsolicited commercial e-mail messages to and through CIS's computer systems improperly interfered with the contracts between Plaintiff CIS and its subscribers, causing Plaintiff CIS to be unable to perform its obligations under the contracts.

123.

Defendants' intentional sending of unsolicited commercial e-mail messages to and through CIS's computer systems interfered with the contracts between Plaintiff CIS and its subscribers, causing Plaintiff CIS's performance under the contract to become burdensome and excessively expensive.

124.

As a result of Defendants' acts, CIS has suffered and continue to suffer and incur irreparable injury, loss of reputation, and pecuniary damages to be proved at trial, in excess of the jurisdictional amount-in-controversy requirements of this Court, and of not less than $1,000,000.00 (one million dollars). Unless enjoined by this Court, Defendants will continue these acts, thereby causing CIS further immediate and irreparable damage.

125.

The above-mentioned acts by Defendants were despicable in nature and done in willful and wanton disregard of CIS's rights. This is especially true given Defendants' knowledge of the damage caused by Defendants' illegal conduct. Accordingly, CIS is entitled to punitive damages in an amount to be determined at trial.

## COUNT XIV

## INTENTIONAL INTERFERENCE

## WITH PROSPECTIVE BUSINESS ADVANTAGE

### 126.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 125 above as if the same were set forth herein in full.

### 127.

Plaintiff CIS had prospective continuing contractual and business relationships with its subscribers prior to Defendants' abuse of the CIS computer systems.

### 128.

Defendants knew of the contractual and business relationships between CIS and its subscribers at all times.

### 129.

Defendants' intentional sending of unsolicited commercial e-mail messages to and through CIS's computer systems improperly interfered with the contracts between Plaintiff CIS and its subscribers, causing Plaintiff CIS to be unable to perform its obligations under the contracts.

### 130.

Defendants' intentional sending of unsolicited commercial e-mail messages to and through CIS's computer systems interfered with the contracts and business relationships between Plaintiff CIS and its subscribers, causing the subscribers not to continue their contractual and business relationships with CIS.

131.

Defendants' intentional sending of unsolicited commercial e-mail messages to and through CIS's computer systems interfered with the contracts and business relationships between Plaintiff CIS and its subscribers, causing Plaintiff CIS to be unable to continue the contractual and business relationships with its subscribers.

132.

As a result of Defendants' acts, CIS has suffered and continue to suffer and incur irreparable injury, loss of reputation, and pecuniary damages to be proved at trial, in excess of the jurisdictional amount-in-controversy requirements of this Court, and of not less than $1,000,000.00 (one million dollars). Unless enjoined by this Court, Defendants will continue these acts, thereby causing CIS further immediate and irreparable damage.

133.

The above-mentioned acts by Defendants were despicable in nature and done in willful and wanton disregard of CIS's rights. This is especially true given Defendants' knowledge of the damage caused by Defendants' illegal conduct. Accordingly, CIS is entitled to punitive damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

134.

WHEREFORE, Plaintiff CIS prays for judgment against Defendants, and each of them, jointly and severally, that includes:

      (a)   A preliminary and permanent injunction enjoining Defendants and any affiliated persons or entities from: (1) directly or indirectly sending or transmitting any unsolicited commercial e-mails to any

Internet user, including but not limited to any such messages that references or use in any way CIS or any of its property, computers, domains, or users; and (2) engaging in any further illegal activities in relation to the theft and/or misuse of third-party credit card numbers, passwords, or e-mails accounts; and (3) any use of, whether individually or by and through someone else, any computer or telecommunications device to obtain connectivity to the Internet;

(b)   Special and general damages in an amount to be proven at trial;

(c)   The trebling of its damages pursuant to statutory law cited herein;

(d)   Punitive and exemplary damages in an amount to be proven at trial;

(e)   Reasonable attorney fees herein;

(f)   Costs of suit incurred herein; and

(g)   Such other and further relief as this Court may deem just and proper.

This _____ day of October, 2003.

Respectfully Submitted,

**PILLERS LAW OFFICES, P.C.**

By:_____

Ø. Wylie Pillers, III
Executive Plaza Building
1127 North 2nd St., Suite D
Clinton, Iowa 52732
Telephone:  563-243-2450
Facsimile:  563-243-1440
E-mail:  wpillers@ppz.com


**Of Counsel**
(*pro hac vice applications to be filed ASAP*)

Paul F. Wellborn, III
Georgia Bar No. 746720

Wellborn & Butler, LLC
1372 Peachtree St., N.E., Suite 204
Atlanta, GA 30309

Telephone:  404-815-9595
Facsimile:  404-815-9957
E-mail:  pete@wellbornlaw.com