UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF IOWA

DAVENPORT DIVISION

FILED
ROCK ISLAND, IL

2004 MAR 31   A 9: 10

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

|  |  |  |
|---|---|---|
| ROBERT W. KRAMER, III | ) | Case No. 3:03 CV 80109 |
| d/b/a CIS INTERNET SERVICES, | ) | |
|    Plaintiff | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JOHN DOES 1 – 300, | ) | SECOND AMENDED |
| BRIAN YOUNG, KEVIN HERTZ, | ) | COMPLAINT |
| JONATHAN SADOWSKY, and | ) | |
| MIHIR TENEJA, et al | ) | |
|    Defendants. | ) | |
| | ) | |

## SECOND AMENDED COMPLAINT

## FOR INJUNCTION AND DAMAGES

Plaintiff Robert W. Kramer, d/b/a CIS Internet Services ("CIS") hereby files this Second Amended Complaint for Injunction and Damages, identifying certain of the John Doe defendants, whose wrongful acts have, individually and in combination, caused and, on information and belief, are continuing to cause substantial and irreparable harm to CIS. CIS hereby incorporates by reference the entirety of its original Verified Complaint, a copy of which is attached hereto as Exhibit A and replaces Paragraph 1 thereof with the following:

12.

## JURISDICTIONAL ALLEGATIONS

Plaintiff CIS Internet Services is a sole proprietorship owned and operated by Robert W. Kramer III with a principal place of business at 2423 North 3rd Street, Clinton, IA 52732 and with users located in Iowa and other states.  Defendants, whose names and identities were not initially known, committed illegal acts intended to and that did cause harm to CIS in the State of Iowa.  CIS has learned the identifies of certain of these John Doe Defendants and identifies them in its First Amended Complaint filed on February 20, 2004 and in this its Second Amended Complaint.  CIS shows that the below-named defendants maintained systematic and continuous contacts with Iowa via the below-described e-mail and Internet-related crimes and schemes.  These Defendants are also subject to jurisdiction pursuant to, among other sources, the Iowa Long-Arm Statute, Iowa Code § 617.3, the Iowa anti-spamming/spoofing statute, Iowa Code § 714E.1, and the principles set forth in Calder v. Jones, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984).  The Defendants for this Second Amended Complaint are identified as follows:

(a)

Plaintiff re-pleads the allegations contained in its First Amended Complaint filed herein on February 20, 2004, identifying Defendant John Does 1 – 24.

(b)

John Doe 25 is hereby identified as Brian Young, 1210 – 203rd St. E, Spanaway, WA 98937.

(c)

John Doe 26 is hereby identified as Kevin Hertz, 8070 La Jolla Shores Drive, Apartment #192, La Jolla, CA 92037.

(d)

John Doe 27 is hereby identified as Jonathan Sadowsky, 328 Oakwood Circle,

Martinez, CA 94553.

(e)

John Doe 28 is hereby identified as Mihir Teneja, 345 Bayshore Boulevard,

Apartment #514, Tampa, FL 33606-2345.

Respectfully submitted,

PILLERS LAW OFFICES, P.C.

G. Wylie Pillers, III
Executive Plaza Building
1127 North 2nd Street
Clinton, Iowa 52732
Telephone:  563-243-2450
Facsimile:  563-243-1440
E-mail:  wpillers@qwest.net

PAUL F. WELLBORN, III (admitted pro
hac vice)
Georgia Bar No. 746720
The Wellborn Firm, LLC
1372 Peachtree St., N.E., Suite 204
Atlanta, GA 30309
Telephone:  404-815-9595
Facsimile:  404-815-9957
E-mail:  pete@wellbornlaw.com
KELLY O. WALLACE (admitted pro hac
vice)
Georgia Bar No. 734166
The Wellborn Firm, LLC
1372 Peachtree St., N.E., Suite 204
Atlanta, GA 30309
Telephone:  404-815-7714
Facsimile:  404-815-9957
E-mail:  kelly@wellbornlaw.com

FILED
ROCK ISLAND, IL

2003 OCT 10  A 10: 20

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | | |
|---|---|---|
| ROBERT W. KRAMER, III | ) | Case No. _____ |
| d/b/a CIS INTERNET SERVICES | ) | |
| Plaintiff | ) | 3. 03CV80109 |
| Vs. | ) | |
| JOHN DOES 1 – 300 | ) | |
| Defendants | ) | COMPLAINT |

## VERIFIED COMPLAINT FOR INJUNCTIONS AND DAMAGES

Plaintiffs CIS Internet Services ("CIS") files this Verified Complaint For Injunction And Damages against John Does 1-300, persons and entities whose identities are not yet known and who acted separately and/or in concert with one or more other defendants to produce the damages described herein.  CIS shows as follows:

## JURISDICTIONAL ALLEGATIONS

1.

Plaintiff CIS Internet Services is a sole proprietorship owned and operated by Robert W. Kramer III with a principal place of business at 2423 North 3rd St., Clinton, IA 52732 and with users located in Iowa and other states. Defendants, whose names and identities are not yet known, committed illegal acts intended to and that did cause harm to CIS in the State of Iowa. As soon as CIS learns the identity(s) of these John Doe Defendants, CIS will file an Amended Complaint identifying these Defendants and will

1

Exhibit "A"

serve those Defendants. Defendants maintain systematic and continuous contacts with Iowa via the below-described e-mail and Internet-related crimes and schemes, which are directed to, among others, Iowa Internet users and which cause harm to the Plaintiff in Iowa. Defendants are also subject to jurisdiction pursuant to, among other sources, the Iowa long-arm statute, Iowa Code § 617.3, the Iowa anti-spamming/spoofing statute, Iowa Code § 714E.1, and the principles set forth in Calder v. Jones, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984).

2.

This Court has proper subject matter jurisdiction.

3.

Venue is proper in this judicial district.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### PARTIES AND BACKGROUND FACTS

#### *E-mail Violations On The Internet: "Spamming" And "Spoofing"*

4.

The acts complained of herein were committed by Defendants through use of the Internet. Often called the "Information Superhighway," the Internet is a complex communications network that links private and public computer networks, systems, and individuals. It consists of computers and computer databases connected primarily through telephone lines, fiber optic cables, and other high-speed dedicated lines. A small portion of the components of the Internet are owned by governmental organizations. Most components, however, are proprietary and are owned and/or administered by "Internet Service Providers" ("ISP's") and other private parties. Specifically, ISP's own

2

computers and other devices that enable their customers to obtain various services including Internet access and the ability to communicate with other Internet users via electronic mail ("e-mail"). In many ways, the Internet resembles our highway transportation system. The phone lines are similar to highways over which goods are transferred from one location to another. Likewise, the computer domain sites operated by Internet users are similar to privately-owned warehouses in which goods are stored and from which they are disseminated to various destinations.

5.

The e-mail systems of the various ISP's serving Internet users around the world were created solely for the benefit of the ISP's and their respective subscribers. The use restrictions imposed by most ISP's, as well as by State and federal law, impose restraints on the manner in which those systems may be used. Among the types of prohibited conduct is the sending of unsolicited commercial e-mails. (See, e.g., CompuServe, Inc. v. Cyber Promotions, Inc., 962 F. Supp. 1015 (S.D. Ohio 1997)). The CIS Internet Services Net Abuse Policy, which governs the use of the CIS addresses and equipment, likewise prohibits such activities. This electronic junk mail is often referred to pejoratively as "spam". It is prohibited because it constitutes a trespass, conversion, and invasion of privacy, because it jeopardizes the performance and viability of the ISP's computer system, because the receiving user must pay for the online time spent reading and deleting the message, and because the advertised products and services are often fraudulent and/or illegal.

6.

"Spam" is the equivalent of a COD package that the recipient is forced to accept, or a series of collect calls that the recipient has no way to decline and that tie up and adversely affect the performance of the recipient's phone system. Such junk e-mail impairs the efficiency of the Internet as a whole and of the Internet-related and proprietary services offered by the victim ISP's. Further, this junk mail illegally causes the user-recipients to incur additional expenses of time, money, and computer resources in relation to the storage, review, and inevitable deletion of the unwanted spam. Finally, and perhaps most importantly, this junk e-mail severely and irreparably damages the business reputation of innocent individuals or companies who are often falsely identified or implied by the spammer as having had some role in the origination or transmission of the offending e-mail.

7.

Such misidentification is pejoratively known as "spoofing" and represents actionable conduct as to any ISP, e-mail service, or other entity wrongfully and falsely identified as having been associated with the e-mail. This fraudulent and deceitful misidentification of the source of a message may be accomplished, among other means, by:

- manipulating the message header to alter the identification of the sender's true name and domain (i.e., manually forging the originating address);

- reference in the text of the message to a particular person or entity; and/or

- by routing the e-mail or message through the innocent ISP's system and otherwise converting that ISP's finite computer resources to create a trail that falsely indicates that the ISP was voluntarily involved in the sending and/or transport of the spam.

4

8.

The depth and degree of the universal hatred of unsolicited commercial e-mail by Internet users is amazing. Indeed, the primary portion of a victimized party's "spoofing"-related damages arises from the incredible and inevitable backlash of complaints and anger by the e-mail recipients against the innocent entity(s) wrongfully believed by the recipients to have sent or helped send the e-mail. With the sending of each "spoofed" e-mail, the innocent party's reputation is damaged, and money and manpower are wasted as the party attempts to respond to the complaints and to identify the true spammer/spoofer. Further, the "spoofing" complained of herein is also harmful and illegal because it represents the wrongful use of the innocent company's name and marks.

9.

The scope and scale of the unsolicited email sent either to CIS users or using forged "cis.net" addresses in the "from" portion of the email address has been gigantic, especially in comparison with the overall size of the CIS system altogether. The result of the flood of fraudulent and illegal that had to be dealt with by CIS's computer systems effectively "shut down" the service at times, effecting what is known as a "denial of service" ("DoS") attack.

10.

On the Internet, a "denial of service" attack is an incident in which a user or organization is deprived of the services of a resource they would normally expect to have. Typically, the loss of service is the inability of a particular network service, such as e-mail, to be available or the temporary loss of all network connectivity and services. A

denial of service attack can also destroy programming and files in a computer system. These attacks can cost the target person or company a great deal of time and money.

11.

A good "real-world" analogy for the denial of service attacks suffered by CIS would be the delivery of so many unsolicited pieces of mail and COD packages to one's home that it is impossible to get to the door from the outside, and impossible to open from the inside due to the sheer weight and volume of the garbage piled up outside. However, unlike postal "junk mail" or COD packages (where the marketer must pay for, at least, the paper and the postage), there is essentially no cost to the Defendants for sending these messages. All of the costs are borne by CIS and its subscribers.

### Plaintiff CIS Internet Services

12.

Plaintiff CIS (Robert W. Kramer III doing business as CIS) was founded in 1996 and has been the owner of the domain name "cis.net" since 1998. CIS is an ISP, providing Internet connectivity, web hosting, and other Internet-related services to its customers. Among the Internet-related services offered by CIS is e-mail service, by which CIS's members are allowed to compose, send, and retrieve e-mail messages. CIS members may send and receive e-mails to and from other CIS members, as well as any other Internet user. CIS's costs of doing business are borne by membership fees and service fees paid by its members. CIS's web site – www.cis.net – has received over five million hits since its inception in 1998.

13.

CIS has invested substantial sums of money in developing and marketing its Internet-related and e-mail-related services. CIS's e-mail systems are operated through dedicated computers known as "servers" which store and route e-mail messages for its members. These systems were created and are maintained solely for the benefit of CIS's members, who must agree to specific terms of use prior to activation of their accounts. These terms include, and have at all relevant times included, strict prohibitions against use of the systems or the ISP name in relation to spamming or spoofing, as well as the use of false or fraudulent information in relation to account activation. For example, a true and correct copy of the CIS Acceptable Use Policy, to which all "dial-up" Internet account holders must agree, can be found at http://www.cis.net/help/aup.htm. Furthermore, a true and correct copy of the CIS Abuse Policy, to which all CIS members must agree, can also be found at that web site.

14.

Each CIS member is given a unique CIS address so that he or she can send and receive e-mail via personal computer. Each member's address consists of a unique name selected by the member plus the CIS domain designation. (For example, user John Doe III might choose "johndoeIII@cis.net" as his e-mail address.) Some CIS users have e-mail addresses that end in other domains (such as "caves.net" and "illowa.net"), which are other domains owned and operated by Robert W. Kramer, the sole proprietor of CIS. CIS's mail servers have a finite capacity designated to accommodate the demands imposed by CIS's members. CIS's computer system is not designed to accommodate,

7

and is vulnerable to disruption by, indiscriminate mass mailings, as described below, from irresponsible and criminal parties such as Defendants.

### *Defendants and Their Wrongful Acts, Generally*

15.

Defendants are criminals. They have engaged in fraud, spamming, and spoofing to the extent that they have totally interrupted Plaintiff's business on numerous occasions. Specifically, they have engaged in unsolicited commercial e-mail campaigns in relation to which they have: converted and trespassed upon CIS's computer equipment for their own purposes; infringed upon the intellectual property of CIS, including the rights to and in "cis.net"; severely damaged CIS's business reputation; intentionally interfered with the services contracts that exist between CIS and its subscribers; and/or otherwise committed the wrongful acts described below. All of Defendants' conduct violates the civil and criminal laws of Iowa governing the misuse and abuse of electronic mail. Iowa Code § 714E.1.

### *Defendants' Spamming And Spoofing Scheme*

### *And The Resulting Damages*

16.

Each Defendant has engaged in a massive scheme of spamming and spoofing, and has intentionally disregarded the harm and damages caused to his victims. Each Defendant has at all times been aware of the illegality of and harm caused by its spamming and spoofing schemes. Nonetheless, Defendants have repeatedly sent unsolicited commercial e-mails to hundreds of thousands of Internet users (including CIS

users) by illegally hijacking CIS's computer resources and, in some cases, the "cis.net" name.

17.

Specifically, in certain of their illegal e-mails, Defendants fraudulently, falsely, and illegally represented that their e-mails originated from CIS or from some other user of the "cis.net" domain. In these e-mails, Defendants used the "cis.net" domain as a part of the falsified "return address" or originating address for many of their e-mails. Defendants made these misrepresentations and otherwise disguised the true source of the e-mails to deflect the thousands of inevitable complaints from disgruntled recipients of the e-mails and the return of millions of "returned as undeliverable" e-mails (i.e., those e-mails sent to invalid addresses). In other cases, Defendants sent e-mails to millions of randomly-generated CIS addresses, nearly shutting down CIS's servers with their voluminous undeliverable e-mails (effectively, a "DoS attack"). Defendants' illegal e-mails include:

(a)

An e-mail advertising a work-at-home "Get Rich Quick" scheme; and

(b)

An e-mail advertising the illegal Internet gambling site "www.desirescasino.com"; and

(c)

An e-mail advertising a pornographic web site called "Rachel's House"; and

(d)

An e-mail advertising a collection of Internet-related "how to" information known as "Search Engine Hell"; and

9

(e)

An email advertising a clearing house for consumer loans at "EZManagement.net"; and

(f)

An e-mail advertising software used to harvest e-mail addresses from the Internet for illegal purposes; and

(g)

An e-mail advertising a clearing house for life insurance quotes apparently sent by an independent contractor salesperson of ReliaQuote.com; and

(h)

A "pump and dump" e-mail regarding a publicly-traded stock ("CBYI"), seeking illegally and artificially to raise the price of the stock; and

(i)

An e-mail advertising a pornographic web site known as "teen-pie.com".

18.

Accordingly, CIS's phone lines, servers, and computers have been bombarded with a multitude of complaint calls and e-mails from Internet users around the world who mistakenly thought that CIS had somehow participated in or condoned Defendants' spamming. Additionally, on the basis of the false "return addresses" inserted by the Defendants, each illegal e-mail in relation to which the recipient address was not valid was "returned" as undeliverable to cis.net. When such e-mail was sent both to nonexistent "cis.net" subscribers and bore a forged CIS "from" address each message effectively impaired CIS's systems twice. The quantity of returned mail and complaints impaired the performance of CIS's servers and computer equipment.

19.

CIS has been forced to devote substantial time and resources to the problems caused by Defendants' illegal acts. These acts have resulted in substantial money damages for CIS, including damage and loss of reputation.

20.

Defendants knew that the quantity of complaints and returned mail resulting from their spamming schemes would damage the reputation of CIS and the performance of its systems. Defendants also knew that their use of CIS's name and computers was not authorized. Defendants also knew that they were prohibited from spamming CIS accounts with their illegal e-mails.

21.

Defendants have at all relevant times been aware of the damage to all legitimate and ethical Internet users and Internet-related companies (including CIS) caused by their illegal spamming and spoofing.

## COUNT I

## FEDERAL CIVIL RICO VIOLATIONS

22.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 21 above as if the same were set forth herein in full.

23.

18 U.S.C. § 1964 creates a private cause of action for persons and entities injured by violations of 18 U.S.C. § 1962 (the federal Racketeer Influenced & Corrupt Organizations Act).

24.

Defendants' e-mail schemes, mail fraud, and wire fraud detailed above (and, in fact, each individual e-mail sent by Defendants) constitute "racketeering activity" as that term is defined in 18 U.S.C. § 1961.

25.

Defendants' e-mails and e-mail schemes constitute a pattern of racketeering activity, as required by 18 U.S.C. § 1961.

26.

In violation of 18 U.S.C. § 1962(a), Defendants have, through the pattern of racketeering activity described above and through the income derived therefrom, used and/or invested such income and its proceeds to acquire, establish and operate an enterprise engaged in and affecting interstate and foreign commerce.

27.

In violation of 18 U.S.C. § 1962(b), Defendants have, through the pattern of racketeering activity described above and through the proceeds derived therefrom, acquired and/or maintained, directly or indirectly, an interest in and/or control of an enterprise engaged in and affecting interstate and foreign commerce.

28.

In violation of 18 U.S.C. § 1962(c), Defendants have, through a pattern of racketeering activity, conducted and participated in, directly or indirectly, an enterprise engaged in and affecting interstate and foreign commerce.

29.

In violation of 18 U.S.C. § 1962(d), Defendants have conspired and/or endeavored to violate the provisions of 18 U.S.C. §§ 1962 (a), (b) and (c).

30.

Pursuant to 18 U.S.C. § 1964, Defendants are liable to Plaintiffs for three times Plaintiffs' actual damages, punitive damages, attorneys' fees, investigative costs, and all other costs associated with or necessitated by the present litigation.

31.

Pursuant to 18 U.S.C. § 1964, Plaintiffs are entitled to a preliminary injunction and a permanent injunction directing Defendants to cease and desist from the above-described conduct.

## COUNT II

## VIOLATIONS OF IOWA ANTI-SPAMMNG & ANTI-SPOOFING STATUTE

32.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 31 above as if the same were set forth herein in full.

33.

Iowa Code § 714E.1 (3) creates a private cause of action for persons and entities injured by violations of Iowa Code § 714E.1, the Iowa law which restricts the use of electronic mail.

34.

Defendants' e-mail messages contained "advertisements" as that term is defined in Iowa Code § 714E.1 (1)(a).

35.

Defendants' messages that have affected Plaintiff CIS constitute "electronic mail" as that term is defined in Iowa Code § 714E.1 (1)(d).

36.

Plaintiff CIS is an "interactive computer service" as that term is defined in Iowa Code § 714E.1 (1)(e).

37.

In violation of Iowa Code § 714E (2)(a), Defendants have used the name of third parties in the return address field of bulk electronic mail without the permission of the third parties.

38.

In violation of Iowa Code § 714E (2)(b), Defendants have misrepresented the point of origin of the transmission path of the electronic mail messages sent to CIS and its subscribers.

39.

In violation of Iowa Code § 714E (2)(c), the messages sent by Defendants do not contain information identifying the true point of origin or true transmission path of the electronic mail messages.

40.

In violation of Iowa Code § 714E (2)(d), the messages sent by Defendants did not provide a readily identifiable email address to which the recipients of their bulk electronic mail could send a request to decline such mail.

41.

In violation of Iowa Code § 714E (2)(e), the Defendants have demonstrated a pattern of continuing to send unsolicited advertisements to recipients who have requested to not receive further mail from Defendants.

42.

Defendants were without authority to use the computer resources of Plaintiff CIS because they: (a) had no right or permission of Plaintiff CIS to use the computer; and (b) used the computer resources of Plaintiff CIS in a manner which exceeded their rights or permission.

43.

Pursuant to Iowa Code § 714E (3)(b), Defendants are liable to Plaintiff CIS for Plaintiff's attorney fees and costs in addition to the greater of: Plaintiff's actual damages, ten dollars per unsolicited bulk electronic mail message transmitted in violation of this section, or $25,000.

44.

Pursuant to Iowa Code § 714E (4), Plaintiff is entitled to an injunction prohibiting Defendants from transmitting any other electronic mail to or through Plaintiff CIS's systems.

45.

The above-mentioned acts by Defendants were despicable in nature and done in willful and wanton disregard of CIS's rights. This is especially true given Defendants' knowledge of the damage caused by Defendants' illegal conduct. Accordingly, CIS is entitled to punitive damages in an amount to be determined at trial.

15

## COUNT III

## VIOLATION OF THE ELECTRONIC

## COMMUNICATIONS PRIVACY ACT

46.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 45 above as if the same were set forth herein in full.

47.

Defendants have and are engaged in acts constituting a violation of Chapter 121 the Electronic Communications Privacy Act, 18 U.S.C. § 2701 et seq.

48.

CIS owns computer systems through which electronic communication services are provided to their respective customers.

49.

Defendants, through means of a computer(s) used in interstate commerce, intentionally obtained access to Plaintiff's facilities by causing to be transmitted into or through Plaintiff's systems excessive amounts of unsolicited electronic communications. Defendants' access to Plaintiff's systems occurred without Plaintiff's authorization and beyond the bounds of any authorization Defendants might reasonably claim. Defendants' acts complained of herein were done knowingly and with the specific intent of assisting in Defendants' scheme to distribute for profit, on an unsolicited, illegal, and improper basis, their own promotional material and advertisements.

50.

Defendants' violations of the Electronic Communications Privacy Act have caused and/or contributed to the cause of damage and/or diminution of speed and utility to the computers, computer systems, networks, information, data and programs of Plaintiff's servers and computer systems. This damage and diminution of performance prevent or diminish the authorized access to and/or use of Plaintiff's systems by Plaintiff's own customers and personnel thereby causing injury to Plaintiff.

51.

Defendants' violations of the Electronic Communications Privacy Act have caused and continue to cause Plaintiff to suffer irreparable injury, loss of reputation, and pecuniary damages to be proved at trial, in excess of the jurisdictional amount-in-controversy requirements of this Court, and of not less than $1,000,000.00 (one million dollars). Unless enjoined by this Court, Defendants will continue these acts of conversion, thereby causing Plaintiff further immediate and irreparable damage.

52.

The above-mentioned acts by Defendants were despicable in nature and done in willful and wanton disregard of CIS's rights. This is especially true given Defendants' knowledge of the damage caused by Defendants' illegal conduct. Accordingly, CIS is entitled to punitive damages in an amount to be determined at trial.

<u>COUNT IV</u>

<u>VIOLATION OF THE COMPUTER</u>

<u>FRAUD AND ABUSE ACT</u>

53.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 52 above as if the same were set forth herein in full.

54.

Defendants have and are engaged in acts constituting a violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 et seq.

55.

Plaintiff maintains one or more computers as defined in § 1030(e) of the Computer Fraud and Abuse Act through which e-mail transmissions are received, stored and/or disseminated.

56.

Defendants, without authorization, or at the very least exceeding any authorization which they might have reasonably claimed, knowingly and willfully caused, through the means of a computer used in interstate commerce, the transmission of one or more programs, information, codes or commands to Plaintiff's computer facilities, with the intent, or at the very least, with reckless disregard of a substantial and unjustified risk, that their transmissions would damage, or cause damage to, a computer, computer system, network, information, data or program of Plaintiff's computer facilities.

18

57.

Defendants' willful transmission of one or more programs, information, codes or commands (i.e., those messages arising from the false return address on their undeliverable e-mails) to Plaintiff's computer facilities have in fact caused or contributed to damage to or diminished performance of the computer, computer systems, networks, information, data, and programs which comprise said facilities and furthermore have caused the withholding and denial of use of the computers, computer services, systems, networks information, data and programs of Plaintiff's computer facilities, thereby causing injury to Plaintiff.

58.

The foregoing acts and conduct of Defendants have caused, and if not enjoined will continue to cause, loss or damage to one or more other persons, including CIS, of a value aggregating $1,000 or more during the applicable one year period.

59.

As a result of Defendants' acts, Plaintiff has suffered and continues to suffer and incur irreparable injury, loss of reputation, and pecuniary damages to be proved at trial, in excess of the jurisdictional amount-in-controversy requirements of this Court, and of not less than $1,000,000.00 (one million dollars).  Unless enjoined by this Court, Defendants will continue these acts, thereby causing CIS further immediate and irreparable damage.

60.

The above-mentioned acts by Defendants were despicable in nature and done in willful and wanton disregard of CIS's rights.  This is especially true given Defendants'

19

knowledge of the damage caused by Defendants' illegal conduct.  Accordingly, CIS is

entitled to punitive damages in an amount to be determined at trial.

## COUNT V

## UNFAIR COMPETITION THROUGH

## FALSE DESIGNATION (LANHAM ACT)

### 61.

CIS realleges and incorporates by reference the allegations contained in

paragraphs 1 through 60 above as if the same were set forth herein in full.

### 62.

Defendants have and are engaged in acts of unfair competition through the use of

false designations of origin and false advertising in violation of Section 43(a) of the

Trademark Act of 1946, 15 U.S.C. § 1125(a).

### 63.

Defendants have used and are using the domain name and mark "cis.net" in

relation to their illegal e-mails.  Accordingly, Defendants have made and are making

false express and implied representations that their services and junk e-mails originate

with, are associated with, and/or are endorsed by CIS (who owns this domain and mark)

in such a manner as to create a likelihood of confusion among the recipients and readers

of those e-mails, thereby inducing the belief that, contrary to fact, Defendants'

advertisements are rendered, sponsored, or otherwise approved by, or connected with

CIS.

64.

Defendants' acts have damaged, impaired and diluted that part of CIS's goodwill and good name symbolized by this domain and by the CIS name to CIS's immediate and irreparable damage, especially insofar as Defendants' acts induce those viewing or receiving Defendants' advertisements to conclude incorrectly on the basis of this misrepresentation that CIS was somehow connected with the illegal e-mails.

65.

Defendants' use of CIS's "cis.net" domain name in connection with their advertising constitutes use of a false designation of origin, and Defendants' representations that their services and advertisements originate with or are endorsed by CIS constitute a use of false descriptions or representations of fact, within the meaning of Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a).  Further, Defendants' use of CIS's domain name/service mark "cis.net" constitutes unfair competition entitling CIS to remedies afforded pursuant to Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a).

66.

As a result of Defendants' acts, CIS has suffered and continue to suffer and incur irreparable injury, loss of reputation, and pecuniary damages to be proved at trial, in excess of the jurisdictional amount-in-controversy requirements of this Court.  Unless enjoined by this Court, Defendants will continue these acts, thereby causing CIS further immediate and irreparable damage.

67.

The above-mentioned acts by Defendants were despicable in nature and done in an intentional, malicious, and oppressive manner in conscious disregard of CIS's rights. This is especially true given Defendants' knowledge of the damage caused by Defendants' illegal conduct. Accordingly, CIS is entitled to punitive damages in an amount to be determined at trial.

## COUNT VI

## DILUTION OF FAMOUS MARK (LANHAM ACT)

68.

CIS realleges and incorporates by reference the allegations contained in paragraphs 1 through 67 above as if the same were set forth herein in full.

69.

Defendants have and are engaged in acts constituting service mark dilution in violation of Section 43(c) of the Trademark Act of 1946, 15 U.S.C. § 25(c).

70.

Defendants have made commercial use of the name and mark "cis.net" with the willful intent to trade on CIS's reputation and to cause dilution of the famous mark/name "cis.net".

71.

Defendants' use of this name and mark began long after CIS's mark and name had become well known and famous (i.e., long after the mark was registered with Network Solutions, which provides constructive notice to the world of such prior use.

72.

Defendants' use of this name and mark causes dilution of its distinctive quality.

22

73.

Defendants' use of this names and mark lessens its capacity to identify and distinguish CIS's goods, services, and customers.

74.

Defendants' activities complained of herein constitute service mark dilution within the meaning of Section 43(c) of the Trademark Act of 1946, 15 U.S.C. §§ 1125(c).

75.

As a result of Defendants' acts, CIS has suffered and continues to suffer and incur irreparable injury, loss of reputation, and pecuniary damages to be proved at trial, in excess of the jurisdictional amount-in-controversy requirements of this Court.  Unless enjoined by this Court, Defendants will continue these acts, thereby causing CIS further immediate and irreparable damage.

76.

The above-mentioned acts by Defendants were despicable in nature and done in willful and wanton disregard of CIS's rights.  This is especially true given Defendants' knowledge of the damage caused by Defendants' illegal conduct.  Accordingly, CIS is entitled to punitive damages in an amount to be determined at trial.

## COUNT VII

## IOCCA VIOLATIONS

77.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 76 above as if the same were set forth herein in full.

23

78.

Iowa Code § 706A.3 (1) creates a private cause of action for persons and entities injured by violations of Iowa Code § 706A (the Iowa Ongoing Criminal Conduct Act ("IOCCA")).

79.

Defendants' e-mail schemes detailed above (and, in fact, each individual e-mail sent by Defendants) constitutes "ongoing criminal conduct" and subjects them to civil and criminal liability under Iowa Code § 706A.

80.

In violation of Iowa Code § 706A.2 (1) (a) and (b), Defendants have, through the pattern of ongoing criminal conduct described above and through the proceeds derived therefrom, acquired and/or maintained, directly or indirectly, an interest in and/or control of an enterprise or real property.

81.

In violation of Iowa Code § 706A.2 (1) (c), Defendants have, through a pattern of ongoing criminal conduct, conducted and participated in, directly or indirectly, an enterprise that they knew was being conducted through ongoing criminal conduct.

82.

In violation Iowa Code § 706A.2 (1) (d), Defendants have conspired and/or attempted to violate and/or solicited and/or facilitated the violation of Iowa Code § 706A.2 (1), (2) and/or (3).

83.

Pursuant to Iowa Code § 706A.3 (7), Defendants are liable to Plaintiff for three times Plaintiff's actual damages, attorneys' fees, investigative costs, and all other costs associated with or necessitated by the present litigation.

84.

Pursuant to Iowa Code § 706A.3 (2), Plaintiff is entitled to a preliminary injunction and a permanent injunction directing Defendants to cease and desist from the above-described conduct.

85.

The above-mentioned acts by Defendants were despicable in nature and done in willful and wanton disregard of CIS's rights.  This is especially true given Defendants' knowledge of the damage caused by Defendants' illegal conduct.  Accordingly, CIS is entitled to punitive damages in an amount to be determined at trial.

## COUNT VIII

## UNFAIR COMPETITION (STATE)

86.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 85 above as if the same were set forth herein in full.

87.

Defendants have and are engaged in fraudulent acts or practices in violation of the prohibitions against unfair competition found in the common law of Iowa.

88.

Defendants have and are engaged in fraudulent acts or practices in violation of the prohibitions against consumer fraud found in Iowa Code § 714.16.

25

89.

Defendants have used and are using Plaintiff CIS's computer equipment and name in connection with the above-described e-mail schemes in such a manner as to misrepresent the source, sponsorship, approval, and/or certification of the e-mail schemes and advertisements. The use of this name and domain designation by Defendants creates the unreasonable risk that recipients and other readers of the e-mails described above may conclude that there exists some affiliation, connection or association between and among CIS, the e-mails, and the sender of the e-mails.

90.

Defendants' acts have damaged, impaired, and diluted that part of Plaintiff CIS's goodwill and good name symbolized by the above-discussed names and marks of Plaintiff CIS. The nature, probable tendency, and effect of Defendants' use of these names and properties in the manner alleged is to enable Defendants to deceive the public.

91.

Defendants' use of CIS's common-law service marks – the above-identified domain designations and names – as alleged constitutes trade name infringement under the common law of Iowa.

92.

Defendants had actual knowledge of CIS's rights at the time they decided to use CIS's mark and name(s) in connection with their illegal-e-mail-related schemes. Thus, Defendants willfully and deliberately infringed CIS's rights.

93.

Defendants' unfair business practices are of a recurring nature and harmful to the consumers and the public at large, as well as Plaintiff CIS. These practices constitute

unlawful, unfair, and fraudulent business practices and unfair, deceptive, untrue, and misleading advertising.

94.

As a result of Defendants' acts, CIS has suffered and continues to suffer and incur irreparable injury, loss of reputation, and pecuniary damages to be proved at trial, in excess of the jurisdictional amount-in-controversy requirements of this Court, and not less than $1,000,000.00 (one million dollars). Unless enjoined by this Court, Defendants will continue these acts, thereby causing CIS further immediate and irreparable damage.

95.

The above-mentioned acts by Defendants were despicable in nature and done in willful and wanton disregard of CIS's rights.  This is especially true given Defendants' knowledge of the damage caused by Defendants' illegal conduct.  Accordingly, CIS is entitled to punitive damages in an amount to be determined at trial.

## COUNT IX

## UNAUTHORIZED COMPUTER ACCESS

96.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 95 above as if the same were set forth herein in full.

97.

Defendants have and are engaged in acts of misappropriation in that Defendants, without authorization, have used CIS's proprietary e-mail system and proprietary computer resources in relation to the transmission of unsolicited and improper

promotional and advertising material (including the direct spamming of CIS members) and have gained fraudulent access to such systems.

98.

Defendants' use of CIS's computer systems and resources, from which Defendants derived profits or income to the detriment of CIS and its customers, constitutes the unfair and unlawful misappropriation of extremely valuable commercial property and resources owned by CIS.

99.

The activities of Defendants described herein constitute misappropriation of CIS's commercial property and services in violation of Iowa Code § 716.6B.

100.

Iowa Code § 716.6B (2) provides a civil cause of action in Iowa to prevent, remedy, and restrain such unauthorized access to CIS's computer network.

101.

Defendants' misappropriation of CIS's commercial property and services has caused and continues to cause CIS to suffer irreparable injury, loss of reputation, and pecuniary damages to be proved at trial, in excess of the jurisdictional amount-in-controversy requirements of this Court, and of not less than $1,000,000.00 (one million dollars).  Unless enjoined by this Court, Defendants will continue these acts of misappropriation, thereby causing CIS further immediate and irreparable damage.

102.

The above-mentioned acts by Defendants were despicable in nature and done in an intentional, malicious, and oppressive manner in conscious disregard of CIS's rights. This is especially true given Defendants' knowledge of the damage caused by

Defendants' illegal conduct. Accordingly, CIS is entitled to punitive damages in an amount to be determined at trial.

## COUNT X

## CONVERSION

103.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 102 above as if the same were set forth herein in full.

104.

Defendants have and are engaged in acts of conversion in violation of the law of the State of Iowa.

105.

The computers, computer networks, and computer services that comprise CIS's e-mail systems are the personal property of CIS. Defendants, without authorization, have intentionally used CIS's e-mail systems for Defendants' own commercial benefit. This unauthorized use by Defendants has deprived CIS and its customers of the legitimate use of these proprietary and commercially valuable systems.

106.

Defendants' conversion of CIS's commercial property has caused and continues to cause CIS to suffer irreparable injury, loss of reputation, and pecuniary damages to be proved at trial, in excess of the jurisdictional amount-in-controversy requirements of this Court, and of not less than $1,000,000.00 (one million dollars). Unless enjoined by this Court, Defendants will continue these acts of conversion, thereby causing CIS further immediate and irreparable damage.

29

107.

The above-mentioned acts by Defendants were despicable in nature and done in willful and wanton disregard of CIS's rights. This is especially true given Defendants' knowledge of the damage caused by Defendants' illegal conduct. Accordingly, CIS is entitled to punitive damages in an amount to be determined at trial.

## COUNT XI

## TRESPASS

108.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 107 above as if the same were set forth herein in full.

109.

Defendants have and are engaged in acts of trespass to property in violation of the law of the State of Iowa.

110.

The computers, computer networks, and computer services that comprise CIS's e-mail system are the personal property of CIS. Defendants, without authorization, have intentionally used CIS's e-mail systems and computer resources for their own commercial benefit. This unauthorized use by Defendants has deprived CIS and its customers of the legitimate use of this proprietary and commercially valuable system.

111.

Defendants' trespass upon CIS's commercial property has caused and continues to cause CIS to suffer irreparable injury, loss of reputation, and pecuniary damages to be proved at trial, in excess of the jurisdictional amount-in-controversy requirements of this

Court, and of not less than $1,000,000.00 (one million dollars).  Unless enjoined by this

Court, Defendants will continue these acts of trespass, thereby causing CIS further

immediate and irreparable damage.

112.

The above-mentioned acts by Defendants were despicable in nature and done in

willful and wanton disregard of CIS's rights.  This is especially true given Defendants'

knowledge of the damage caused by Defendants' illegal conduct.  Accordingly, CIS is

entitled to punitive damages in an amount to be determined at trial.

## COUNT XII

## UNJUST ENRICHMENT

113.

Plaintiff realleges and incorporates by reference the allegations contained in

paragraphs 1 through 112 above as if the same were set forth herein in full.

114.

Defendants have derived economic benefit from the dissemination of unsolicited

commercial messages through the unauthorized use of CIS's proprietary computer

resources, equipment, and intellectual property.

115.

Defendants have paid no compensation to CIS for the dissemination of

Defendants' unsolicited messages and advertisements using CIS's names, marks, and

resources.

116.

As a result, Defendants have been unjustly enriched, entitling CIS to quasi-contract relief under the law of the State of Iowa.

117.

As a result of Defendants' acts, CIS has suffered and continue to suffer and incur irreparable injury, loss of reputation, and pecuniary damages to be proved at trial, in excess of the jurisdictional amount-in-controversy requirements of this Court, and of not less than $1,000,000.00 (one million dollars). Unless enjoined by this Court, Defendants will continue these acts, thereby causing CIS further immediate and irreparable damage.

118.

The above-mentioned acts by Defendants were despicable in nature and done in willful and wanton disregard of CIS's rights. This is especially true given Defendants' knowledge of the damage caused by Defendants' illegal conduct. Accordingly, CIS is entitled to punitive damages in an amount to be determined at trial.

## COUNT XIII

## INTENTIONAL INTERFERENCE WITH CONTRACT

119.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 118 above as if the same were set forth herein in full.

120.

Plaintiff CIS has and had valuable contracts with its subscribers to provide internet services.

32

121.

Defendants knew at all times that CIS and its subscribers had entered into these contracts for the provision of internet services.

122.

Defendants' intentional sending of unsolicited commercial e-mail messages to and through CIS's computer systems improperly interfered with the contracts between Plaintiff CIS and its subscribers, causing Plaintiff CIS to be unable to perform its obligations under the contracts.

123.

Defendants' intentional sending of unsolicited commercial e-mail messages to and through CIS's computer systems interfered with the contracts between Plaintiff CIS and its subscribers, causing Plaintiff CIS's performance under the contract to become burdensome and excessively expensive.

124.

As a result of Defendants' acts, CIS has suffered and continue to suffer and incur irreparable injury, loss of reputation, and pecuniary damages to be proved at trial, in excess of the jurisdictional amount-in-controversy requirements of this Court, and of not less than $1,000,000.00 (one million dollars). Unless enjoined by this Court, Defendants will continue these acts, thereby causing CIS further immediate and irreparable damage.

125.

The above-mentioned acts by Defendants were despicable in nature and done in willful and wanton disregard of CIS's rights. This is especially true given Defendants' knowledge of the damage caused by Defendants' illegal conduct. Accordingly, CIS is entitled to punitive damages in an amount to be determined at trial.

33

COUNT XIV

INTENTIONAL INTERFERENCE

WITH PROSPECTIVE BUSINESS ADVANTAGE

126.

Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 125 above as if the same were set forth herein in full.

127.

Plaintiff CIS had prospective continuing contractual and business relationships with its subscribers prior to Defendants' abuse of the CIS computer systems.

128.

Defendants knew of the contractual and business relationships between CIS and its subscribers at all times.

129.

Defendants' intentional sending of unsolicited commercial e-mail messages to and through CIS's computer systems improperly interfered with the contracts between Plaintiff CIS and its subscribers, causing Plaintiff CIS to be unable to perform its obligations under the contracts.

130.

Defendants' intentional sending of unsolicited commercial e-mail messages to and through CIS's computer systems interfered with the contracts and business relationships between Plaintiff CIS and its subscribers, causing the subscribers not to continue their contractual and business relationships with CIS.

34

131.

Defendants' intentional sending of unsolicited commercial e-mail messages to and through CIS's computer systems interfered with the contracts and business relationships between Plaintiff CIS and its subscribers, causing Plaintiff CIS to be unable to continue the contractual and business relationships with its subscribers.

132.

As a result of Defendants' acts, CIS has suffered and continue to suffer and incur irreparable injury, loss of reputation, and pecuniary damages to be proved at trial, in excess of the jurisdictional amount-in-controversy requirements of this Court, and of not less than $1,000,000.00 (one million dollars). Unless enjoined by this Court, Defendants will continue these acts, thereby causing CIS further immediate and irreparable damage.

133.

The above-mentioned acts by Defendants were despicable in nature and done in willful and wanton disregard of CIS's rights. This is especially true given Defendants' knowledge of the damage caused by Defendants' illegal conduct. Accordingly, CIS is entitled to punitive damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

134.

WHEREFORE, Plaintiff CIS prays for judgment against Defendants, and each of them, jointly and severally, that includes:

    (a)   A preliminary and permanent injunction enjoining Defendants and any affiliated persons or entities from: (1) directly or indirectly sending or transmitting any unsolicited commercial e-mails to any

35

Internet user, including but not limited to any such messages that references or use in any way CIS or any of its property, computers, domains, or users; and (2) engaging in any further illegal activities in relation to the theft and/or misuse of third-party credit card numbers, passwords, or e-mails accounts; and (3) any use of, whether individually or by and through someone else, any computer or telecommunications device to obtain connectivity to the Internet;

(b)   Special and general damages in an amount to be proven at trial;

(c)   The trebling of its damages pursuant to statutory law cited herein;

(d)   Punitive and exemplary damages in an amount to be proven at trial;

(e)   Reasonable attorney fees herein;

(f)   Costs of suit incurred herein; and

(g)   Such other and further relief as this Court may deem just and proper.

This _____ day of October, 2003.

Respectfully Submitted,

**PILLERS LAW OFFICES, P.C.**

By: _____

G. Wylie Pillers, III
Executive Plaza Building
1127 North 2nd St., Suite D
Clinton, Iowa 52732
Telephone:  563-243-2450
Facsimile:  563-243-1440
E-mail:  wpillers@pnz.com

**Of Counsel**
*(pro hac vice applications to be filed ASAP)*

Paul F. Wellborn, III
Georgia Bar No. 746720

Wellborn & Butler, LLC
1372 Peachtree St., N.E., Suite 204
Atlanta, GA 30309

Telephone:  404-815-9587
Facsimile:  404-815-9957
E-mail:  pete@wellbornlaw.com

Respectfully Submitted,

**PILLERS LAW OFFICES, P.C.**

By: _____

G. Wylie Pillers, III
Executive Plaza Building
1127 North 2nd St., Suite D
Clinton, Iowa 52732
Telephone: 563-243-2450
Facsimile: 563-243-1440
E-mail: wpillers@ppz.com

**Of Counsel**
(*pro hac vice applications to be filed ASAP*)

Paul F. Wellborn, III
Georgia Bar No. 746720

Wellborn & Butler, LLC
1372 Peachtree St., N.E., Suite 204
Atlanta, GA 30309

Telephone: 404-815-9595
Facsimile: 404-815-9957
E-mail: pete@wellbornlaw.com

JS-44 - IOWA

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

ROBERT W. KRAMER, III
d/b/a CIS INTERNET SERVICES,

**(b)** County of Residence of First Listed Plaintiff **Clinton**
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Pillers Law Offices, P.C.
Executive Plaza Building
1127 North 2nd Street
Clinton, Iowa 52732

## DEFENDANTS

JOHN DOES 1 - 300, BRIAN YOUNG,
KEVIN HERTZ, JONATHAN SADOWSKY
and MIHIR TENEJA

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ U.S. Government Plaintiff

☐ U.S. Government Defendant

☐ Federal Question (U.S. Government Not a Party)

☒ Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ | ☐ | Incorporated or Principal Place of Business In This State | ☒ | ☐ |
| Citizen of Another State | ☐ | ☒ | Incorporated and Principal Place of Business In Another State | ☐ | ☒ |
| Citizen or Subject of a Foreign Country | ☐ | ☐ | Foreign Nation | ☐ | ☐ |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

### CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability

### TORTS
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

**PERSONAL INJURY**
☐ 362 Personal Injury — Med. Malpractice
☐ 365 Personal Injury — Product Liability
☐ 368 Asbestos Personal Injury Product Liability
**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

### FORFEITURE/PENALTY
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

### LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt.Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

### BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

### SOCIAL SECURITY
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes
☒ 890 Other Statutory Actions

### REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### CIVIL RIGHTS
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 440 Other Civil Rights

### PRISONER PETITIONS
☐ 510 Motions to Vacate Sentence
**Habeas Corpus:**
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See INSTRUCTIONS and LR 3.1(e))

JUDGE _Thomas J. Shields_   DOCKET NUMBER _____

DATE
March 30, 2004

SIGNATURE OF ATTORNEY OF RECORD
/G. Wylie Pillers, III

FOR OFFICE USE ONLY

RECEIPT # _____  AMOUN_____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

*Summons iss'd*

JS 44 Reverse

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

### Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.     **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b.) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.     **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States, are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.     **Residence (citizenship) of Principal Parties.** This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.     **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.     **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a) Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI.     **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause.

VII.     **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.     **Related Cases.** The plaintiff/removing defendant must identify all related cases that the attorney or party(s) are aware that either are pending in any Iowa state or federal court or were concluded in any Iowa state or federal court within the preceding year. (A case may be assigned to a judicial officer who handled a related federal case.) The plaintiff/removing defendant must also identify in the civil cover sheet all pending bankruptcy proceedings that counsel or client(s) are aware that have been initiated by any party. See Local Rule 3.1(e). If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.