UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

ROBERT W. KRAMER, III )
d/b/a CIS INTERNET SERVICES, )
                                     )
    Plaintiff, )
                                       )
v. )    Case No. 3:03 CV 80109
                                       )
CASH LINK SYSTEMS, INC.; )
AMERIP.O.S., INC.; )
AMP DOLLAR SAVINGS, INC.; )
JAMES McCALLA; DAMON )
DECRESCENZO; TEI MARKETING )
GROUP, INC.; )
NATIONAL CREDIT SYSTEMS, INC.;)
and JOHN DOES 29-300, )
                                       )
    Defendants. )

## BRIEF IN SUPPORT OF PLAINTIFF CIS' MOTION FOR SUMMARY JUDGMENT AND PERMANENT INJUNCTION AS TO DEFENDANT JAMES MCCALLA

Kelly O. Wallace
WELLBORN & WALLACE, LLC
Georgia Bar No. 734166
1372 Peachtree St. NE, Suite 204
Atlanta, GA 30309
Ph: (404) 815-7714
Fx: (404) 815-9957

G. Wylie Pillers, III
PILLERS LAW OFFICES, P.C.
Executive Plaza Building
1127 North 2nd Street
Clinton, Iowa, 52732
Tel: (563) 243-2450
Fax: (563) 243-1440

Attorneys for Robert W. Kramer, III

**TABLE OF CONTENTS**

FACTS....................................................... 1

DISCUSSION.................................................. 3

I.    MCCALLA HAS ADMITTED EACH OF THE STATEMENTS PRESENTED IN
      PLAINTIFF'S REQUESTS FOR ADMISSIONS...................... 3

II.   MCCALLA SENT IN EXCESS OF TWO HUNDRED EIGHTY MILLION
      ILLEGAL UNSOLICITED COMMERCIAL E-MAIL MESSAGES INTO CIS'
      IOWA COMPUTER SYSTEMS................................... 3

III.  MCCALLA'S ILLEGAL E-MAIL OPERATIONS CONSTITUTE ONGOING
      CRIMINAL CONDUCT........................................ 5

IV.   MCCALLA'S ILLEGAL E-MAILS WERE DIRECTED SPECIFICALLY AT
      CIS' IOWA COMPUTER SYSTEMS IN WILLFUL AND WONTON DISREGARD
      OF CIS' RIGHTS.......................................... 6

V.    CIS IS ENTITLED TO AN INJUNCTION PROHIBITING MCCALLA FROM
      SENDING UNSOLICITED COMMERCIAL E-MAILS IN THE FUTURE...... 7

      A. Iowa's Anti-Spam Statute And IOCCA Explicitly Authorize
         Injunctive Relief For McCalla's Illegal Acts. .......... 7

      B. Equity Demands That This Court Permanently Enjoin McCalla
         From Future Injuries On CIS. .......................... 7

            1. McCalla's Ongoing Transmission Of Illegal E-Mail
               Messages Poses A Grave Threat Of Irreparable Harm To
               CIS. .......................................... 8

            2. The Threat Of Additional Injury To CIS Greatly
               Outweighs Any Possible Injury A Permanent Injunction
               Might Impose On McCalla. ........................ 9

            3. Public Policy Strongly Supports The Entry Of A
               Permanent Injunction Prohibiting McCalla From Future
               Violations Of State And Federal Anti-Spam Laws. ... 9

DAMAGES.................................................... 13

I.    CIS IS ENTITLED TO BASE DAMAGES AS PROVIDED BY THE ANTI-
      SPAM STATUTE........................................... 13

i

II.   CIS IS ENTITLED TO THE TREBLING OF ITS COMPENSATORY DAMAGES
      UNDER IOCCA........................................................ 14

CONCLUSION.................................................................. 14

Plaintiff Robert W. Kramer, III d/b/a CIS Internet Services ("Plaintiff" or "CIS") files this brief in support of its <u>Motion for Summary Judgment as to Defendant James McCalla</u> and shows as follows:

## FACTS

James McCalla ("McCalla") is a professional spammer. *(Plaintiff's Statement of Material Facts Not In Dispute ("Statement") at Nos. 1, 5, 12, 15).* Since <u>at least</u> 2003, under various names, he has, for his own benefit, sent unsolicited commercial e-mail messages (pejoratively known as "spam") to countless Internet-users throughout the United States and the world. *(Id.)* More specifically, he has sent more than <u>two hundred eighty million</u> illegal spam e-mail messages into the Iowa-based computer systems of CIS. *(Statement at Nos. 1, 4, 6, 7).*

At all times relevant to McCalla sending his junk e-mail, he was aware of the illegality of his actions as well as the damage that he was causing to CIS's computer network and business. *(Statement at Nos. 4, 8, 9).* In order to avoid criminal and civil liability for sending the illegal e-mail, McCalla took several steps to hide his own involvement in the process, and to misdirect anyone interested in identifying the actual sender of the e-mail. *(Statement at Nos. 2, 3, 10, 11).*

McCalla forged the e-mail addresses appearing in the "From" and "Reply-to" fields of each piece of e-mail, so that recipients would now know who had actually sent the message and so that the true number of messages sent by McCalla would be difficult to count. *(Statement at No. 2).* McCalla also intentionally provided false registration information for the Internet domain names referenced in the illegal e-mail messages in a further effort to misdirect his victims' attempts to identify him. *(Statement at No. 11).*

At all times, McCalla was aware that CIS prohibited the transmission of unsolicited commercial e-mail messages to its subscribers. *(Statement at No. 8).* McCalla had no actual or apparent authority to send unsolicited commercial e-mail messages into CIS's Iowa computer network or to CIS subscribers. *(Statement at No. 9).*

McCalla used a list of e-mail addresses – including approximately 2.8 million distinct "@cis.net" addresses – available on the "Bulk Mail 4 Dummies" CD-ROM ("BM4D"). *(Statement at No. 6).* During 2003, McCalla sent one hundred spam e-mails to each address in the list appearing on BM4D. *(Statement at No. 7).*

Despite his identification and this litigation by CIS, McCalla continues to send illegal unsolicited commercial e-mail

messages into CIS's Iowa computer network.  *(Statement at No. 12)*.

## DISCUSSION

### I.  MCCALLA HAS ADMITTED EACH OF THE STATEMENTS PRESENTED IN PLAINTIFF'S REQUESTS FOR ADMISSIONS.

Matters presented to a party in Requests for Admission under Federal Rule of Civil Procedure 36 are "admitted unless, within 30 days after service of the request . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter".  Fed. R. Civ. P. 36(a).  Any matter admitted in this matter is conclusively established.  Fed. R. Civ. P. 36(b). Plaintiff served discovery materials (including twenty-four requests for admission) on Defendant McCalla on February 1, 2005.  *(See Requests for Admission at Appendix pp. 1-5)*. McCalla's answers or objections to the admissions were required to be submitted to the CIS within 30 days.  Fed. R. Civ P. 36(a).  No answers, objections, or denials have ever been served by Defendant McCalla, despite plaintiff's counsel's repeated requests.

### II. MCCALLA SENT IN EXCESS OF TWO HUNDRED EIGHTY MILLION ILLEGAL UNSOLICITED COMMERCIAL E-MAIL MESSAGES INTO CIS' IOWA COMPUTER SYSTEMS.

Iowa Code section 714E.1 (the "Anti-Spam Statute") makes it illegal to send unsolicited commercial e-mail messages to Iowa

3

residents and Internet service providers ("ISPs") if the e-mail misrepresents any information in identifying the point of origin of the transmission path of the electronic mail or does not contain information identifying the point of origin or the transmission path of the electronic mail message.  Iowa Code § 714E.1(2)(b) and (2)(c).  The Anti-Spam Statute also provides a civil cause of action for individuals and ISPs injured by such violations.  Iowa Code § 714E.1(3).  For ISPs injured by violations of the Anti-Spam Statute, the statute provides for statutory damages of ten dollars per violative e-mail message, in addition to costs and attorney fees.  Iowa Code § 714E.1(3)(b).

Here, the e-mail messages sent by McCalla were sent using "third-party relay,"[1] and with forged "from" and "reply-to" headers, all of which are misrepresentations or omissions of the message's true point of origin and/or transmission path. *(Statement at Nos. 2, 3).*  McCalla sent over 280 million illegal unsolicited commercial e-mails into CIS's Iowa computer network. *(Statement at Nos. 6, 7).*  The undisputed facts conclusively

---

[1] "Third-party relay" is a process which uses an intervening computer between the sending computer and the recipient-ISP's mail server computer.  Because the recipient's mail server can only identify the computer that connects to it to transmit the message, the computer from which the e-mail message originated is concealed.

establish each element of CIS's claim for relief under the Anti-Spam Statute.  Accordingly, CIS is entitled to the damages provided by the Anti-Spam Statute resulting from McCalla's illegal acts.

## III. MCCALLA'S ILLEGAL E-MAIL OPERATIONS CONSTITUTE ONGOING CRIMINAL CONDUCT.

It is a violation of the Iowa Ongoing Criminal Conduct Act ("IOCCA"), Iowa Code § 706A.1 et seq., for

> any person to knowingly conduct the affairs of any enterprise through specified unlawful activity or to knowingly participate, directly or indirectly, in any enterprise that the person knows is being conducted through specified unlawful activity.

Iowa Code § 706A.2(1)(c).  "Specified unlawful activity" is defined by IOCCA as

> any act, including any preparatory or completed offense, committed for financial gain on a continuing basis, that is punishable as an indictable offense under the laws of the state in which it occurred and under the laws of this state.

Iowa Code § 706A.1(5).  The Anti-Spam Statute, Iowa Code § 714E.1, is a criminal statute and its violation constitutes an indictable offense.

Here, McCalla knowingly sent hundreds of millions of spam e-mails into CIS's Iowa computer systems, knowing that each e-mail constituted a criminal violation of the Anti-Spam Statute.

5

*(Statement at Nos. 4, 9).*  McCalla sent the illegal e-mails while conducting the business of his corporation, JMC Marketing, Inc.  *(Statement at Nos. 5, 15).*  The undisputed facts conclusively establish that McCalla engaged in ongoing criminal conduct under the laws of Iowa, entitling CIS to the remedies provided by IOCCA.

## IV. MCCALLA'S ILLEGAL E-MAILS WERE DIRECTED SPECIFICALLY AT CIS' IOWA COMPUTER SYSTEMS IN WILLFUL AND WONTON DISREGARD OF CIS' RIGHTS.

Punitive damages are justified when the acts of the defendant are malicious. The malice may be actual or it may be legal, as where the defendant acts illegally or improperly with reckless disregard for another's rights. <u>Crawley v. Price</u>, 692 N.W.2d 44, 50 (Iowa App. 2004) (citing <u>Condon Auto Sales & Service</u>, 604 N.W.2d 587, 594).  Here, the undisputed facts clearly show that McCalla not only intended that CIS receive the hundreds of millions of illegal e-mail messages sent during 2003, but that he was aware of the injury that the receipt of such a volume of e-mail would inflict on CIS.  *(Statement at Nos. 4, 8, 9).*  Accordingly, CIS is entitled to an award of punitive or exemplary damages to deter McCalla (and others similarly situated) from such illegal conduct in the future.

## V. CIS IS ENTITLED TO AN INJUNCTION PROHIBITING MCCALLA FROM SENDING UNSOLICITED COMMERCIAL E-MAILS IN THE FUTURE.

In addition to the statutory and other monetary damages resulting from McCalla's illegal e-mail activities, CIS is entitled to a permanent injunction that will prohibit McCalla from continuing to engage his is illegal activities.

### A. Iowa's Anti-Spam Statute and IOCCA Explicitly Authorize Injunctive Relief For McCalla's Illegal Acts.

When an injunction is explicitly authorized by statute, proper discretion usually requires its issuance if the prerequisites for the remedy have been demonstrated and the injunction would fulfill the legislative purpose.  Minnesota ex rel. Hatch v. Sunbelt Communications and Marketing, 282 F.Supp.2d 976, 979 (D.Minn. 2002).  The Anti-Spam Statute specifically provides for injunctive relief prohibiting future violations of the Anti-Spam Statute against he plaintiff.  See Iowa Code § 714E.1(4).  In addition, IOCCA provides for the grant of injunctive relief as in other civil cases, but eliminates the requirement that the plaintiff show a special or irreparable injury.  Iowa Code § 706A.3(5).

### B. Equity Demands That This Court Permanently Enjoin McCalla From Future Injuries on CIS.

A court must consider the following factors in determining whether to issue a permanent injunction: (1) the threat of

7

irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties; (3) whether the movant proves actual success on the merits; and (4) the public interest.  <u>Forest Park II v. Hadley</u>, 336 F.3d 724, 731 (8th Cir. 2003).  CIS' success on the merits of this case are detailed in the arguments relating to McCalla's substantive liability, above.  All of the remaining factors strongly favor the entry of an injunction that will prevent McCalla from injuring CIS – or any other Internet user – in the future.

### 1. <u>McCalla's ongoing transmission Of illegal e-mail messages poses a grave threat of irreparable harm to CIS.</u>

In addition to the ordinary business costs incurred by CIS resulting from the flood of illegal e-mail messages sent by McCalla, CIS has suffered (and continues to suffer) damages to its business reputation and goodwill, and has lost both CIS subscribers and future subscriber/business opportunities as a result of the McCalla spam.  Injury to goodwill constitutes the sort of intangible injury which may be found to be irreparable harm for purpose of weighing propriety of injunction.  <u>Moore Business Forms, Inc. v. Wilson</u>, 953 F.Supp. 1056, 1062 (N.D. Iowa 1996).  In addition, the Iowa legislature and the United States Congress have recognized that the injuries suffered by

8

the ISPs and individual recipients of illegal e-mail messages are of a type for which injunctive relief is appropriate.  Iowa Code § 714E.1(4);  <u>see also</u> 15 U.S.C. § 7701 *et seq.* ("the CAN-SPAM Act").[2]

### 2. The threat of additional injury To CIS greatly outweighs any possible injury a permanent injunction might impose on McCalla.

The present matter is not the typical setting for a request for injunctive relief.  This case does not involve a colorable business dispute and does not relate to "arguably" defensible conduct.  <u>There can be no doubt that McCalla's misconduct against CIS is illegal and actionable, and will continue in the absence of injunctive relief</u>.  As a matter of fact, law, and logic, McCalla cannot claim any "injury" in being forced to abide by the governing federal and state laws and accordingly to cease their unlawful spamming and spoofing.

### 3. Public policy strongly supports the entry of a permanent injunction prohibiting McCalla from future violations of state and federal anti-spam laws.

On January 1, 2004 – during the litigation of this case – the CAN-SPAM Act of 2004 ("the Act") went into effect.  In

---

[2] Specifically, 15 U.S.C. § 7706(g)(1)(A) specifically authorizes: "A provider of Internet access service [(e.g., CIS)] . . . may bring a civil action in any district court of the United States with jurisdiction over the defendant . . . to enjoin further violation by the defendant."

passing the Act, Congress recognized the extraordinary injury that illegal unsolicited commercial e-mail inflicts upon individuals and businesses in the United States.  The acts which McCalla undertook throughout 2003 would expose him to both civil and criminal liability under the Act, had it been in effect at that time.

The collective interest of the millions of Internet users put at risk by McCalla's criminal conduct.  As is discussed below, that public interest demands that the scope of the requested injunctive relief provide protection for **all ISPs and Internet users**, not just for CIS.  **Otherwise, McCalla will simply leave CIS alone and move on to other victims.**  This Court must not ignore the vast number of victimized Internet users and providers across the nation who are less able to defend themselves than is CIS.  Justice demands that this Court prevent such a scenario.

In a situation like the present matter, the injunctive relief should include protections for both the plaintiff <u>and</u> similarly-situated parties.  The court in <u>Carmichael v. Birmingham Saw Works</u>, 738 F.2d 1126, 1136 (11th Cir. 1984) explained that "injunctive relief may benefit individuals not party to the action, and that class-wide injunctive relief may be appropriate in an individual action."  Likewise, in <u>Tinetti</u>

10

v. Wittke, 479 F. Supp. 486, 491 (E.D. Wis. 1979), aff'd 620
F.2d 160 (7th Cir. 1980), the court permanently enjoined the
defendants from the complained-of practice as to all potential
victims, notwithstanding the fact that suit was not brought as a
class action.  The Tinetti court explained that "the general
rule is that . . . injunctive relief is appropriate when it will
benefit the claimant and all others subject to the practice
under attack."  Id. at 491.  The court in Bresgal v. Brock, 843
F.2d 1163, 1170-71 (9th Cir. 1987), echoed this rule, stating
flatly that "[c]lass-wide relief may be appropriate even in an
individual action."  In that case, the court ultimately enjoined
the defendant's conduct with respect to all potential victims,
not just in relation to the plaintiff.  The court explained that
injunctive relief may "extend . . . benefit or protection to
persons other than prevailing parties in the lawsuit even if it
is not a class action - if such breadth is necessary to give the
prevailing parties the relief to which they are entitled."  Id.

     The weight of the relevant authority leaves no doubt that
this Court is empowered to enjoin McCalla in a manner that will
protect all ISPs and Internet users.  See, e.g., United States
v. Dinwiddie, 885 F. Supp. 1286 (W.D. Mo. 1995) (in which
defendant's conduct was enjoined as to all entities situated
similarly to plaintiff because the threat of similar misconduct

11

by defendant against them was likely); <u>United States v. Franchi</u>,
756 F. Supp. 889, 895-96 (W. D. Pa. 1991) (preliminarily
enjoining defendant from engaging in the complained-of illegal
conduct without specific reference to the victim on the basis of
consideration of, among other factors, public interest in the
grant of such relief); <u>Forschner Group, Inc. v. Arrow Trading
Co., Inc.</u>, 124 F.3d 402, 406 (2nd Cir. 1997) (explaining that
"[a] district court has a wide range of discretion in framing an
injunction in terms it deems reasonable to prevent wrongful
conduct"); <u>Equal Employment Opportunity Commission v. Wilson
Metal Casket Co.</u>, 24 F.3d 836, 842 (6th Cir. 1994) (stating that
"[a] district court has broad discretionary powers to craft an
injunction to the specific violations found to ensure that the
[defendant] complies with the law. . . . The proper scope of an
injunction is to enjoin conduct which has been found to have
been pursued or is related to the proven unlawful conduct").

Indeed, third-party protection is especially appropriate
where (as here) the plaintiff has alleged a pattern of recurring
misconduct, such as via CIS' IOCCA claim.  Courts considering
requests for injunctive relief in cases involving meritorious
Federal RICO claims routinely enjoin the defendant from
committing any further acts of the type that comprised the
pattern of misconduct.  See <u>United States v. Carson</u>, 52 F.3d

12

1173, 1184-85 (2nd Cir. 1995) (in which the defendant was "absolute[ly] and permanent[ly] enjoined from participating in the affairs of <u>any</u> labor organization); <u>United States v. Private Sanitation Industry Assoc. of Nassau/Suffolk, Inc.</u>, 793 F. Supp. 1114, 1150 (E.D. N.Y. 1992) (citing the express statutory grant to the court of the right to "prohibi[t] any person from engaging in the same type of endeavor as the enterprise engaged in"). Accordingly, consistent with both its prior rulings and with its duty to protect the public, this Court should prohibit McCalla from continuing his illegal conduct against <u>any and all</u> potential victims.

## DAMAGES

## I. CIS IS ENTITLED TO BASE DAMAGES AS PROVIDED BY THE ANTI-SPAM STATUTE.

The undisputed facts of this case have established that McCalla sent in excess of two hundred eighty million e-mail messages that violated the Anti-Spam Statute. *(Statements at Nos. 4, 6, 7).* As an Iowa Internet services provider *(Statements at No. 13, 14)*, CIS is entitled to an award of damages pursuant to Iowa Code § 714E.1(3)(b)(1). Accordingly, in addition to costs and attorney fees, CIS is entitled to ten dollars for each violative message or <u>two billion, eight hundred</u>

million dollars (280,000,000 messages x $10/message = $2,800,000,000).

## II. CIS IS ENTITLED TO THE TREBLING OF ITS COMPENSATORY DAMAGES UNDER IOCCA.

Trebling of the actual damages, along with the costs and expenses incurred in the investigation and prosecution of a successful action under IOCCA, is mandatory under Iowa law. Iowa Code § 706A.3(7); see also Iowa Code § 4.1(30)(a) ("The word 'shall' in a statute 'imposes a duty.'"); State v. Klawonn, 609 N.W.2d 515, 522 (Iowa 2000) (citing City of Newton v. Board of Supervisors, 135 Iowa 27, 30, 112 N.W. 167, 168 (1907) ("The uniform rule seems to be that the word 'shall,' when addressed to public officials, is mandatory and excludes the idea of discretion.").

### CONCLUSION

For the foregoing reasons, CIS respectfully requests that this Court grant the following relief:

(a) That CIS's Motion for Summary Judgment be **GRANTED**;

(b) That CIS be awarded compensatory damages in the amount of $2,800,000,000, plus all attorney fees and costs in bringing this action;

(c) That such damages be trebled pursuant to Iowa Code § 706A.1 *et seq.*;

14

(d) That CIS be awarded punitive damages in an amount to be determined by the fair and enlightened conscience of this Court, to deter McCalla (and others similarly situated) from future tortious and illegal activity;

(e) That this Court enter the Proposed Order of Permanent Injunction attached hereto at Exhibit A, prohibiting Defendant McCalla from similar future conduct directed at any Internet users or ISPs; and

(f) That this Court grant such other and further relief that it deems proper.

Respectfully submitted this 26th day of April, 2005.

**WELLBORN & WALLACE, LLC**

_Kelly O. Wallace_

Kelly O. Wallace
Georgia Bar No. 734166

1372 Peachtree St. NE, Suite 204
Atlanta, GA 30309
Ph:  (404) 815-7714
Fx:  (404) 815-9957

G. Wylie Pillers, III
PILLERS LAW OFFICES, P.C.
Executive Plaza Building
1127 North 2nd Street
Clinton, Iowa, 52732
Tel: (563) 243-2450
Fax: (563) 243-1440

Attorneys for Robert W. Kramer, III

## INDEX TO EXHIBITS

Exhibit A    Proposed Order of Permanent Injunction

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

ROBERT W. KRAMER, III           )
d/b/a CIS INTERNET SERVICES,    )
                                )
    Plaintiff,                  )
                                )
v.                              )    Case No. 3:03 CV 80109
                                )
CASH LINK SYSTEMS, INC.;        )
AMERIP.O.S., INC.;              )
AMP DOLLAR SAVINGS, INC.;       )
JAMES McCALLA; DAMON            )
DECRESCENZO; TEI MARKETING      )
GROUP, INC.;                    )
NATIONAL CREDIT SYSTEMS, INC.;  )
and JOHN DOES 29-300,           )
                                )
    Defendants.                 )

## CERTIFICATE OF SERVICE

This is to certify that I have this date served a copy of the foregoing Brief upon the below-identified by either U.S. first class mail addressed as follows or by hand (as indicated):

**For Defendant James McCalla:**
7200 NW 179th St.
Apartment 310
Miami, FL 33011

and

P.O. Box 246631
Pembroke Pines, FL 33024

Respectfully submitted this 26th day of April 2005.

**WELLBORN & WALLACE, LLC**

_____

Kelly O. Wallace
Georgia Bar No. 734166

1372 Peachtree St. NE, Suite 204
Atlanta, GA 30309
Ph:  (404) 815-7714
Fx:  (404) 815-9957

Attorney for Robert W. Kramer, III

2