IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

ROBERT W. KRAMER, III, d/b/a
CIS INTERNET SERVICES,

        Plaintiff,                    No. 3-03-CV-80109-CRW-TJS

vs.                                        SUMMARY JUDGMENT FOR
                                            DAMAGES AND INJUNCTIVE
CASH LINK SYSTEMS; AMERIP.O.S.                RELIEF
INC.; AMP DOLLAR SAVINGS, INC.;
JAMES MCCALLA; DAMON
DECRESCENZO; TEI MARKETING GROUP, INC.;
NATIONAL CREDIT SYSTEMS, INC.;
and JOHN DOES 29-300,

        Defendants.

       The Court now enters this final judgment for plaintiff Robert W. Kramer, III d/b/a CIS Internet Services (CIS) and against defendant James McCalla (McCalla).[1]

       The court held an evidentiary hearing on November 23, 2004, via telephone conference call. Plaintiff obtained in personam jurisdiction over defendant McCalla, and this Court has proper jurisdiction over the subject matter. Plaintiff's counsel referred to evidence submitted to the Court in the form of a declaration by the plaintiff. Facts supporting judgment were also proved by McCalla's failure to respond to requests for admission.

       CIS is an Iowa resident operating a business that provides Internet services, including electronic mail (e-mail), to customers in the vicinity of Clinton, Iowa. Defendant McCalla is a Florida resident whose intentional and illegal acts were intended to and did cause harm to CIS in

---

[1] This Court previously entered summary judgment against defendant McCalla on November 1, 2005, following two hearings and the Court's request for submission of supplemental papers on plaintiff's motion for summary judgment.

the State of Iowa, damaging the CIS internet systems, CIS's business, its relationships with its customers, and the public.

**The Internet and E-mail**.   Sometimes called the "Information Superhighway," the Internet is a complex communications network that links private and public computer networks, systems, and individual users.  It consists of computers connected primarily through telephone lines, fiber optic cables, and other high-speed dedicated lines.  Some of the components of the Internet are owned by governmental organizations.  (Verified Complaint at ¶4).

Most components of the Internet are proprietary, owned and administered by "Internet Service Providers"(ISPs).  ISPs own computers, telecommunication lines, and other devices that enable their customers to obtain various services, including Internet access and the ability to communicate with other Internet users via e-mail.  (Verified Complaint at ¶4).

**Spam.**   The e-mail systems of the various ISPs serving Internet users around the world were created primarily for the benefit of the ISPs and their respective subscribers.  The use restrictions imposed by most ISPs, as well as by State and Federal law, impose restraints on the manner in which these systems may be used.  Prohibited conduct includes the sending of unsolicited commercial e-mails.  See e.g., CompuServe, Inc. v. Cyber Promotions, Inc., 962 F. Supp. 1015 (S. D. Ohio 1997); Verizon Online Serv., Inc.  v. Ralsky, 203 F. Supp.2d 601 (E.D.Va. 2002).

The CIS Acceptable Use Policy, which governs the use of CIS's computer systems and CIS's incoming mail-service computers, specifically prohibits the transmission of unsolicited commercial e-mail into the CIS computer network.  The transmission of spam into CIS's computer systems constitutes a trespass and conversion, jeopardizing the performance and

viability of CIS's computer system.

Spam impairs the efficiency of the Internet as a whole and the proprietary services offered by CIS to its customers. This junk mail illegally causes the user-recipients (including CIS) to incur additional expenditures of time, money, and computer resources, since they must store, review, and inevitably attempt to delete spam. Spam transmitted by the defendant McCalla has severely and irreparably damaged the business reputations of CIS and other ISPs. (Verified Complaint at ¶ 6).

**CIS and its Computer Systems.** Plaintiff CIS is a relatively small ISP providing service to customers in and around Clinton, Iowa. At the time McCalla's unlawful acts were committed, CIS had no more than 5,000 subscribers using a total of approximately 5,000 distinct e-mail addresses. CIS provided e-mail services to its subscribers using three special-purpose computers (mail servers) and employed a variety of technological means to reduce the impact of unwanted e-mail messages on both the CIS computer systems and, in turn, its customers. These technological means included:

>  Blocking all incoming traffic originating from specific foreign countries that CIS had identified as sources of unwanted traffic;
>
> Blocking all incoming traffic originating from computer systems that CIS had identified as ongoing sources of unsolicited commercial e-mail;
>
> Subscribing to a commercial real-time blacklist (RBL) service which provided a continuously-updated list of computers identified as sources of unsolicited commercial e-mail;
>
> Automatically disconnecting and blocking access from computers that were attempting to send e-mail into CIS in a manner that was associated with unsolicited commercial e-mail; and
>
> Filtering and discarding e-mail messages with content associated with unsolicited commercial e-mail.

CIS's costs of doing business are borne in part by the subscriber fees and services fees paid by its subscribers. CIS has invested substantial sums of money and resources in developing and marketing its Internet-related e-mail services. CIS's e-mail system was created and is maintained for the benefit of CIS subscribers. Each CIS subscriber is given a unique "cis.net" e-mail address so the subscriber can send and receive e-mail via personal computer. Each subscriber's address consists of a unique name selected by the subscriber plus CIS's domain designation. (For example, user John Doe might choose "johndoe@cis.net" as his e-mail address.) CIS's e-mail servers have a finite capacity designed to accommodate the needs of its subscribers. CIS's computer systems are not designed to accommodate, but rather are vulnerable to disruption by indiscriminate unsolicited mass mailings. (Verified Complaint at ¶12-14).

**The "Bulk Mailing 4 Dummies" CD-ROM**. Defendant McCalla sent the spam that is the subject of plaintiff's complaint to the CIS e-mail addresses found on the CD-ROM entitled "Bulk Mailing 4 Dummies (BM4D). BM4D was a commercial product marketed to persons wishing to send massive volumes of unsolicited commercial e-mail to Internet users, using the ISP that provides the user's e-mail address. The CD-ROM includes a guide for sending unsolicited commercial e-mail, mass-mailing software, and a large number of e-mail address lists, sorted by the domain of the mail service provider. These e-mail lists include millions of addresses for some of the largest ISPs in the United States (e.g., America Online, Microsoft Network, Hotmail, and Earthlink). The CD-ROM also includes a list of over 2.8 million e-mail addresses with the "cis.net" domain. Nearly all of these addresses are fictitious. The addresses have never been assigned to a CIS subscriber and have never been used except to be entered on the list included on the BM4D CD-ROM. But receipt of fictitious e-mail addresses consumes

nearly the same amount of CIS's computer resources (Internet bandwidth, mail server processing power, and mail storage) as handling by CIS of a piece of legitimate e-mail sent to a valid CIS e-mail address.

By active monitoring, CIS identified McCalla as one of the persons responsible for sending the spam that caused and continues to cause damage to CIS.  These damages to CIS were caused by the e-mails that defendant McCalla sent unlawfully as unsolicited messages to bogus CIS e-mail addresses–about 2.8 million bogus CIS e-mail addresses.

**How CIS Identified McCalla's Spam**.  CIS employed two means of detection to determine that McCalla intentionally sent unsolicited commercial e-mail to CIS.  CIS obtained complete e-mails by periodically capturing all of the undeliverable incoming e-mail traffic on its mail servers, by randomly sampling on different days of the week through the period from August of December of 2003.  CIS mail servers also automatically produced log files showing the activity on each of CIS's three mail servers.  These log files show the computer from which incoming mail originated, the e-mail address of the mail sender, and the e-mail addresses to which the messages were sent.

CIS identified a substantial portion of McCalla's overall e-mail activity by identifying the forged "from" e-mail addresses used to advertise McCalla's web sites.  Because McCalla would routinely use the same forged e-mail address, and would randomly forge the associated "from" domain, CIS was able to identify conclusively and count the e-mail messages sent by McCalla**.**

**VIOLATIONS AND DAMAGES ATTRIBUTED TO DEFENDANT MCCALLA**.

**The Amount of Spam Sent by McCalla based on CIS' testimony** CIS has reviewed its server log files and adequately explained the methodology by which it counted and calculated

the minimum number of spam e-mails sent by McCalla advertising one of his debt consolidation web sites.  CIS has testified that its log files show a total of 8,241,837 demonstrated connections announcing one of several false e-mail addresses used by McCalla to hide the origin of his illegal e-mails.

**Failure to Respond to Requests for Admission.**  Requests for Admission served on a party pursuant to Federal Rule of Civil Procedure 36 are "admitted unless, within 30 days after service of the request. . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter".  Fed. R. Civ. P. 36 (a).  These admission are deemed conclusively established.  Fed. R. Civ. P. 36 (b).  Plaintiff served discovery materials (including twenty-four requests for admission) on defendant McCalla on February 1, 2005.  McCalla was required to submit answers to CIS within 30 days, but he has never responded, despite repeated requests from plaintiff's counsel.  Accordingly, this record has conclusively established that McCalla sent one hundred spam e-mails to each of the 2.8 million CIS e-mail addresses on the BM4D CD-ROM, a total of 280 million spam e-mail messages.  So McCalla has engaged in a massive scheme of illegally advertising debt consolidation and mortgage brokerage services to Internet users via the transmission of unsolicited commercial e-mails.  Using very similar messages, McCalla solicited recipients to direct their computer to visit a web page and fill out a form with their personal financial and contact information, a "lead", which he would then sell to debt consolidation or mortgage services.

The transmission of unsolicited commercial e-mail in this manner violated Iowa and federal laws.  Iowa Code section 714E.1 restricts the use of computers to send unsolicited commercial messages.  McCalla's bombardment of CIS's customers and computer systems

constitutes multiple violations of Iowa Code section 714E.1 (2)(a) through (2)(e), inclusive.

CIS has proved that McCalla transmitted bulk electronic mail without authority, providing CIS with the right to recover civil damages under Iowa Code section 714E.1(3). McCalla was "without authority" as defined in that statute when:

(1) He sent his messages using CIS's computer systems in a manner that exceeded its right or permission from other persons; and

(2) He used CIS's computer network and computer services to transmit unsolicited bulk e-mail, violating CIS's publicly-posted acceptable-use policy.

**Applicable Law Governing Damages**. Iowa Code section 714E.1 (3)(b) provides two statutory damages bases for plaintiffs who are providers of computer services. Plaintiff CIS has elected to recover ten dollars in statutory damages for each unsolicited bulk electronic mail message transmitted through CIS in violation of the statute. Based on the testimony and other evidence CIS presented, CIS is entitled to base damages against McCalla calculated as follows:

```
       280,000,000        James McCalla's spam e-mails sent
x              $10        Statutory damages per message
   $ 2,800,000,000        TOTAL STATUTORY DAMAGES
```

CIS has also properly pleaded and proved its claim for punitive damages, proving McCalla's conduct was intentional, malicious, and carried out in willful and wanton disregard of CIS's rights. CIS has requested punitive damages in an amount equal to the statutory damages awarded. Finally, CIS has prevailed on summary judgment on its claims under both the Federal Racketeer Influenced & Corrupt Organizations Act (RICO) and the Iowa Ongoing Criminal Conduct Act (IOCCA), both of which require the trebling of CIS's actual damages.

Accordingly, McCalla is liable to plaintiff CIS in the total amount of:

```
     $2,800,000,000       Total statutory damages
              x 3          Trebling of actual damages under IOCCA
     $ 8,400,000,000
    +$ 2,800,000,000       Punitive damages
     $ 11,200,000,000      TOTAL DAMAGES OF DEFENDANT MCCALLA
```

**JUDGMENT FOR DAMAGES**. The clerk of court shall enter judgment in favor of plaintiff CIS and against defendant James McCalla in the amount of $ 11,200,000,000.

**ORDER OF PERMANENT INJUNCTION.** Plaintiff CIS is also entitled to a permanent injunction against defendant James McCalla to protect itself, its users, all other Internet users, and the public from the illegal activities detained in CIS's complaint and proved by CIS, including spamming, spoofing, and other violations. Defendant James McCalla is hereby **PERMANENTLY ENJOINED** under penalty of **Criminal and Civil Contempt** from engaging in **"Prohibited Conduct"** as that term is defined below until such time as this injunction may be modified by the Court, after request and hearing.

### SCOPE OF "PROHIBITED CONDUCT" AND OTHER DEFINITIONS

1. "**CIS**" refers to Robert W. Kramer, III d/b/a CIS Internet Services and his agents, officers, contractors, directors, shareholders, employees, subsidiary companies or entities, affiliated or related companies and entities, assignees, and successors-in-interest.

2. **"Defendant"** refers to defendant James McCalla ("McCalla").

3. **"Defendant-Related Company**" refers to any person or corporation (past, present, or future) in relation to whom/which defendant is, whether by title or de facto, an agent, officer, contractor, director, owner, shareholder, employee, advisor, partner, or the like.

4. **"CIS e-mail address"** refers to any and all e-mail addresses maintained by, registered with, or maintained at or with facilities, resources, or equipment owned or operated by

8

or on behalf of CIS. These include all e-mail addresses associated with a domain name composed in whole or in part by "CIS".

5. **"Internet e-mail address"** refers to any and all e-mail addresses on the Internet, including those maintained by, registered with, or maintained at or with facilities, resources, or equipment owned or operated by or on behalf of any Internet Services Provider ("ISP"). As used herein, the term "ISP" shall include all entities with the scope of "interactive computer service" ("ICS") as that term is defined in 47 U.S.C. § 230(e)(2) and includes but is not limited to providers and sellers of Internet-related e-mail services.

6. **"E-mail," "electronic message**," and all similar terms shall be given the broadest possible construction herein. Each such term shall include, but not be limited to, e-mails and other such messages (including "Instant Messages" and the like) effected by use of, or with the assistance of, or via access to the resources, equipment, and/or computer system of any ISP.

7. **"CIS subscriber"** refers to any Internet user with a CIS e-mail address.

8. **"Internet subscriber"** refers to any Internet user with an Internet e-mail address.

9. **"Prohibited Conduct"** shall refer to the following categories of conduct, several of which are wholly-contained subsets of the afore-described prohibition against Internet use/connectivity:

A. **SPAMMING AND CO-SPAMMING**. Causing, authorizing, participating in, or intentionally or recklessly assisting or enabling others in the sending of any commercial or promotional messages or solicitations (i.e. "Prohibited Messages") via e-mail to any CIS e-mail

addresses and/or to any other Internet e-mail addresses. "Spamming" and "Co-Spamming" shall also include the posting of any commercial or promotional messages to any newsgroup, bulletin boards, or the like, the intended subject of which is non-commercial and/or which is devoted to a topic unrelated to such postings.

**SPOOFING AND CO-SPOOFING**. Causing, authorizing, participating in, or intentionally or recklessly assisting or enabling others in the use of any false or misleading reference to:

(1) any ICS, ISP, or Internet subscriber;

(2) any Internet e-mail address, domain, or domain owner,

(3) the equipment of the ISP, ICS, Internet subscriber, or domain owner; and/or

(4) that ICS' ISP's, or Internet subscriber's computer system or resources

in any electronic message or in a newsgroup posting. The conduct prohibited by this paragraph includes, but is not limited to, the insertion of false or misleading originating e-mail addresses, return or reply e-mail addresses, and/or the manual manipulation or falsification of any e-mail header.

**CLOAKING, CO-CLOAKING, AND RELAY.** Causing, authorizing, participating in, or intentionally or recklessly assisting or enabling others in the modification, disguise, elimination, or erasure of the identification of the originating address and/or header of or for any commercial or promotional e-mail sent to a CIS subscriber or to an Internet subscriber, or otherwise aiding or assisting in any way the attempts of the sender of any commercial or promotional e-mail to a CIS or Internet subscriber to make impossible or more difficult the identification of the sender. Among the conduct expressly prohibited by this

paragraph is any intentional use of "third-party relay" in relation to the sending of e-mail, as well as any access to or use of the computer resources of any ISP or Internet subscriber not related to or in privity of contract with the sender and/or the recipient of the relevant e-mail or electronic message.

**SOFTWARE DISTRIBUTION.** The sale, offer, or other distribution of any e-mail-related software that does not include code (which code cannot be disabled by the user) the effect of which is to prevent the user from using the software to send mass e-mails to any CIS or Internet subscriber or otherwise engaging in any Prohibited Conduct.

**SALE OF E-MAIL ADDRESSES.** The sale, offer, or other commercial distribution of any e-mail address or addresses of any CIS or Internet subscribers.

**TRADE LIBEL.** Causing, authorizing, communicating, or intentionally or recklessly assisting others in communicating defamatory verbal and electronic statements regarding CIS's or any other ISP's products, business goods and/or services.

**NO CIS ACCOUNTS OR ACCESS.** Signing-up for, establishing, or otherwise maintaining any CIS account or e-mail address, or otherwise accessing or using in any way the computer system, resources, servers, and/or equipment of CIS, even if such access or use would otherwise be legal.

**NO INTERNET ACCESS FOR THREE YEARS.** For a period of three (3) years immediately following the Court's entry of this Order: (1) accessing, connecting to, and/or using the Internet in any manner whatsoever (whether personally or via an agent, employee, or contractor) and without regard to whether the access/connectivity/use would otherwise be legal in the absence of this Injunction; and (2) signing up for, owning, using, or otherwise obtaining an

e-mail address, Internet account of any sort, domain, and/or web site.

## **PRIVATE ENFORCEMENT OF THIS INJUNCTION.  Liquidated Damages and Effect of Violation.**

1. **Acknowledgment of Third-Party Beneficiaries**.  All Internet subscribers, domain owners, ICS's and ISP's are intended, express third-party beneficiaries of this Injunction.  In the event that a violation of this Injunction by McCalla results in harm to any such third-parties, the aggrieved ICS/Internet-subscriber/domain-owner/ISP shall have and may properly assert against McCalla any and all rights under this Injunction in relation to said harm as could CIS, in the event that CIS had been the victim of said harm.

2. **Liquidated Damages**.  In the event of any violation by McCalla of this Injunction, upon proof of such violation before this Court or any other Court of competent jurisdiction, McCalla shall be liable for the following liquidated damages:

a. **Claim By ISP**.  In the event the claim is asserted by an ICS or ISP, liquidated damages of the **GREATER** of $25,000 or $2.00/1000 e-mails sent, corresponding to the claimant's reputation and lost profit damages only (i.e., the claimant may also prove and recover its other categories of damages in addition to the liquidated damages for reputation/lost profits).  The claimant shall also recover its associated attorney's fees, expenses, and costs.

b. **Claim by End-User**.  In the event the claim is asserted by an individual end-user, domain owner, or Internet subscriber (i.e., a victim end-user on the Internet), liquidated damages of $1,000/e-mail, plus all associated attorney's fees, expenses, and costs.

c. **Right to Waive Liquidated Damage Rights**.  In the event that McCalla's violation of this Injunction injures or aggrieves more than one domain owner, Internet

subscriber, ISP, or ICS, McCalla shall be liable to each aggrieved party in the full amount of the specified damages.  Any party aggrieved by McCalla's violation of this Injunction shall have the right to waive its liquidated damage-related rights hereunder and instead prove and recover its actual damages in relation to that category or type of damages (as well as nay other legally-cognizable damages it suffers).  In a civil action arising from an alleged violation by McCalla of this Injunction, proof of the violation may be established by an "any evidence" standard.

IT IS SO ORDERED.

Dated this 22nd  day of December, 2005.

*Charles R Wolle*
CHARLES R. WOLLE, JUDGE
U.S. DISTRICT COURT