IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

_____

|  |  |  |
|---|---|---|
| | ) | |
| ROBERT W. KRAMER, III d/b/a | ) | NO. 3:03-CV-80109-CRW-TJS |
| CIS INTERNET SERVICES | ) | |
| Plaintiff, | ) | BRIEF IN SUPPORT OF |
| | ) | PLAINTIFF'S RESISTANCE TO |
| vs. | ) | DEFENDANT'S MOTION FOR |
| | ) | RELIEF FROM JUDGMENT OR |
| NATIONAL CREDIT SYSTEMS, INC. | ) | ORDER AND STAY OF |
| et al, | ) | PROCEEDINGS TO ENFORCE A |
| Defendants. | ) | JUDGMENT |

_____

COMES NOW Plaintiff, Robert W. Kramer, III d/b/a CIS Internet Services, and

for its Brief in Support of its Resistance to Defendant's Motion for Relief from a

Judgment or Order and Stay of Proceedings to Enforce a Judgment states:

## STATEMENT OF FACTS

On October 10, 2003 a verified Complaint for Injunctions and Damages was filed

against multiple unknown Defendants who unlawfully bombarded CIS Internet Services'

customers with an extraordinary quantity of unsolicited commercial emails, many of

which fraudulently implied that they were affiliated with CIS Internet Services by way of

false return addresses. This email scheme violated the criminal and civil laws of Iowa

concerning the misuse and abuse of electronic email, as well as Federal law, and caused

Robert W. Kramer, III d/b/a and CIS Internet Services ("Kramer") substantial loss.

On or about February 20, 2004, after Kramer learned of National Credit Systems,

Inc.'s (hereafter 'NCS') involvement in the unlawful commercial email scheme Kramer

filed a First Amended Complaint for Injunction and Damages, naming NCS as a

Defendant.  On February 8, 2005 an Affidavit was filed, a copy of which is attached

hereto, marked Exhibit "A" and made a part hereof, which establishes that on January 11,

2005, copies of the Summons and Complaint were taken via process server to 2 Fifth

Avenue New York, NY 10011, to be served upon Samuel Berke.  According to

information provided by NCS to the New York Department of State, a copy of which is

attached hereto, marked Exhibit "B" and made a part hereof, Samuel Berke is the

Chairman or Chief Executive Officer of NCS, as well as the person to whom process is to

be directed.  In addition, the New York Department of State has on record an address of 2

Fifth Avenue New York, NY 10011 as the Principal Executive Office for NCS. *See*

Exhibit "B". This address is a residential address.  *See* Exhibit "B".  Upon attempting to

effectuate service upon Defendant, the process server was denied access to the apartment

by the doorman per instructions by Mrs. Samuel Berke.  *Id.*  On February 8, 2005,

Kramer filed an Affidavit of Service, a copy of which is attached hereto, marked Exhibit

"C" and made a part hereof, showing that on January 12, 2005, Kramer caused copies of

the summons and complaint to be served upon NCS's principal place of business at 11

East 36th Street, 10th Floor, New York, NY.

On December 22, 2005, the Court entered a Default Judgment and Order of

Permanent Injunction against Defendant.  On February 27, 2008 the United States

District Court for the Southern District of New York issued an Order Appointing a

Receiver for NCS.  NCS filed an Application for Order to Show Cause to Vacate or Stay

Order Appointing Receiver with Temporary Relief in the U.S. District Court for the

Southern District of New York, which was denied on March 11, 2008.

## ARGUMENT

## RESPONSE TO ISSUE I

## DEFENDANT IS EQUITABLY ESTOPPED FROM RAISING THE ISSUE OF IMPROPER SERVICE.

Equitable estoppel is comprised of the following elements:

> "(1) a false representation or concealment of material facts; (2) lack of knowledge of the true facts on the part of the actor; (3) the intention that it be acted upon; and (4) reliance thereon by the party to whom made, to his [or her] prejudice and injury."

*Moore Dev. Ltd v. M.G. Midwest, Inc.*, No. C06-1014, 2007 U.S. Dist. LEXIS 59067, *

26 (N.D. Iowa Aug. 13, 2007). "Estoppel is the equitable rule preventing a party from

taking a legal position prejudicial to another party whom he has induced by words or

conduct to act in good faith reliance upon a misrepresentation of material fact." *Hully v.*

*Aluminum Co. of America*, 143 F.Supp. 508 (S.D. Iowa 1956).

According to NCS's Brief in Support of Defendant' Motion for Relief From

Judgement or Order and Stay of Proceedings to Enforce A Judgment, Mr. Samuel Berke

has not been associated with NCS since at least 2001, was suffering from Alzheimer's

disease at the time service was attempted, and passed away sometime in 2007. Although

Defendant admits these facts, it still lists Mr. Samuel Berke as the current Chairman or

Chief Executive Officer of NCS and designates him to receive process on behalf of NCS.

*See* Exhibit "B". NCS has continued to make false representations and conceal the

material fact as to who was authorized to receive service of process and as to the identity

of the chairman or chief executive officer of the corporation for approximately seven (7)

years, even after Samuel Berke had been incapacitated due to Alzheimer's disease and

later death.

Further, according to a lease entered into by NCS on July 26, 1995, a copy of which is attached hereto, marked Exhibit "D" and made a part hereof, NCS's principal place of business has been at 11 East 36th Street New York, NY 10018 prior to the filing of its Articles of Incorporation with the New York State Department of State in April 22, 1996.  *See* Exhibits "B" and "D".  Notably, prior to use of the aforementioned address, NCS conducted its business at 1410 Broadway, New York, NY 10018.  NCS also provided an address of 175 Fifth Avenue # 3100 New York, NY 10010 to the Internal Revenue Service on its income tax return, a copy of which is attached hereto, marked Exhibit "E" and made a part hereof. At no time does it appear that NCS's principle place of business was at 2 Fifth Avenue New York, NY 10011 as it fraudulently stated in its filing with the New York Department of State, and it is unlikely that it ever did as this address is the residential address of Samuel Berke.

NCS made false representations and concealed material facts as to the identity of the person authorized to receive service, the identity of the chairman or chief executive officer of the company, and its principle place of business.  It held these fraudulent assertions out to the public and the State of New York.  The purpose of these assertions was to conceal the true identity of NCS officers, general and managing agents, agents authorized by appointment to receive service of an Original Notice, and its principle place of business.  NCS concealed these material facts with the intent that they be relied upon by the public and the New York Department of State.  This is evidenced by the fact that they filed public documents containing fraudulent information regarding their principle place of business and continued to hold Samuel Berke out as chairman or chief executive officer to whom service should be directed after he had left NCS and became

incapacitated by Alzheimer's disease and later death.  Kramer had no knowledge of the

principal place of business of NCS or the identity of NCS's officers, managing or general

agents, or any other agent authorized by appointment to receive service of process.  Thus,

Kramer relied on NCS's false representations and concealment of material facts to his

detriment when he attempted to serve NCS through the agent it listed with the New York

Department of State at the address that it provided.

NCS frustrated Robert Kramer's attempt to serve it with process by listing a

residential facility as principle place of business.  In fact, this particular residential

address had a doorman employed to deny access to the building upon request of the

resident.  In this case, the process server was denied access to the building listed by NCS

per instructions given by Mrs. Samuel Berke.  This is wholly different from a general

commercial establishment, which welcomes public guests on premises.  Thus, NCS

should not be able to claim that it was not properly served with process when it provided

the person and address to which service was to be directed via its filing with the New

York Department of State.  NCS claims that it had no knowledge of the proceeding

instituted against it in this cause of action, however, if this in fact occurred, it is the result

of its own false representations and concealment of material facts.  At the time of its

incorporation and throughout the course of the operation of its business, NCS knew that it

was to provide the information at issue to the New York Department of State for the

purpose of receiving process.  It also knew that service of process could be hindered due

to the faulty information provided to the New York Department of State.  Thus, NCS

should be estopped from raising this issue as a defense.

Furthermore, the service that was obtain by Kramer adhered to the purpose and spirit of the Iowa Code section 490.504, which sets forth service upon a corporation. Federal Rule of Civil Procedure Rule 4(h) provides that ". . . a domestic or foreign corporation . . . must be served:  (1) in a judicial district of the United States; (A) in the manner prescribed by Rule 4(e)(1) for serving an individual . . . ."  Federal Rule of Civil Procedure Rule 4(e) provides, " . . . an individual . . . may be served in a judicial district of the United States by: (1) following state law for serving a summons in action brought in courts of general jurisdiction in the state where the district court is located . . . ."  Iowa Code section 490.504 states in part, " . . .[i]f a corporation has no registered agent, or the agent cannot with reasonable diligence be served, the corporation may be served by registered or certified mail, return receipt requested, addressed to the secretary of the corporation at its principal office . . . ."

According to its filing with the New York Department of State, NCS has no registered agent. *See* Exhibit "B".  Further, if Samuel Berke is viewed as NCS's agent for purposes of service of process, Kramer used reasonable diligence in attempting service, which was rendered impossible by Mrs. Samuel Berke's denial of access to the building and Samuel Berke's Alzheimer's disease. Thus, under the Iowa Code, service upon the secretary of the corporation at its principle office is sufficient.  Although section 490.504 provides for service to be conducted through registered or certified mail, physical, in hand service, more than meets the requirement that the secretary of the corporation receive a copy of the Summons and Original Notice.

NCS claims that it no longer conducted business out of the 11 East 36th Street address.  However, it presents no proof, other than invoices which demonstrate that it was

in the process of relocating, showing that it no longer had any employees conducting

business at this location.  According to the affidavit of the process server employed in

this case, a copy of which is attached hereto, marked Exhibit "F" and made a part hereof,

NCS was in fact still conducting business at this location on January 12, 2005 and did not

move out until sometime after this date.  NCS's claim that it was no longer conducting

business at this address as well as the secretary's refusal to provide her last name should

be viewed as evidence of NCS's attempt to circumvent service of process.  Thus, Iowa

Code section 490.504 demonstrates why equitable estoppel would not be an inappropriate

or unjust remedy in light of the facts of this case.  Further, service of process upon NCS

can be deemed effectuated through receipt of the Summons and Original Notice by its

secretary because Kramer substantially complied with the purpose and legislative intent

of section 490.504.

### RESPONSE TO ISSUE II

### THIS COURT HAS PERSONAL JURISDICTION OVER NCS BECAUSE SERVICE OF PROCESS WAS VALID AND NCS IS ESTOPPED FROM RAISING THIS AS A DEFENSE,

"'Before a . . . court may exercise personal jurisdiction over a defendant, the

procedural requirement of service of summons must be satisfied.'" *Murphy Bros. v.*

*Michetti Pipe Stringing*, 526 U.S. 344, 351 (1999) (citation omitted).  "'Service of

summons is the procedure by which a court . . . asserts jurisdiction over the person of the

party served.'" *Id*. (citing *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 444-

445 (1946)).  Accordingly, because NCS was served with process, and it chose to forgo

its procedural and substantive rights, this Court has personal jurisdiction over the

Defendant, thus the default judgment is not void.  Further, due to NCS's false

misrepresentations and concealment of material facts, NCS is estopped from raising

improper service as a defense in this action, thereby conferring upon this Court personal

jurisdiction.

**RESPONSE TO ISSUE III**

**<u>DEFENDANT'S RULE 60(B) MOTION CANNOT BE GRANTED
BECAUSE IT CANNOT ESTABLISH A MERITORIOUS DEFENSE NOR CAN
IT CONTEND THAT THE DEFAULT JUDGMENT WAS NOT A RESULT OF
ITS OWN ACTIONS OR INACTIONS</u>**

In determining Rule 60(b) motion, District Court should consider,

> "(1) that final judgments should not lightly be disturbed, (2) that
> Rule 60(b) motion is not to be used as substitute for appeal, (3)
> that Rule should be liberally construed in order to achieve
> substantial justice, (4) whether motion was made within
> reasonable time, (5) whether--if judgment was rendered after trial
> on merits--movant had fair opportunity to present his claim or
> defense, (6) whether there are intervening equities that would
> make it inequitable to grant relief, and (7) any other factors
> relevant to justice of judgment under attack."

*Federal Deposit Ins. Corp. v. Castle*, 781 F.2d 1101 (5th Cir. 1986).   Rule 60(b) is

applied liberally in default judgment context only in exceptional circumstance where

events contributing to default judgment have not been within meaningful control of

defaulting party or its attorney. *C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.*,

726 F.2d 1202 (7th Cir. 1984).  Even so, the Court of Appeals has long since moved away

from the position of disfavoring default judgments, and therefore a Court should be

increasingly reluctant to set them aside.  See *Matter of State Exchange Finance Co.*, 896

F.2d 1104, 1106 (7th Cir. 1990); *Dimmitt & Owens Financial, Inc. v. United States*, 787

F.2d 1186, 1192 (7th Cir. 1986).  Further, "a meritorious defense requires more than a

'general denial' and 'bare legal conclusions.'" *Breuer Electic Manuf. Co. v. Toronado

Systems of America*, 687 F.2d 182, 186 (7th Cir. 1982). Additionally, because Defendant's

motion raises several issues of fact, a hearing should be held to afford Kramer, due process of law with the opportunity to cross-examine Defendant's affiants and the opportunity to present evidence on his behalf.  *See Chevron U.S.A., Inc. v. Hand*, 763 F.2d 1184 (10th Cir. 1985) (district court provided a F.R.C.P. Rule 60(b) hearing when the credibility of witnesses was at issue).

In considering whether to grant Defendant's Rule 60(b)(6) motion, the Court must consider whether the defendant can present a meritorious defense. Defendant only provides two (2) defenses to Plaintiff's cause of action.  First, Defendant alleges that it did not have adequate notice of the filing and existence of the cause of action.  Second, it contends that it was an improper party to the lawsuit.  As to the adequacy of notice, the Court can not set aside a default judgment if the events contributing to default judgment were within meaningful control of defaulting party.  It is the contention of Kramer that Defendant's lack of notice was entirely within its control as it made false misrepresentations and concealed material facts regarding who was to receive process on its behalf and its principle place of business.  With regard to the contention that Defendant was named as an improper party, NCS offers no proof to substantiate this allegation other than general denials, which is not considered a meritorious defense.

Further, any assertion by Defendant that it did not receive notice of the proceeding and/or judgment is based on two (2) affidavits procured from the President and Vice-President of NCS, both of whom have a substantial stake in the outcome of this proceeding.  Thus, if the default judgment is to be set aside under this theory, Kramer should be provided an opportunity during an evidentiary hearing to cross-examine said affiants so the Court can judge their veracity.  The fact that NCS was improperly sued is

also a question of fact that should be judged after a hearing on the issue. The defenses

provided by the Defendant do not rise to the level of meritorious as set forth in its brief.

Therefore, if the Court takes into consideration these intervening equities that would

make the granting of the Rule 60(b)(6) motion inequitable Defendant's motion should be

denied.

### ISSUE IV

### IF THE COURT ORDERS A STAY IN PROCEEDING TO ENFORCE THE DEFAULT JUDGMENT, IT SHOULD PROVIDE FOR THE SECURITY OF KRAMER.

Federal Rule of Civil Procedure Rule 62(b) provides that "[o]n appropriate terms

for the opposing party's security, the court may stay the execution of a judgment--or any

proceedings to enforce it--pending disposition of any of the following motions . . . (4)

under Rule 60, for relief from a judgment or order. Thus, under this rule "[d]istrict courts

have discretionary power under Rule 62(b) to stay execution of or any proceedings to

enforce judgment pending disposition of motions for relief from a judgment made

pursuant to Rule 60. *United States use of Larkin v. Platt Contracting Co.*, 324 F.2d 95 (1st

Cir. 1963).  However, according to the United States Supreme Court "the district court

may only stay execution of the judgment pending the disposition of certain posttrial

motions or appeal if the court provided for the security of the judgment creditor."

*Peabody v. Thomas*, 516 U.S. 349 (1996).  Further, the Court should not follow the four

part test set forth in *Ben Oehrleins and Sons and Daughter, Inc. v. Hennepin County,*

*Minn.*, 927 F.Supp. 348 (D. Minn. 1996) as urged by defendant, because this test is only

applicable to motions filed under 62(c) when the court is determining whether to grant a

stay of injunction pending an appeal.  This is not the factual situation before this Court.

In the present situation the Court should determine if a stay of the execution of the judgment is in the interest of justice. Given the factual circumstances in this case a stay should not be ordered by this Court since the Defendant had three years to raise the issues now presented.  Furthermore, Plaintiff believes that the stay should not be ordered, or, in the alternative, that security by way of supersedeas bond should be ordered as Defendant is closely affiliated with other corporations performing similar services to which it's assets could be transferred.

## CONCLUSION

For all of the reasons discussed above, Plaintiff, Robert W. Kramer, III, d/b/a CIS Internet Services, respectfully requests that this Court find that service of process was perfected upon Defendant; that Defendant is estopped from asserting the defense of service of process;  that personal jurisdiction exists; that Defendant's Motion to Vacate the Default judgment be denied, or in the alternative that Plaintiff be granted the opportunity to a meaning full hearing on the matter; that security be provided if a stay of execution of judgment is entered, and for such other and further relief is just and equitable in the premises.

PILLERS AND RICHMOND


By: ___/s/ David M. Pillers_____
     David M. Pillers      AT0006214
     G. Wylie Pillers, III
     333 – 4th Avenue South
     Clinton, Iowa 52732
     Tele:   563-243-2454
     Fax:   563-243-2611

ATTORNEYS FOR PLAINTIFF

perlres

IN THE
UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF IOWA DAVENPORT DIVISION

**ROBERT W KRAMER, III**
**D/B/A CIS INTERNET SERVICES**

Hearing Date:

Plaintiff/Petitioner

CAUSE NO.
3:03CV80109

vs.
JOHN DOES 1-300

Defendant/Respondent

AFFIDAVIT OF NON SERVICE;
SUMMONS IN A CIVIL ACTION;CIVIL COVER
SHEET;FIRST AMENDED COMPLAINT FOR INJUNCTION
AND DAMAGES;SECOND AMENDED COMPLAINT FOR
INJUNCTION AND DAMAGES; SCHEDULING ORDER AND
DISCOVERY PLAN; VERIFIED COMPLAINT FOR
INJUNCTIONS AND DAMAGES

RECEIVED
FEB 08 2005
CLERK, U.S. DISTRICT COURT
THE'N DIST' OF IOW.

The undersigned, being first duly sworn, on oath deposes and says: That s(he) is now and at all
times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer
of a plaintiff corporation, not a party to nor interested in the above entitled action, and is competent
to be a witness therein.

Affiant states s(he) attempted to serve **NATIONAL CREDIT SYSTEMS, INC., A NEW YORK
CORPORATION** at the address of: **2 FIFTH Avenue , NEW YORK, New York County, NY** , and
was unable effect service for the following reasons:

**Service attempt was made on 1/11/05. Service attempt was not effective for the following
reason: Address provided at 2 Fifth Ave NY NY is a residential address with a doorman.
Access to apt was refused by the doorman per instructions by Mrs. Berke Samuel's wife.**

DATED this 13th day of January, 2005.

Loai F. Sarsour, Reg. # 1133308, New York NY

SUBSCRIBED AND SWORN to before me this 13th day of January, 2005

NOTARY PUBLIC in and for the State of New York,
Residing at: _Kings NY_
My Commission Expires: _3-22-08_

MARIA L. BASS
Notary Public, State of New York
No. 01BA6107290
Qualified in Kings County
Commission Expires March 22, 2008

ABC's Client Name
**PFI MISC P**

ORIGINAL PROOF OF
SERVICE

ABC Tracking #: 3557140

EXHIBIT ___A___

PAGE _____

# NYS Department of State

## Division of Corporations

### Entity Information

Selected Entity Name: NATIONAL CREDIT SYSTEMS INC.

Selected Entity Status Information

**Current Entity Name:** NATIONAL CREDIT SYSTEMS INC.
**Initial DOS Filing Date:** APRIL 22, 1996
**County:** NEW YORK
**Jurisdiction:** NEW YORK
**Entity Type:** DOMESTIC BUSINESS CORPORATION
**Current Entity Status:** ACTIVE

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
C/O SAMUEL BERKE
2 FIFTH AVENUE
NEW YORK, NEW YORK, 10011

**Chairman or Chief Executive Officer**
SAMUEL BERKE
2 FIFTH AVE
NEW YORK, NEW YORK, 10011

**Principal Executive Office**
NATIONAL CREDIT SYSTEMS INC.
2 FIFTH AVE
NEW YORK, NEW YORK, 10011

**Registered Agent**
NONE

NOTE: New York State does not issue organizational identification numbers.

Search Results          New Search

Division of Corporations, State Records and UCC Home Page    NYS Department of State Home Page

EXHIBIT _B_
PAGE _____

## UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF IOWA DAVENPORT DIVISION

ROBERT W KRAMER, III
D/B/A CIS INTERNET SERVICES

Plaintiff/Petitioner

vs.
JOHN DOES 1-300

Defendant/Respondent

Hearing Date:

CAUSE NO.
3:03CV80109

AFFIDAVIT OF SERVICE OF:
SUMMONS IN A CIVIL ACTION;CIVIL COVER
SHEET;FIRST AMENDED COMPLAINT FOR INJUNCTION
AND DAMAGES;SECOND AMENDED COMPLAINT FOR
INJUNCTION AND DAMAGES; SCHEDULING ORDER AND
DISCOVERY PLAN; VERIFIED COMPLAINT FOR
INJUNCTIONS AND DAMAGES

The undersigned, being first duly sworn, on oath deposes and says: That s(he) is now and at all
times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer
of a plaintiff corporation, not a party to nor interested in the above entitled action, and is competent
to be a witness therein.

On the **12th day of January, 2005, at 1:55 PM**, at the address of **11 E 36TH Street 10TH FLR,
NEW YORK**,  New York County, NY ; this affiant served the above described documents upon
**NATIONAL CREDIT SYSTEMS, INC., A NEW YORK CORPORATION**, by then and there
personally delivering 1 true and correct copy(ies) thereof, by then presenting to and leaving the
same with **NATIONAL CREDIT SYSTEMS, INC., A NEW YORK CORPORATION, Secretary Jen
Doe refused to provide last name F/Brown brown hair 30 YOA 5-4 160 LBS.**

No information was provided or discovered that indicates that the subjects served are members of
the U.S. military.

Affiant hereby states under penalty of perjury under the laws of the State of _I O W a_ that
the statement above is true and correct.

Loal F. Sarsour, Reg. # 1133308, New York NY

SUBSCRIBED AND SWORN to before me this 13th day of January, 2005

NOTARY PUBLIC in and for the State of **New York**

MARIA L. BASS
Notary Public, State of New York
No. 01BA6107290
Qualified in Kings County
Commission Expires March 22  2008

ABC's Client Name
**PFI MISC P**

ORIGINAL PROOF OF
SERVICE

ABC Tracking #: 3557140

EXHIBIT ____C____

PAGE ____

---

## STANDARD FORM OF OFFICE LEASE
### The Real Estate Board of New York, Inc.

2-8-84

**Agreement of Lease,** made as of this 26th day of July 19 95 , between ELEVEN EAST 36TH STREET ASSOCIATES, a New York partnership, c/o Winoker Realty Co., Inc., 1410 Broadway, New York, NY - 10018

party of the first part, hereinafter referred to as OWNER or LANDLORD, and NATIONAL CREDIT SYSTEMS, INC., a New York corporation, having a present office address at 853 Broadway, NY, NY, with its principal office address to be at 11 East 36th Street, New York, NY

party of the second part, hereinafter referred to as TENANT,

**Witnesseth:** Owner hereby leases to Tenant and Tenant hereby hires from Owner the entire tenth (10th) floor, designated as Unit 1000

in the building known as **Eleven East 36th Street**
in the Borough of **Manhattan** , City of New York, for the term of ten (10) years, six (6) months

(or until such term shall sooner cease and expire as hereinafter provided) to commence and expire in accordance with Article 74, below,

both dates inclusive, at an annual rental rate of $79,200.00 each of the initial three (3) lease years; $92,400.00 per lease year each of the 4th-7th lease years; $105,600.00 per 12-month period, the final three (3) years, six (6) months,

which Tenant agrees to pay in lawful money of the United States which shall be legal tender in payment of all debts and dues, public and private, at the time of payment, in equal monthly installments in advance on the first day of each month during said term, at the office of Owner or such other place as Owner may designate, without any set off or deduction whatsoever, except that Tenant shall pay the first monthly installment(s) on the execution hereof (unless this lease be a renewal).

In the event that, at the commencement of the term of this lease, or thereafter, Tenant shall be in default in the payment of rent to Owner pursuant to the terms of another lease with Owner or with Owner's predecessor in interest, Owner may at Owner's option and without notice to Tenant add the amount of such arrears to any monthly installment of rent payable hereunder and the same shall be payable to Owner as additional rent.

The parties hereto, for themselves, their heirs, distributees, executors, administrators, legal representatives, successors and assigns, hereby covenant as follows:

**Rent** 1. Tenant shall pay the rent as above and as hereinafter provided.

**Occupancy** 2. Tenant shall use and occupy the demised premises for general executive and administrative offices, only, and for no other purpose.

**Tenant Alterations** 3. Tenant shall make no changes in or to the demised premises of any nature without Owner's prior written consent. Subject to the prior written consent of Owner, and to the provisions of this article, Tenant at Tenant's expense, may make alterations, installations, additions or improvements which are non-structural and which do not affect utility services or plumbing and electrical lines, in or to the interior of the demised premises by using contractors or mechanics first approved by Owner. Tenant shall, before making any alterations, additions, installations or improvements, at its expense, obtain all permits, approvals and certificates required by any governmental or quasi-governmental bodies and (upon completion) certificates of final approval thereof and shall deliver promptly duplicates of all such permits, approvals and certificates to Owner and Tenant agrees to carry and will cause Tenant's contractors and sub-contractors to carry such workmen's compensation, general liability, personal and property damage insurance as Owner may require. If any mechanic's lien is filed against the demised premises, or the building of which the same forms a part, for work claimed to have been done for, or materials furnished to, Tenant, whether or not done pursuant to this article, the same shall be discharged by Tenant within thirty days thereafter, at Tenant's expense, by filing the bond as required by law. All fixtures and all paneling, partitions, railings and like installations, installed in the premises at any time, either by Tenant or by Owner in Tenant's behalf, shall, upon installation, become the property of Owner and shall remain upon and be surrendered with the demised premises unless Owner, by notice to Tenant no later than twenty days prior to the date fixed as the termination of this lease, elects to relinquish Owner's right thereto and to have them removed by Tenant, in which event the same shall be removed from the premises by Tenant prior to the expiration of the lease, at Tenant's expense. Nothing in this Article shall be construed to give Owner title to or to prevent Tenant's removal of trade fixtures, moveable office furniture and equipment, but upon removal of any such from the premises or upon removal of other installations as may be required by Owner, Tenant shall immediately and at its expense, repair and restore the premises to the condition existing prior to installation and repair any damage to the demised premises or the building due to such removal. All property permitted or required to be removed, by Tenant at the end of the term remaining in the premises after Tenant's removal shall be deemed abandoned and may, at the election of Owner, either be retained as Owner's property or may be removed from the premises by Owner, at Tenant's expense.

**Maintenance and Repairs** 4. Tenant shall, throughout the term of this lease, take good care of the demised premises and the fixtures and appurtenances therein. Tenant shall be responsible for all damage or injury to the demised premises or any other part of the building and the systems and equipment thereof, whether requiring structural or nonstructural repairs caused by or resulting from carelessness, omission, neglect or improper conduct of Tenant, Tenant's subtenants, agents, employees, invitees or licensees, or

which arise out of any work, labor, service or equipment done for or supplied to Tenant or any subtenant or arising out of the installation, use or operation of the property or equipment of Tenant or any subtenant. Tenant shall also repair all damage to the building and the demised premises caused by the moving of Tenant's fixtures, furniture and equipment. Tenant shall promptly make, at Tenant's expense, all repairs in and to the demised premises for which Tenant is responsible, using only the contractor for the trade or trades in question, selected from a list of at least two contractors per trade submitted by Owner. Any other repairs in or to the building or the facilities and systems thereof for which Tenant is responsible shall be performed by Owner at the Tenant's expense. Owner shall maintain in good working order and repair the exterior and the structural portions of the building, including the structural portions of its demised premises, and the public portions of the building interior and the building plumbing, electrical, heating and ventilating systems (to the extent such systems presently exist) serving the demised premises. Tenant agrees to give prompt notice of any defective condition in the premises for which Owner may be responsible hereunder. There shall be no allowance to Tenant for diminution of rental value and no liability on the part of Owner by reason of inconvenience, annoyance or injury to business arising from Owner or others making repairs, alterations, additions or improvements in or to any portion of the building or the demised premises or in and to the fixtures, appurtenances or equipment thereof. It is specifically agreed that Tenant shall not be entitled to any setoff or reduction of rent by reason of any failure of Owner to comply with the covenants of this or any other article of this Lease. Tenant agrees that Tenant's sole remedy at law in such instance will be by way of an action for damages for breach of contract. The provisions of this Article 4 shall not apply in the case of fire or other casualty which are dealt with in Article 9 hereof.

**Window Cleaning** 5. Tenant will not clean nor require, permit, suffer or allow any window in the demised premises to be cleaned from the outside in violation of Section 202 of the Labor Law or any other applicable law or of the Rules of the Board of Standards and Appeals, or of any other Board or body having or asserting jurisdiction.

**Requirements of Law, Fire Insurance, Floor Loads** 6. Prior to the commencement of the lease term, if Tenant is then in possession, and at all times thereafter, Tenant, at Tenant's sole cost and expense, shall promptly comply with all present and future laws, orders and regulations of all state, federal, municipal and local governments, departments, commissions and boards and any direction of any public officer pursuant to law, and all orders, rules and regulations of the New York Board of Fire Underwriters, Insurance Services Office, or any similar body which shall impose any violation, order or duty upon Owner or Tenant with respect to the demised premises, whether or not arising out of Tenant's use or manner of use thereof, (including Tenant's permitted use) or, with respect to the building if arising out of Tenant's



EXHIBIT D
PAGE 1

use or manner of use of the premises or the building (including the use permitted under the lease). Nothing herein shall require Tenant to make structural repairs or alterations unless Tenant has, by its manner of use of the demised premises or method of operation therein, violated any such laws, ordinances, orders, rules, regulations or requirements with respect thereto. Tenant may, after securing Owner to Owner's satisfaction against all damages, interest, penalties and expenses, including, but not limited to, reasonable attorney's fees, by cash deposit or by surety bond in an amount and in a company satisfactory to Owner, contest and appeal any such laws, ordinances, orders, rules, regulations or requirements provided same is done with all reasonable promptness and provided such appeal shall not subject Owner to prosecution for a criminal offense or constitute a default under any lease or mortgage under which Owner may be obligated, or cause the demised premises or any part thereof to be condemned or vacated. Tenant shall not do or permit any act or thing to be done in or to the demised premises which is contrary to law, or which will invalidate or be in conflict with public liability, fire or other policies of insurance at any time carried by or for the benefit of Owner with respect to the demised premises or the building of which the demised premises form a part, or which shall or might subject Owner to any liability or responsibility to any person or for property damage. Tenant shall not keep anything in the demised premises except as now or hereafter permitted by the Fire Department, Board of Fire Underwriters, Fire Insurance Rating Organization or other authority having jurisdiction, and then only in such manner and such quantity so as not to increase the rate for fire insurance applicable to the building, nor use the premises in a manner which will increase the insurance rate for the building or any property located therein over that in effect prior to the commencement of Tenant's occupancy. Tenant shall pay all costs, expenses, fines, penalties, or damages, which may be imposed upon Owner by reason of Tenant's failure to comply with the provisions of this article and if by reason of such failure the fire insurance rate shall, at the beginning of this lease or at any time thereafter, be higher than it otherwise would be, then Tenant shall reimburse Owner, as additional rent hereunder, for that portion of all fire insurance premiums thereafter paid by Owner which shall have been charged because of such failure by Tenant. In any action or proceeding wherein Owner and Tenant are parties, a schedule or "make-up" of rate for the building or demised premises issued by the New York Fire Insurance Exchange, or other body making fire insurance rates applicable to said premises shall be conclusive evidence of the facts therein stated and of the several items and charges in the fire insurance rates then applicable to said premises. Tenant shall not place a load upon any floor of the demised premises exceeding the floor load per square foot area which it was designed to carry and which is allowed by law. Owner reserves the right to prescribe the weight and position of all safes, business machines and mechanical equipment. Such installations shall be placed and maintained by Tenant, at Tenant's expense, in setting sufficient, in Owner's judgement, to absorb and prevent vibration, noise and annoyance.

**Subordination** 7. This lease is subject and subordinate to all ground or underlying leases and to all mortgages which may now or hereafter affect such leases or the real property of which demised premises are a part and to all renewals, modifications, consolidations, replacements and extensions of any such underlying leases and mortgages. This clause shall be self-operative and no further instrument of subordination shall be required by any ground or underlying lessor or by any mortgagee, affecting any lease or the real property of which the demised premises are a part. In confirmation of such subordination, Tenant shall execute promptly any certificate that Owner may request.

**Property—Loss, Damage, Reimbursement, Indemnity:** 8. Owner or its agents shall not be liable for any damage to property of Tenant or of others entrusted to employees of the building, nor for loss of or damage to any property of Tenant by theft or otherwise, nor for any injury or damage to persons or property resulting from any cause of whatsoever nature, unless caused by or due to the negligence of Owner, its agents, servants or employees. Owner or its agents will not be liable for any such damage caused by other tenants or persons in, upon or about said building or caused by operations in construction of any private, public or quasi public work. If at any time any windows of the demised premises are temporarily closed, darkened or bricked up for permanently closed, darkened or bricked up, if required by law) for any reason whatsoever including, but not limited to Owner's own acts, Owner shall not be liable for any damage Tenant may sustain thereby and Tenant shall not be entitled to any compensation therefor nor abatement or diminution of rent nor shall the same release Tenant from its obligations hereunder nor constitute an eviction. Tenant shall indemnify and save harmless Owner against and from all liabilities, obligations, damages, penalties, claims, costs and expenses for which Owner shall not be reimbursed by insurance, including reasonable attorneys fees, paid, suffered or incurred as a result of any breach by Tenant, Tenant's agents, contractors, employees, invitees, or licensees, of any covenant or condition of this lease, or the carelessness, negligence or improper conduct of the Tenant, Tenant's agents, contractors, employees, invitees or licensees. Tenant's liability under this lease extends to the acts and omissions of any sub-tenant, and any agent, contractor, employee, invitee or licensee of any sub-tenant. In case any action or proceeding is brought against Owner by reason of any such claim, Tenant, upon notice from Owner, will, at Tenant's expense, resist or defend such action or proceeding by counsel approved by Owner in writing, such approval not to be unreasonably withheld.

**Destruction, Fire and Other Casualty:** 9. (a) If the demised premises or any part thereof shall be damaged by fire or other casualty, Tenant shall give immediate notice thereof to Owner and this lease shall continue in full force and effect except as hereinafter set forth. (b) If the demised premises are partially damaged or rendered partially unusable by fire or other casualty, the damages thereto shall be repaired by and at the expense of Owner and the rent, until such repair shall be substantially completed, shall be apportioned from the day following the casualty according to the part of the premises which is usable. (c) If the demised premises are totally damaged or rendered wholly unusable by fire or other casualty, then the rent shall be proportionately paid up to the time of the casualty and thereafter shall cease until the

**Rider to be added if necessary.**

date when the premises shall have been repaired and restored by Owner, subject to Owner's right to elect not to restore the same as hereinafter provided. (d) If the demised premises are rendered wholly unusable or, (whether or not the demised premises are damaged in whole or in part) if the building shall be so damaged that Owner shall decide to demolish it or to rebuild it, then, in any of such events, Owner may elect to terminate this lease by written notice to Tenant, given within 90 days after such fire or casualty, specifying a date for the expiration of the lease, which date shall not be more than 60 days after the giving of such notice, and upon the date specified in such notice the term of this lease shall expire as fully and completely as if such date were the date set forth above for the termination of this lease and Tenant shall forthwith quit, surrender and vacate the premises without prejudice however, to Landlord's rights and remedies against Tenant under the lease provisions in effect prior to such termination, and any rent owing shall be paid up to such date and any payments of rent made by Tenant which were on account of any period subsequent to such date shall be returned to Tenant. Unless Owner shall serve a termination notice as provided for herein, Owner shall make the repairs and restorations under the conditions of (b) and (c) hereof, with all reasonable expedition, subject to delays due to adjustment of insurance claims, labor troubles and causes beyond Owner's control. After any such casualty, Tenant shall cooperate with Owner's restoration by removing from the premises as promptly as reasonably possible, all of Tenant's salvageable inventory and movable equipment, furniture, and other property. Tenant's liability for rent shall resume five (5) days after written notice from Owner that the premises are substantially ready for Tenant's occupancy. (e) Nothing contained hereinabove shall relieve Tenant from liability that may exist as a result of damage from fire or other casualty. Notwithstanding the foregoing, each party shall look first to any insurance in its favor before making any claim against the other party for recovery for loss or damage resulting from fire or other casualty, and to the extent that such insurance is in force and collectible and to the extent permitted by law, Owner and Tenant each hereby releases and waives all right of recovery against the other or any one claiming through or under each of them by way of subrogation or otherwise. The foregoing release and waiver shall be in force only if both releasors' insurance policies contain a clause providing that such a release or waiver shall not invalidate the insurance. If, and to the extent, that such waiver can be obtained only by the payment of additional premiums, then the party benefitting from the waiver shall pay such premium within ten days after written demand or shall be deemed to have agreed that the party obtaining insurance coverage shall be free of any further obligation under the provisions hereof with respect to waiver of subrogation. Tenant acknowledges that Owner will not carry insurance on Tenant's furniture and/or furnishings or any fixtures or equipment, improvements or appurtenances removable by Tenant and agrees that Owner will not be obligated to repair any damage thereto or replace the same. (f) Tenant hereby waives the provisions of Section 227 of the Real Property Law and agrees that the provisions of this article shall govern and control in lieu thereof.

**Eminent Domain:** 10. If the whole or any part of the demised premises shall be acquired or condemned by Eminent Domain for any public or quasi public use or purpose, then and in that event, the term of this lease shall cease and terminate from the date of title vesting in such proceeding and Tenant shall have no claim for the value of any unexpired term of said lease and assigns to Owner, Tenant's entire interest in any such award.

**Assignment, Mortgage, Etc.:** 11. Tenant, for itself, its heirs, distributees, executors, administrators, legal representatives, successors and assigns, expressly covenants that it shall not assign, mortgage or encumber this agreement, nor underlet, or suffer or permit the demised premises or any part thereof to be used by others, without the prior written consent of Owner in each instance. Transfer of the majority of the stock of a corporate Tenant shall be deemed an assignment. If this lease be assigned, or if the demised premises or any part thereof be underlet or occupied by anybody other than Tenant, Owner may, after default by Tenant, collect rent from the assignee, under-tenant or occupant, and apply the net amount collected to the rent herein reserved, but no such assignment, underletting, occupancy or collection shall be deemed a waiver of this covenant, or the acceptance of the assignee, under-tenant or occupant as tenant, or a release of Tenant from the further performance by Tenant of covenants on the part of Tenant herein contained. The consent by Owner to an assignment or underletting shall not in any wise be construed to relieve Tenant from obtaining the express consent in writing of Owner to any further assignment or underletting.

**Electric Current:** 12. Rates and conditions in respect to submetering or rent inclusion, as the case may be, to be added in RIDER attached hereto. Tenant covenants and agrees that at all times his use of electric current shall not exceed the capacity of existing feeders to the building or the risers or wiring installation and Tenant may not use any electrical equipment which, in Owner's opinion, reasonably exercised, will overload such installations or interfere with the use thereof by other tenants of the building. The change at any time of the character of electric service shall in no wise make Owner liable or responsible to Tenant, for any loss, damages or expenses which Tenant may sustain.

**Access to Premises:** 13. Owner or Owner's agents shall have the right (but shall not be obligated) to enter the demised premises in any emergency at any time, and, at other reasonable times, to examine the same and to make such repairs, replacements and improvements as Owner may deem necessary and reasonably desirable to the demised premises or to any other portion of the building or which Owner may elect to perform. Tenant shall permit Owner to use and maintain and replace pipes and conduits in and through the demised premises and to erect new pipes and conduits therein provided they are concealed within the walls, floor, or ceiling. Owner may, during the progress of any work in the demised premises, take all necessary materials and equipment into said premises without the same constituting an eviction nor shall the Tenant be entitled to any abatement of rent while such work is in progress nor to any damages by reason of loss or interruption of business or otherwise. Throughout the term hereof Owner shall have the right to enter the demised premises at reasonable hours for the purpose of showing the

EXHIBIT D

PAGE 2

same to prospective purchasers or mortgagees of the building, and during the last six months of the term for the purpose of showing the same to prospective tenants. If Tenant is not present to open and permit an entry into the premises, Owner or Owner's agents may enter the same whenever such entry may be necessary or permissible by master key or forcibly and provided reasonable care is exercised to safeguard Tenant's property, such entry shall not render Owner or its agents liable therefor, nor in any event shall the obligations of Tenant hereunder be affected. If during the last month of the term Tenant shall have removed all or substantially all of Tenant's property therefrom, Owner may immediately enter, alter, renovate or redecorate the demised premises without limitation or abatement of rent, or incurring liability to Tenant for any compensation and such act shall have no effect on this lease or Tenant's obligations hereunder.

**Vault,**
**Vault Space,**
**Area:**
14.   No Vaults, vault space or area, whether or not enclosed or covered, not within the property line of the building is leased hereunder, anything contained in or indicated on any sketch, blue print, or plan, or anything contained elsewhere in this lease to the contrary notwithstanding. Owner makes no representation as to the location of the property line of the building. All vaults and vault space and all such use as not within the property line of the building, which Tenant may be permitted to use and/or occupy, is to be used and/or occupied under a revocable license, and if any such license be revoked, or if the amount of such space or area be diminished or required by any federal, state or municipal authority or public utility, Owner shall not be subject to any liability nor shall Tenant be entitled to any compensation or diminution or abatement of rent, nor shall such revocation, diminution or requisition be deemed constructive or actual eviction. Any tax, fee or charge of rent of any authorities for such vault or area shall be paid by Tenant.

**Occupancy:**
15.   Tenant will not at any time use or occupy the demised premises in violation of the certificate of occupancy issued for the building of which the demised premises are a part. Tenant has inspected the premises and accepts them as is, subject to the riders annexed hereto with respect to Owner's work, if any. In any event, Owner makes no representation as to the condition of the premises and Tenant agrees to accept the same subject to violation, whether or not of record.

**Bankruptcy:**
16.   (a) Anything elsewhere in this lease to the contrary notwithstanding, this lease may be cancelled by Owner by the sending of a written notice to Tenant within a reasonable time after the happening of any one or more of the following events: (1) the commencement of a case in bankruptcy or under the laws of any state naming Tenant as the debtor; or (2) the making by Tenant of an assignment or any other arrangement for the benefit of creditors under any state statute. Neither Tenant nor any person claiming through or under Tenant, or by reason of any statute or order of court, shall thereafter be entitled to possession or of the premises demised but shall forthwith quit and surrender the premises. If this lease shall be assigned in accordance with its terms, the provisions of this Article 16 shall be applicable only to the party then owning Tenant's interest in this lease.

(b) It is stipulated and agreed that in the event of the termination of this lease pursuant to (a) hereof, Owner shall forthwith, notwithstanding any other provisions of this lease to the contrary, be entitled to recover from Tenant as and for liquidated damages an amount equal to the difference between the rent reserved hereunder for the unexpired portion of the term demised and the fair and reasonable rental value of the demised premises for the same period. In the computation of such damages the difference between any installment of rent becoming due hereunder after the date of termination and the fair and reasonable rental value of the demised premises for the period for which such installment was payable shall be discounted to the date of termination at the rate of four percent (4%) per annum. If such premises or any part thereof be relet by the Owner for the unexpired term of said lease, or any part thereof, before presentation of proof of such liquidated damages to any court, commission or tribunal, the amount of rent reserved upon such reletting shall be deemed to be the fair and reasonable rental value for the part or the whole of the premises so re-let during the term of the re-letting. Nothing herein contained shall limit or prejudice the right of the Owner to prove for and obtain as liquidated damages by reason of such termination, an amount equal to the maximum allowed by any statute or rule of law in effect at the time when, and governing the proceedings in which, such damages are to be proved, whether or not such amount be greater, equal to, or less than the amount of the difference referred to above.

**Default:**
17.   (1) If Tenant defaults in the fulfilling any of the covenants of this lease other than the covenants for the payment of rent or additional rent or if the demised premises becomes vacant or deserted; or if any execution or attachment shall be issued against Tenant or any of Tenant's property whereupon the demised premises shall be taken or occupied by someone other than Tenant; or if this lease be rejected under §235 of Title 11 of the U.S. Code (bankruptcy code); or if Tenant shall fail to move into or take possession of the premises within fifteen (15) days after the commencement of the term of this lease, then, in any one or more of such events, upon Owner serving a written five (5) days notice upon Tenant specifying the nature of said default and upon the expiration of said five (5) days, if Tenant shall have failed to comply with or remedy such default, or if the said default or omission complained of shall be of a nature that the same cannot be completely cured or remedied within said five (5) day period, and if Tenant shall not have diligently commenced during such default within such five (5) day period, and shall not thereafter with reasonable diligence and in good faith, proceed to remedy or cure such default, then Owner may serve a written three (3) days' notice of cancellation of this lease upon Tenant, and upon the expiration of such three (3) days this lease and this term thereunder shall end and expire as fully and completely as if the expiration of such three (3) day period were the day herein definitely fixed for the end and expiration of this lease and the term thereof and Tenant shall then quit and surrender the demised premises to Owner but Tenant shall remain liable as hereinafter provided.

(2) If the notice provided for in (1) hereof shall have been given, and the term shall expire as aforesaid; or if Tenant shall make default in the payment of the rent reserved herein or any item of additional rent herein mentioned or any part of either or in making any other payment herein required; then and in any of such events Owner may without notice, re-enter the demised premises either by force or otherwise, and dispossess Tenant by summary proceedings or otherwise, and the legal representative of Tenant or other occupant of demised premises and remove their effects and hold the premises as if this lease had not been made, and Tenant hereby waives the service of notice of intention to re-enter or to institute legal proceedings to that end. If Tenant shall make default hereunder prior to the date fixed as the commencement of any renewal or extension of this lease, Owner may cancel and terminate such renewal or extension agreement by written notice.

**Remedies of**
**Owner and**
**Waiver of**
**Redemption:**
18.   In case of any such default, re-entry, expiration and/or dispossess by summary proceedings or otherwise, (a) the rent shall become due thereupon and be paid up to the time of such re-entry, dispossess and/or expiration, (b) Owner may re-let the premises or any part or parts thereof, either in the name of Owner or otherwise, for a term or terms, which may at Owner's option be less than or exceed the period which would otherwise have constituted the balance of the term of this lease and may grant concessions or free rent or charge a higher rental than that in this lease, and/or (c) Tenant or the legal representative of Tenant shall also pay Owner as liquidated damages for the failure of Tenant to observe and perform said Tenant's covenants herein contained, any deficiency between the rent hereby reserved and/or covenanted to be paid and the net amount, if any, of the rents collected on account of the lease or leases of the demised premises for each month of the period which would otherwise have constituted the balance of the term of this lease. The failure of Owner to re-let the premises or any part or parts thereof shall not release or affect Tenant's liability for damages. In computing such liquidated damages there shall be added to the said deficiency such expenses as Owner may incur in connection with re-letting, such as legal expenses, attorneys' fees, brokerage, advertising and for keeping the demised premises in good order or for preparing the same for re-letting. Any such liquidated damages shall be paid in monthly installments by Tenant on the rent day specified in this lease and any suit brought to collect the amount of the deficiency for any month shall not prejudice in any way the rights of Owner to collect the deficiency for any month shall not prejudice in any way the rights of Owner to collect the deficiency of any subsequent month by a similar proceeding. Owner, in putting the demised premises in good order or preparing the same for re-rental may, at Owner's option, make such alterations, repairs, replacements, and/or decorations in the demised premises as Owner, in Owner's sole judgment, considers advisable and necessary for the purpose of re-letting the demised premises, and the making of such alterations, repairs, replacements, and/or decorations shall not operate or be construed to release Tenant from liability hereunder as aforesaid. Owner shall in no event be liable in any way whatsoever for failure to re-let the demised premises, or in the event that the demised premises are re-let, for failure to collect the rent thereof under such re-letting, and in no event shall Tenant be entitled to receive any excess, if any, of such net rents collected over the sums payable by Tenant to Owner hereunder. In the event of a breach or threatened breach by Tenant of any of the covenants or provisions hereof, Owner shall have the right of injunction and the right to invoke any remedy allowed at law or in equity as if re-entry, summary proceedings and other remedies were not herein provided for. Mention in this lease of any particular remedy, shall not preclude Owner from any other remedy, in law or in equity. Tenant hereby expressly waives any and all rights of redemption granted by or under any present or future laws in the event of Tenant being evicted or dispossessed for any cause, or in the event of Owner obtaining possession of demised premises, by reason of the violation by Tenant of any of the covenants and conditions of this lease, or otherwise.

**Fees and**
**Expenses**
19.   If Tenant shall default in the observance or performance of any term or covenant on Tenant's part to be observed or performed under or by virtue of any of the terms or provisions in any article of this lease, then, unless otherwise provided elsewhere in this lease, Owner may immediately or at any time thereafter and without notice perform the obligation of Tenant thereunder. If Owner, in connection with the foregoing or in connection with any default by Tenant in the covenant to pay rent hereunder, makes any expenditures or incurs any obligations for the payment of money, including but not limited to attorney's fees, in instituting, prosecuting or defending any action or proceeding, then Tenant will reimburse Owner for such sums so paid or obligations incurred with interest and costs. The foregoing expenses incurred by reason of Tenant's default shall be deemed to be additional rent hereunder and shall be paid by Tenant to Owner within five (5) days of rendition of any bill or statement to Tenant therefor. If Tenant's lease term shall have expired at the time of making of such expenditures or incurring of such obligations, such sums shall be recoverable by Owner as damages.

**Building**
**Alterations**
**and**
**Management:**
20.   Owner shall have the right at any time without the same constituting an eviction and without incurring any liability to Tenant therefor to change the arrangement and/or location of public entrances, passageways, doors, doorways, corridors, elevators, stairs, toilets or other public parts of the building and to change the name, number or designation by which the building may be known. There shall be no allowance to Tenant for diminution of rental value and no liability on the part of Owner by reason of inconvenience, annoyance or injury to business arising from Owner or other Tenants making any repairs in the building or any such alterations, additions and improvements. Furthermore, Tenant shall not have any claim against Owner by reason of Owner's imposition of such controls of the manner of access to the building by Tenant's social or business visitors as the Owner may deem necessary for the security of the building and its occupants.

**No Repre-**
**sentations by**
**Owner**
21.   Neither Owner nor Owner's agents have made any representations or promises with respect to the physical condition of the building, the land upon which

It is erected or the demised premis's, the rents, leases, expenses of operation or any other matter or thing affecting or related to the premises except as herein expressly set forth and/or rights, easements or licenses are acquired by Tenant by implication or otherwise except as expressly set forth in the provisions of this lease. That as has inspected the building and the demised premises and is thoroughly acquainted with their condition and agrees to take the same "as is" and acknowledges that the taking of possession of the demised premises by Tenant shall be conclusive evidence that the said premises and the building of which the same form a part were in good and satisfactory condition at the time such possession was so taken, except as to latent defects. All understandings and agreements heretofore made between the parties hereto are merged in this contract, which alone fully and completely expresses the agreement between Owner and Tenant and any executory agreement hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of it in whole or in part, unless such executory agreement is in writing and signed by the party against whom enforcement of the change, modification, discharge or abandonment is sought.

**End of Term:**
22.  Upon the expiration or other termination of the term of this lease, Tenant shall quit and surrender to Owner the demised premises, broom clean, in good order and condition, ordinary wear and damages which Tenant is not required to repair as provided elsewhere in this lease excepted, and Tenant shall remove all its property. Tenant's obligation to observe or perform this covenant shall survive the expiration or other termination of this lease. If the last day of the term of this Lease or any renewal thereof, falls on Sunday, this lease shall expire at noon on the preceding Saturday unless it be a legal holiday in which case it shall expire at noon on the preceding business day.

**Quiet Enjoyment:**
23.  Owner covenants and agrees with Tenant that upon Tenant paying the rent and additional rent and observing and performing all of the terms, covenants and conditions, on Tenant's part to be observed and performed, Tenant may peaceably and quietly enjoy the premises hereby demised, subject, nevertheless, to the terms and conditions of this lease including, but not limited to, Article 30 hereof and to the ground leases, underlying leases and mortgages hereinbefore mentioned.

**Failure to Give Possession:**
24.  If Owner is unable to give possession of the demised premises on the date of the commencement of the term hereof, because of the holding over or retention of possession of any tenant, undertenant or occupants or if the demised premises are located in a building being constructed, because such building has not been sufficiently completed to make the premises ready for occupancy or because of the fact that a certificate of occupancy has not been procured or for any other reason, Owner shall not be subject to any liability for failure to give possession on said date and the validity of the lease shall not be impaired under such circumstances, nor shall the same be construed in any wise to extend the term of this lease, but the rent payable hereunder shall be abated (provided Tenant is not responsible for Owner's inability to obtain possession) until after Owner shall have given Tenant written notice that the premises are vacant and ready for Tenant's occupancy. If permission is given to Tenant to enter into the possession of the demised premises or to occupy premises other than the demised premises prior to the date specified as the commencement of the term of this lease, Tenant covenants and agrees that occupancy shall be deemed to be under all the terms, covenants, conditions and provisions of this lease, except as to the covenant to pay rent. The provisions of this article are intended to constitute "an express provision on to the contrary" within the meaning of Section 223-a of the New York Real Property Law.

**No Waiver:**
25.  The failure of Owner to seek redress for violation of, or to insist upon the strict performance of any covenant or condition of this lease or of any of the Rules or Regulations, set forth or hereafter adopted by Owner, shall not prevent a subsequent act which would have originally constituted a violation from having all the force and effect of an original violation. The receipt by Owner of rent with knowledge of the breach of any covenant of this lease shall not be deemed a waiver of such breach and no provision of this lease shall be deemed to have been waived by Owner unless such waiver be in writing signed by Owner. No payment by Tenant or receipt by Owner of a lesser amount than the monthly rent herein stipulated shall be deemed to be other than on account of the earliest stipulated rent, nor shall any endorsement or statement of any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction, and Owner may accept such check or payment without prejudice to Owner's right to recover the balance of such rent or pursue any other remedy in this lease provided. No act or thing done by Owner or Owner's agents during the term hereby demised shall be deemed an acceptance of a surrender of said premises, and no agreement to accept such surrender shall be valid unless in writing signed by Owner. No employee of Owner or Owner's agent shall have any power to accept the keys of said premises prior to the termination of the lease and the delivery of keys to any such agent or employee shall not operate as a termination of the lease or a surrender of the premises.

**Waiver of Trial by Jury:**
26.  It is mutually agreed by and between Owner and Tenant that the respective parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other (except for personal injury or property damage) on any matters whatsoever arising out of or in any way connected with this lease, the relationship of Owner and Tenant, Tenant's use of or occupancy of said premises, and any emergency statutory or any other statutory remedy. It is further mutually agreed that in the event Owner commences any summary proceeding for possession of the premises, Tenant will not interpose any counterclaim of whatever nature or description in any such proceeding including a counterclaim under Article 4.

**Inability to Perform:**
27.  This Lease and the obligation of Tenant to pay rent hereunder and perform all of the other covenants and agreements hereunder on part of Tenant to be performed shall in no wise be affected, impaired or excused because Owner is

unable to fulfill any of its obligations under this lease or to supply or is delayed in supplying any service expressly or impliedly to be supplied or is unable to make, or is delayed in making any repair, additions, alterations or decorations or is unable to supply or is delayed in supplying any equipment or fixtures if Owner is prevented or delayed from so doing by reason of strike or labor troubles or any cause whatsoever including, but not limited to, government preemption in connection with a National Emergency or by reason of any rule, order or regulation of any department or subdivision thereof of any government agency or by reason of the conditions of supply and demand which have been or are affected by war or other emergency.

**Bills and Notices:**
28.  Except as otherwise in this lease provided, a bill, statement, notice or communication which Owner may desire or be required to give to Tenant, shall be deemed sufficiently given or rendered if, in writing, delivered to Tenant personally or sent by registered or certified mail addressed to Tenant at the building of which the demised premises form a part or at the last known residence address or business address of Tenant or left at any of the aforesaid premises addressed to Tenant, and the time of the rendition of such bill or statement and of the giving of such notice or communication shall be deemed to be the time when the same is delivered to Tenant, mailed, or left at the premises as herein provided. Any notice by Tenant to Owner must be served by registered or certified mail addressed to Owner at the address first hereinabove given or at such other address as Owner shall designate by written notice.

**Services Provided by Owner:**
29.  As long as Tenant is not in default under any of the covenants of this lease, Owner shall provide; (a) necessary elevator facilities on business days from 8 a.m. to 6 p.m. and on Saturdays from 8 a.m. to 1 p.m. and have one elevator subject to call at all other times; (b) heat to the demised premises when and as required by law, on business days from 8 a.m. to 6 p.m. and on Saturdays from 8 a.m. to 1 p.m.; (c) water for ordinary lavatory purpose, but if Tenant uses or consumes water for any other purposes or in unusual quantities (of which fact Owner shall be the sole judge), Owner may install a water meter at Tenant's expense which Tenant shall thereafter maintain at Tenant's expense in good working order and repair to register such water consumption and Tenant shall pay for water consumed as shown on said meter as additional rent as and when bills are rendered; (d) cleaning service for the demised premises on business days by Owner's agents provided that the same are kept in order by Tenant; if, however, said premises are to be kept clean by Tenant, it shall be done at Tenant's sole expense, in a manner satisfactory to Owner and no one other than persons approved by Owner shall be permitted to enter said premises or the building of which they are a part for such purpose. Tenant shall pay Owner the cost of removal of any of Tenant's refuse and rubbish from the building; (e) if the demised premises is serviced by Owner's air conditioning/cooling and ventilating system, air conditioning/cooling will be furnished to tenant from May 15th through September 30th on business days (Mondays through Fridays, holidays excepted) from 8:00 a.m. to 6:00 p.m., and ventilation will be furnished on business days during the aforesaid hours except when air conditioning/cooling is being furnished as aforesaid. If Tenant requires air conditioning/cooling or ventilation for more extended hours or on Saturdays, Sundays or on holidays, as defined under Owner's contract with Operating Engineers' Local 94-94A., Owner will furnish the same at Tenant's expense. RIDER to be added in respect to rates and conditions for such additional services; (f) Owner reserves the right to stop services of the heating, elevators, plumbing, air-conditioning, power systems or cleaning or other services, if any, when necessary by reason of accident or for repairs, alterations, replacements or improvements necessary or desirable in the judgment of Owner for as long as may be reasonably required by reason thereof. If the building of which the demised premises are a part supplies manually-operated elevator service, Owner at any time may substitute automatic-control elevator service and upon ten days' written notice to Tenant, proceed with alterations necessary therefor without in any wise affecting this lease or the obligation of Tenant hereunder. The same shall be done with a minimum of inconvenience to Tenant and Owner shall pursue the alteration with due diligence.

**Captions:**
30.  The Captions are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope of this lease nor the intent of any provisions thereof.

**Definitions:**
31.  The term "office", or "offices", wherever used in this lease, shall not be construed to mean premises used as stores or stores, for the sale or display, at any time, of goods, wares or merchandise, of any kind, or as a restaurant, shop, booth, bootblack or other stand, barber shop, or for other similar purposes or for manufacturing. The term "Owner" means a landlord or lessor, and as used in this lease means only the owner, or the mortgagee in possession, for the time being of the land and building (or the owner of a lease of the building or of the land and building) of which the demised premises form a part, so that in the event of any sale or sales of said land and building or of said lease, or in the event of a lease of said building, or of the land and building, the said Owner shall be and hereby is entirely freed and relieved of all covenants and obligations of Owner hereunder, and it shall be deemed and construed without further agreement between the parties or their successors in interest, or between the parties and the purchaser, at any such sale, or the said lessee of the building, or of the land and building, that the purchaser or the lessee of the building has assumed and agreed to carry out any and all covenants and obligations of Owner, hereunder. The words "re-enter" and "re-entry" as used in this lease are not restricted to their technical legal meaning. The term "business days" as used in this lease shall exclude Saturdays (except such portion thereof as is covered by specific hours in Article 29 hereof), Sundays and all days observed by the State or Federal Government as legal holidays and those designated as holidays by the applicable building service union employees service contract or by the applicable Operating Engineers contract with respect to HVAC service.

☞ Rider to be added if necessary.

EXHIBIT D
PAGE 4

**Adjacent Excavation— Shoring:** 32. If an excavation shall be made upon land adjacent to the demised premises, or shall be authorized to be made, Tenant shall afford to the person causing or authorized to cause such excavation, license to enter upon the demised premises for the purpose of doing such work as said person shall deem necessary to preserve the wall or the building of which demised premises form a part from injury or damage and to support the same by proper foundations without any claim for damages or indemnity against Owner, or diminution or abatement of rent.

**Rules and Regulations:** 33. Tenant and Tenant's servants, employees, agents, visitors, and licensees shall observe faithfully, and comply strictly with, the Rules and Regulations and such other and further reasonable Rules and Regulations as Owner or Owner's agents may from time to time adopt. Notice of any additional rules or regulations shall be given in such manner as Owner may elect. In case Tenant disputes the reasonableness of any additional Rule or Regulation hereafter made or adopted by Owner or Owner's agents, the parties hereto agree to submit the question of the reasonableness of such Rule or Regulation for decision to the New York office of the American Arbitration Association, whose determination shall be final and conclusive upon the parties hereto. The right to dispute the reasonableness of any additional Rule or Regulation upon Tenant's part shall be deemed waived unless the same shall be asserted by service of a notice in writing upon Owner within ten (10) days after the giving of notice thereof. Nothing in this lease contained shall be construed to impose upon Owner any duty or obligation to enforce the Rules and Regulations or terms, covenants or conditions in any other lease, as against any other tenant and Owner shall not be liable to Tenant for violation of the same by any other tenant, its servants, employees, agents, visitors or licensees.

**Security:** 34. Tenant has deposited with Owner the sum of $13,200.00 as security for the faithful performance and observance by Tenant of the terms, provisions and conditions of this lease; it is agreed that in the event Tenant defaults in respect of any of the terms, provisions and conditions of this lease, including, but not limited to, the payment of rent and additional rent, Owner may use, apply or retain the whole or any part of the security so deposited to the extent required for the payment of any rent and additional rent or any other sum

as to which Tenant is in default or for any sum which Owner may expend or may be required to expend by reason of Tenant's default in respect of any of the terms, covenants and conditions of this lease, including but not limited to, any damages or deficiency in the re-letting of the premises, whether such damages or deficiency accrued before or after summary proceedings or other re-entry by Owner. In the event that Tenant shall fully and faithfully comply with all of the terms, provisions, covenants and conditions of this lease, the security shall be returned to Tenant after the date fixed as the end of the Lease and after delivery of entire possession of the demised premises to Owner. In the event of a sale of the land and building or leasing of the building, of which the demised premises form a part, Owner shall have the right to transfer the security to the vendee or lessee and Owner shall thereupon be released by Tenant from all liability for the return of such security; and Tenant agrees to look to the new Owner solely for the return of said security, and it is agreed that the provisions hereof shall apply to every transfer or assignment made of the security to a new Owner. Tenant further covenants that it will not assign or encumber or attempt to assign or encumber the monies deposited herein as security and that neither Owner nor its successors or assigns shall be bound by any such assignment, encumbrance, attempted assignment or attempted encumbrance. *See Articles 68+77*

**Estoppel Certificate:** 35. Tenant, at any time, and from time to time, upon at least 10 days' prior notice by Owner, shall execute, acknowledge and deliver to Owner, and/or to any other person, firm or corporation specified by Owner, a statement certifying that this Lease is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications), stating the dates to which the rent and additional rent have been paid, and stating whether or not there exists any default by Owner under this Lease, and, if so, specifying each such default.

**Successors and Assigns:** 36. The covenants, conditions and agreements contained in this lease shall bind and inure to the benefit of Owner and Tenant and their respective heirs, distributees, executors, administrators, successors, and except as otherwise provided in this lease, their assigns.

☞ Space to be filled in or deleted:

**- See Annexed Rider Attached Hereto And Made A Part Hereof -**

**In Witness Whereof,** Owner and Tenant have respectively signed and sealed this lease as of the day and year first above written.

Witness for Owner:                          ELEVEN EAST 36TH STREET ASSOCIATES [CORP SEAL]

_____                     _____ [L.S.]
                                            By: A Partner

Witness for Tenant:                         NATIONAL CREDIT SYSTEMS, INC. [CORP SEAL]

_____                     _____ [L.S.]
Secretary                                   By: President
                                            ACKNOWLEDGMENTS   FED. I.D. #_____

**CORPORATE OWNER**
STATE OF NEW YORK, ss.:
County of

On this          day of                        , 19      , before me
personally came
to me known, who being by me duly sworn, did depose and say that he resides
in
that he is the                                 of
the corporation described in and which executed the foregoing instrument, as
OWNER; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

**CORPORATE TENANT**
STATE OF NEW YORK, ss.:
County of

On this          day of                        , 19      , before me
personally came
to me known, who being by me duly sworn, did depose and say that he resides
in
that he is the                                 of
the corporation described in and which executed the foregoing instrument, as TENANT; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

**INDIVIDUAL OWNER**
STATE OF NEW YORK, ss.:
County of

On this          day of                        , 19      , before me
personally came
to me known and known to me to be the individual
described in and who, as OWNER, executed the foregoing instrument and
acknowledged to me that             he executed the same.

**INDIVIDUAL TENANT**
STATE OF NEW YORK, ss.:
County of

On this          day of                        , 19      , before me
personally came
to me known and known to me to be the individual
described in and who, as TENANT, executed the foregoing instrument and
acknowledged to me that             he executed the same.

The submission of this Lease to Tenant for examination or for signature shall not be deemed to constitute an offer or evidence of reservation or option or any other right in Tenant with respect to the Demised Premises or any other space in the Building and it is expressly understood that this Lease shall not be effective and neither party shall be bound thereunder until it is executed and delivered by both parties.

EXHIBIT  D
PAGE  5

# U.S. Corporation Income Tax Return

Form **1120**

Department of the Treasury
Internal Revenue Service

For calendar year 2001 or tax year

beginning _____ , ending _____

OMB No. 1545-0123

**2001**

**A** Check if a:
1 Consolidated return (attach Form 851) ☐
2 Personal holding co. (attach Sch. PH) ☐
3 Personal service corp. (as defined in Temp. Regs. sec. 1.441-4T) ☐

Use IRS label. Otherwise, print or type.

Name
NATIONAL CREDIT SYSTEMS, INC.

Number, street, and room or suite no. (If a P.O. box, see page 7 of instructions.)
175 FIFTH AVENUE # 3100

City or town, state, and ZIP code
NEW YORK, NY  10010

**B** Employer identification number
13-4099820

**C** Date incorporated

**D** Total assets (see page 8 of instructions)
$ 89,845.

**E** Check applicable boxes: (1) ☐ Initial return   (2) ☐ Final return   (3) ☐ Name change   (4) ☐ Address change

| | | | | | |
|---|---|---|---|---|---|
| **Income** | 1 a Gross receipts or sales | 1,111,951. | b Less returns and allowances | c Bal ▶ 1c | 1,111,951. |
| | 2 Cost of goods sold (Schedule A, line 8) | | | 2 | |
| | 3 Gross profit. Subtract line 2 from line 1c | | | 3 | 1,111,951. |
| | 4 Dividends (Schedule C, line 19) | | | 4 | |
| | 5 Interest | | | 5 | |
| | 6 Gross rents | | | 6 | |
| | 7 Gross royalties | | | 7 | |
| | 8 Capital gain net income (attach Schedule D (Form 1120)) | | | 8 | |
| | 9 Net gain or (loss) from Form 4797, Part II, line 18 (attach Form 4797) | | | 9 | |
| | 10 Other income (attach schedule) | | | 10 | |
| | 11 Total income. Add lines 3 through 10 | | ▶ | 11 | 1,111,951. |

| | | | | | |
|---|---|---|---|---|---|
| **Deductions** | 12 Compensation of officers (Schedule E, line 4) | | | 12 | 79,000. |
| | 13 Salaries and wages (less employment credits) | | | 13 | 311,970. |
| | 14 Repairs and maintenance | | | 14 | 6,863. |
| | 15 Bad debts | | | 15 | |
| | 16 Rents | | | 16 | 28,492. |
| | 17 Taxes and licenses                SEE STATEMENT 1 | | | 17 | 38,298. |
| | 18 Interest | | | 18 | 3,870. |
| | 19 Charitable contributions SEE STATEMENT 2   AND   SEE STATEMENT 3 | | | 19 | 0. |
| | 20 Depreciation (attach Form 4562) | 20 | 27,027. | | |
| | 21 Less depreciation claimed on Schedule A and elsewhere on return | 21a | | 21b | 27,027. |
| | 22 Depletion | | | 22 | |
| | 23 Advertising | | | 23 | 2,897. |
| | 24 Pension, profit-sharing, etc., plans | | | 24 | |
| | 25 Employee benefit programs | | | 25 | 14,187. |
| | 26 Other deductions (attach schedule)           SEE STATEMENT 4 | | | 26 | 576,774. |
| | 27 Total deductions. Add lines 12 through 26 | | ▶ | 27 | 1,089,378. |
| | 28 Taxable income before net operating loss deduction and special deductions. Subtract line 27 from line 11 | | | 28 | 22,573. |
| | 29 Less: a Net operating loss (NOL) deduction   STATEMENT 5 | 29a | 22,573. | | |
| | b Special deductions (Schedule C, line 20) | 29b | | 29c | 22,573. |

| | | | | | |
|---|---|---|---|---|---|
| **Tax and Payments** | 30 Taxable income. Subtract line 29c from line 28 | | | 30 | 0. |
| | 31 Total tax (Schedule J, line 11) | | | 31 | 0. |
| | 32 Payments: a 2000 overpayment credited to 2001 | 32a | | | |
| | b 2001 estimated tax payments | 32b | | | |
| | Less 2001 refund applied for on Form 4466 | 32c ( ) d Bal ▶ | 32d | | |
| | e Tax deposited with Form 7004 | | 32e | | |
| | f Credit for tax paid on undistributed capital gains (attach Form 2439) | | 32f | | |
| | g Credit for Federal tax on fuels (attach Form 4136) | | 32g | | 32h |
| | 33 Estimated tax penalty. Check if Form 2220 is attached | | ▶ ☐ | 33 | |
| | 34 Tax due. If line 32h is smaller than the total of lines 31 and 33, enter amount owed | | | 34 | 0. |
| | 35 Overpayment. If line 32h is larger than the total of lines 31 and 33, enter amount overpaid | | | 35 | |
| | 36 Enter amount of line 35 you want: Credited to 2002 estimated tax | | Refunded ▶ | 36 | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Signature of officer _____ Date _____

Title PRESIDENT

May the IRS discuss this return with the preparer shown below?  ☒ Yes ☐ No

**Paid Preparer's Use Only**

Preparer's signature _____

Date 08/27/02   Check if self-employed ☐   Preparer's SSN or PTIN P00026425

Firm's name (or yours if self-employed), address, and ZIP code
ROBERT A. WOLOSHEN, CPA PC
853 BROADWAY - SUITE 1101
NEW YORK, NY   10003

EIN 13 3837810

Phone no. 212-843-3486

EXHIBIT E

111801
01-02-02   JWA   ● See Instructions for Paperwork Reduction Act Notice.

Form 1120 (2001)

PAGE

Form 1120 (2001)   NATIONAL CREDIT SYSTEMS, INC.                    13-4099820   Page 2

## Schedule A    Cost of Goods Sold (See page 14 of Instructions.)

| | | | |
|---|---|---|---|
| 1 | Inventory at beginning of year | 1 | |
| 2 | Purchases | 2 | |
| 3 | Cost of labor | 3 | |
| 4 | Additional section 263A costs (attach schedule) | 4 | |
| 5 | Other costs (attach schedule) | 5 | |
| 6 | Total. Add lines 1 through 5 | 6 | |
| 7 | Inventory at end of year | 7 | |
| 8 | Cost of goods sold. Subtract line 7 from line 6. Enter here and on line 2, page 1 | 8 | |

9 a   Check all methods used for valuing closing inventory:
  (i)  ☐ Cost as described in Regulations section 1.471-3
  (ii) ☐ Lower of cost or market as described in Regulations section 1.471-4
  (iii)☐ Other (Specify method used and attach explanation.) ▶

  b   Check if there was a writedown of subnormal goods as described in Regulations section 1.471-2(c) .......................... ▶ ☐
  c   Check if the LIFO inventory method was adopted this tax year for any goods (if checked, attach Form 970) ............... ▶ ☐
  d   If the LIFO inventory method was used for this tax year, enter percentage (or amounts) of
      closing inventory computed under LIFO | 9d |
  e   If property is produced or acquired for resale, do the rules of section 263A apply to the corporation? ......... ☐ Yes ☐ No
  f   Was there any change in determining quantities, cost, or valuations between opening and closing inventory?
      If "Yes," attach explanation .......................................................... ☐ Yes ☐ No

## Schedule C    Dividends and Special Deductions

| | | (a) Dividends received | (b) % | (c) Special deductions (a) x (b) |
|---|---|---|---|---|
| 1 | Dividends from less-than-20%-owned domestic corporations that are subject to the 70% deduction (other than debt-financed stock) | | 70 | |
| 2 | Dividends from 20%-or-more-owned domestic corporations that are subject to the 80% deduction (other than debt-financed stock) | | 80 see Instructions | |
| 3 | Dividends on debt-financed stock of domestic and foreign corporations (section 246A) | | | |
| 4 | Dividends on certain preferred stock of less-than-20%-owned public utilities | | 42 | |
| 5 | Dividends on certain preferred stock of 20%-or-more-owned public utilities | | 48 | |
| 6 | Dividends from less-than-20%-owned foreign corporations and certain FSCs that are subject to the 70% deduction | | 70 | |
| 7 | Dividends from 20%-or-more-owned foreign corporations and certain FSCs that are subject to the 80% deduction | | 80 | |
| 8 | Dividends from wholly owned foreign subsidiaries subject to the 100% deduction (section 245(b)) | | 100 | |
| 9 | Total. Add lines 1 through 8 | | | |
| 10 | Dividends from domestic corporations received by a small business investment company operating under the Small Business Investment Act of 1958 | | 100 | |
| 11 | Dividends from certain FSCs that are subject to the 100% deduction (section 245(c)(1)) | | 100 | |
| 12 | Dividends from affiliated group members subject to the 100% deduction (sec. 243(a)(3)) | | 100 | |
| 13 | Other dividends from foreign corporations not included on lines 3, 6, 7, 8, or 11 | | | |
| 14 | Income from controlled foreign corporations under subpart F (attach Form(s) 5471) | | | |
| 15 | Foreign dividend gross-up (section 78) | | | |
| 16 | IC-DISC and former DISC dividends not included on lines 1, 2, or 3 (section 246(d)) | | | |
| 17 | Other dividends | | | |
| 18 | Deduction for dividends paid on certain preferred stock of public utilities | | | |
| 19 | Total dividends. Add lines 1 through 17. Enter here and on line 4, page 1 ▶ | | | |
| 20 | Total special deductions. Add lines 9, 10, 11, 12, and 18. Enter here and on line 29b, page 1 ▶ | | | |

## Schedule E    Compensation of Officers
(See instructions for line 12, page 1.)
Note: Complete Schedule E only if total receipts (line 1a plus lines 4 through 10 on page 1, Form 1120) are $500,000 or more.

| (a) Name of officer | (b) Social security number | (c) Percent of time devoted to business | Percent of corporation stock owned | | (f) Amount of compensation |
|---|---|---|---|---|---|
| | | | (d) Common | (e) Preferred | |
| 1 CHRIS REHKOW | 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 | FULL | 50.00% | | 39,500. |
| LYNN GOLDBERG | 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 | FULL | 50.00% | | 39,500. |
| | | | | | |
| | | | | | |
| | | | | | |
| 2 Total compensation of officers | | | | | 79,000. |
| 3 Compensation of officers claimed on Schedule A and elsewhere on return | | | | | |
| 4 Subtract line 3 from line 2. Enter the result here and on line 12, page 1 | | | | | 79,000. |

EXHIBIT _E_
PAGE _2_

111611
01-02-02   JWA

Form 1120 (2001)

Form 1120 (2001)  NATIONAL CREDIT SYSTEMS, INC.                    13-4099820  Page 3

## Schedule J — Tax Computation (See page 16 of Instructions.)

| | | | |
|---|---|---|---|
| 1 | Check if the corporation is a member of a controlled group (see sections 1561 and 1563) ............ ▶ ☐ | | |
| | Important: Members of a controlled group, see Instructions on page 16. | | |
| 2a | If the box on line 1 is checked, enter the corporation's share of the $50,000, $25,000, and $9,925,000 taxable | | |
| | income brackets (in that order): | | |
| | (1) $ _____  (2) $ _____  (3) $ _____ | | |
| b | Enter the corporation's share of: (1) Additional 5% tax (not more than $11,750) | $ _____ | |
| | (2) Additional 3% tax (not more than $100,000) | $ _____ | |
| 3 | Income tax. Check if a qualified personal service corporation under section 448(d)(2) | | |
| | (see page 17) ........................................................................ ▶ ☐ | **3** | 0. |
| 4 | Alternative minimum tax (attach Form 4626) ........................................ | **4** | |
| 5 | Add lines 3 and 4 ..................................................................... | **5** | 0. |
| 6a | Foreign tax credit (attach Form 1118) ................ | 6a | | |
| b | Possessions tax credit (attach Form 5735) ........... | 6b | | |
| c | Check: ☐ Nonconventional source fuel credit  ☐ QEV credit (attach Form 8834) | 6c | | |
| d | General business credit. Check box(es) and indicate which forms are attached. | | | |
| | ☐ Form 3800  ☐ Form(s) (specify) ▶ _____ | 6d | | |
| e | Credit for prior year minimum tax (attach Form 8827) ... | 6e | | |
| f | Qualified zone academy bond credit (attach Form 8860) | 6f | | |
| 7 | Total credits. Add lines 6a through 6f ............................................. | **7** | |
| 8 | Subtract line 7 from line 5 ......................................................... | **8** | 0. |
| 9 | Personal holding company tax (attach Schedule PH (Form 1120)) ................ | **9** | |
| 10 | Other taxes. Check if from: ☐ Form 4255  ☐ Form 8611  ☐ Form 8697 | | |
| | ☐ Form 8866  ☐ Other (attach schedule) .............................. | **10** | |
| 11 | Total tax. Add lines 8 through 10. Enter here and on line 31, page 1 .......... | **11** | 0. |

## Schedule K — Other Information (See page 19 of Instructions.)

| | | Yes | No |
|---|---|---|---|
| 1 | Check method of accounting: a ☐ Cash  b ☒ Accrual | | |
| | c ☐ Other (specify) ▶ _____ | | |
| 2 | See page 21 of the Instructions and enter the: | | |
| a | Business activity code no. ▶ 561440 | | |
| b | Business activity ▶ COLLECTION AGENCY | | |
| c | Product or service ▶ COLLECTION AGENCY | | |
| 3 | At the end of the tax year, did the corporation own, directly or indirectly, 50% or more of the voting stock of a domestic corporation? (For rules of attribution, see section 267(c).) ...... | | X |
| | If "Yes," attach a schedule showing: (a) name and employer identification number (EIN), (b) percentage owned, and (c) taxable income or (loss) before NOL and special deductions of such corporation for the tax year ending with or within your tax year. | | |
| 4 | Is the corporation a subsidiary in an affiliated group or a parent-subsidiary controlled group? ........................ | | X |
| | If "Yes," enter name and EIN of the parent corporation ▶ | | |
| 5 | At the end of the tax year, did any individual, partnership, corporation, estate, or trust own, directly or indirectly, 50% or more of the corporation's voting stock? (For rules of attribution, see section 267(c).) | X | |
| | If "Yes," attach a schedule showing name and identifying number. (Do not include any information already entered in 4 above.) Enter percentage owned ▶ | | |
| 6 | During this tax year, did the corporation pay dividends (other than stock dividends and distributions in exchange for stock) in excess of the corporation's current and accumulated earnings and profits? (See sections 301 and 316.) | | X |
| | If "Yes," file Form 5452, Corporate Report of Nondividend Distributions. | | |

| | | Yes | No |
|---|---|---|---|
| | If this is a consolidated return, answer here for the parent corporation and on Form 851, Affiliations Schedule, for each subsidiary. | | |
| 7 | At any time during the tax year, did one foreign person own, directly or indirectly, at least 25% of (a) the total voting power of all classes of stock of the corporation entitled to vote or (b) the total value of all classes of stock of the corporation? | | X |
| | If "Yes," enter: (a) Percentage owned ▶ and (b) Owner's country ▶ | | |
| c | The corporation may have to file Form 5472, Information Return of a 25% Foreign-Owned U.S. Corporation or a Foreign Corporation Engaged in a U.S. Trade or Business. Enter number of Forms 5472 attached ▶ | | |
| 8 | Check this box if the corporation issued publicly offered debt instruments with original issue discount ........... ▶ ☐ | | |
| | If checked, the corporation may have to file Form 8281, Information Return for Publicly Offered Original Issue Discount Instruments. | | |
| 9 | Enter the amount of tax-exempt interest received or accrued during the tax year ▶ $ _____ | | |
| 10 | Enter the number of shareholders at the end of the tax year (if 75 or fewer) ▶ | 2 | |
| 11 | If the corporation has an NOL for the tax year and is electing to forego the carryback period, check here ... ▶ ☐ If the corporation is filing a consolidated return, the statement required by Regulations section 1.1502-21(b)(3)(i) or (ii) must be attached or the election will not be valid. | | |
| 12 | Enter the available NOL carryover from prior tax years (Do not reduce it by any deduction on line 29a.) ▶ $ 46,317. | | |

Note: If the corporation, at any time during the tax year, had assets or operated a business in a foreign country or U.S. possession, it may be required to attach Schedule N (Form 1120), Foreign Operations of U.S. Corporations, to this return. See Schedule N for details.

EXHIBIT E
PAGE 3

111621
01-03-02  JWA

Form **1120** (2001)

Form 1120 (2001)   NATIONAL CREDIT SYSTEMS, INC.                         13-4099820   Page 4

## Schedule L   Balance Sheets per Books

| Assets | Beginning of tax year (a) | (b) | End of tax year (c) | (d) |
|---|---|---|---|---|
| 1  Cash | | 845. | | |
| 2a Trade notes and accounts receivable | 96,930. | | 77,739. | |
| b  Less allowance for bad debts | ( ) | 96,930. | ( ) | 77,739. |
| 3  Inventories | | | | |
| 4  U.S. government obligations | | | | |
| 5  Tax-exempt securities | | | | |
| 6  Other current assets (Att. Sch.) | | | | |
| 7  Loans to shareholders | | | | |
| 8  Mortgage and real estate loans | | | | |
| 9  Other investments (Att. Sch.) | | | | |
| 10a Buildings and other depreciable assets | | | 39,133. | |
| b  Less accumulated depreciation | ( ) | | ( 27,027. | 12,106. |
| 11a Depletable assets | | | | |
| b  Less accumulated depletion | ( ) | | ( ) | |
| 12  Land (net of any amortization) | | | | |
| 13a Intangible assets (amortizable only) | | | | |
| b  Less accumulated amortization | ( ) | | ( ) | |
| 14  Other assets (Att. Sch.) | | | | |
| 15  Total assets | | 97,775. | | 89,845. |
| **Liabilities and Shareholders' Equity** | | | | |
| 16  Accounts payable | | 68,914. | | 62,136. |
| 17  Mortgages, notes, bonds payable in less than 1 year | | | | |
| 18  Other current liabilities (Att. Sch.) STMT 6 | | 74,978. | | 51,653. |
| 19  Loans from shareholders | | | | |
| 20  Mortgages, notes, bonds payable in 1 year or more | | | | |
| 21  Other liabilities (Att. Sch.) | | | | |
| 22  Capital stock:  a  Preferred stock | | | | |
| b  Common stock | 200. | 200. | 200. | 200. |
| 23  Additional paid-in capital | | | | |
| 24  Retained earnings - Appropriated (attach schedule) | | | | |
| 25  Retained earnings - Unappropriated | | -46,317. | | -24,144. |
| 26  Adjustments to shareholders' equity (attach schedule) | | | | |
| 27  Less cost of treasury stock | | ( ) | | ( ) |
| 28  Total liabilities and shareholders' equity | | 97,775. | | 89,845. |

Note: The corporation is not required to complete Schedules M-1 and M-2 if the total assets on line 15, column (d) of Schedule L are less than $25,000.

## Schedule M-1   Reconciliation of Income (Loss) per Books With Income per Return

| | | | | | |
|---|---|---|---|---|---|
| 1  Net income (loss) per books | 22,173. | 7  Income recorded on books this year not included on this return (itemize): | | | |
| 2  Federal income tax per books | | Tax-exempt interest  $ | | | |
| 3  Excess of capital losses over capital gains | | | | | |
| 4  Income subject to tax not recorded on books this year (itemize): | | | | | |
| 5  Expenses recorded on books this year not deducted on this return (itemize): | | 8  Deductions on this return not charged against book income this year (itemize): | | | |
| a Depreciation ...... $ | | a Depreciation ....... $ | | | |
| b Charitable contributions ...... $ 400. | | b Charitable contributions ....... $ | | | |
| c Travel and entertainment ... $ | | | | | |
| | 400. | 9  Add lines 7 and 8 | | | |
| 6  Add lines 1 through 5 | 22,573. | 10  Income (line 28, page 1) - line 6 less line 9 | | | 22,573. |

## Schedule M-2   Analysis of Unappropriated Retained Earnings per Books (Line 25, Schedule L)

| | | | | |
|---|---|---|---|---|
| 1  Balance at beginning of year | -46,317. | 5  Distributions:  a Cash | | |
| 2  Net income (loss) per books | 22,173. | b Stock | | |
| 3  Other increases (itemize): | | c Property | | |
| | | 6  Other decreases (itemize): | | |
| | | 7  Add lines 5 and 6 | | |
| 4  Add lines 1, 2, and 3 | -24,144. | 8  Balance at end of year (line 4 less line 7) | | -24,144. |

EXHIBIT PAGE

111631
01-03-02   JWA

| Form **4562**<br>(Rev. March 2002)<br>Department of the Treasury<br>Internal Revenue Service | **Depreciation and Amortization**<br>**(Including Information on Listed Property)**  OTHER<br>▶ See separate instructions.   ▶ Attach to your tax return. | OMB No. 1545-0172<br>**2001**<br>Attachment<br>Sequence No. 67 |
|---|---|---|

Name(s) shown on return: **NATIONAL CREDIT SYSTEMS, INC.**  
Business or activity to which this form relates: OTHER DEPRECIATION  
Identifying number: **13-4099820**

**Part I  Election To Expense Certain Tangible Property Under Section 179** Note: If you have any listed property, complete Part V before you complete Part I.

| | | |
|---|---|---|
| 1 Maximum amount. See instructions for a higher limit for certain businesses | 1 | 24,000. |
| 2 Total cost of section 179 property placed in service (see instructions) | 2 | 39,133. |
| 3 Threshold cost of section 179 property before reduction in limitation | 3 | $200,000 |
| 4 Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0- | 4 | |
| 5 Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see instructions | 5 | 24,000. |

| 6 (a) Description of property | (b) Cost (business use only) | (c) Elected cost | |
|---|---|---|---|
| EQUIPMENT | 39,133. | 24,000. | |
| | | | |
| | | | |
| | | | |

| | | |
|---|---|---|
| 7 Listed property. Enter amount from line 29 | 7 | |
| 8 Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 | 8 | 24,000. |
| 9 Tentative deduction. Enter the smaller of line 5 or line 8 | 9 | 24,000. |
| 10 Carryover of disallowed deduction from line 13 of your 2000 Form 4562 | 10 | |
| 11 Business income limitation. Enter the smaller of business income (not less than zero) or line 5 | 11 | 24,000. |
| 12 Section 179 expense deduction. Add lines 9 and 10, but do not enter more than line 11 | 12 | 24,000. |
| 13 Carryover of disallowed deduction to 2002. Add lines 9 and 10, less line 12 ▶ | 13 | |

Note: Do not use Part II or Part III below for listed property. Instead, use Part V.

**Part II  Special Depreciation Allowance and Other Depreciation (Do not include listed property.)**

| | | |
|---|---|---|
| 14 Special depreciation allowance for certain property (other than listed property) acquired after September 10, 2001 (see instructions) | 14 | |
| 15 Property subject to section 168(f)(1) election (see instructions) | 15 | |
| 16 Other depreciation (including ACRS) (see instructions) | 16 | |

**Part III  MACRS Depreciation (Do not include listed property.) (See instructions.)**

**Section A**

| | | |
|---|---|---|
| 17 MACRS deductions for assets placed in service in tax years beginning before 2001 | 17 | |
| 18 If you are electing under section 168(i)(4) to group any assets placed in service during the tax<br>year into one or more general asset accounts, check here ▶ ☐ | | |

**Section B - Assets Placed in Service During 2001 Tax Year Using the General Depreciation System**

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only - see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g) Depreciation deduction |
|---|---|---|---|---|---|---|
| 19a 3-year property | | | | | | |
| b 5-year property | | 15,133. | 5 YRS. | HY | 200DB | 3,027. |
| c 7-year property | | | | | | |
| d 10-year property | | | | | | |
| e 15-year property | | | | | | |
| f 20-year property | | | | | | |
| g 25-year property | | | 25 yrs. | | S/L | |
| h Residential rental property | / | | 27.5 yrs. | MM | S/L | |
| | / | | 27.5 yrs. | MM | S/L | |
| i Nonresidential real property | / | | 39 yrs. | MM | S/L | |
| | / | | | MM | S/L | |

**Section C - Assets Placed in Service During 2001 Tax Year Using the Alternative Depreciation System**

| | | | | | | |
|---|---|---|---|---|---|---|
| 20a Class life | | | | | S/L | |
| b 12-year | | | 12 yrs. | | S/L | |
| c 40-year | / | | 40 yrs. | MM | S/L | |

**Part IV  Summary (See instructions.)**

| | | |
|---|---|---|
| 21 Listed property. Enter amount from line 28 | 21 | |
| 22 **Total.** Add amounts from line 12, lines 14 through 17, lines 19 and 20 in column (g), and line 21.<br>Enter here and on the appropriate lines of your return. Partnerships and S corporations - see instr. | 22 | 27,027. |
| 23 For assets shown above and placed in service during the current year, enter the<br>portion of the basis attributable to section 263A costs | 23 | |

EXHIBIT  
PAGE 5

116251<br>03-21-02   LHA  **For Paperwork Reduction Act Notice, see separate instructions.**   Form **4562** (2001) (Rev. 3-2002)

Form 4562 (2001) (Rev. 3-2002)   **NATIONAL CREDIT SYSTEMS, INC.**   13-4099820   Page 2

**Part V** Listed Property (Include automobiles, certain other vehicles, cellular telephones, certain computers, and property used for entertainment, recreation, or amusement.)

Note: *For any vehicle for which you are using the standard mileage rate or deducting lease expense, complete only 24a, 24b, columns (a) through (c) of Section A, all of Section B, and Section C if applicable.*

**Section A - Depreciation and Other Information (Caution: See instructions for limits for passenger automobiles.)**

24a  Do you have evidence to support the business/investment use claimed?  ☐ Yes  ☐ No   24b If "Yes," is the evidence written?  ☐ Yes  ☐ No

| (a) Type of property (list vehicles first) | (b) Date placed in service | (c) Business/ investment use percentage | (d) Cost or other basis | (e) Basis for depreciation (business/investment use only) | (f) Recovery period | (g) Method/ Convention | (h) Depreciation deduction | (i) Elected section 179 cost |
|---|---|---|---|---|---|---|---|---|
| 25 Special depreciation allowance for listed property acquired after September 10, 2001, and used more than 50% in a qualified business use ............... | | | | | 25 | | | |
| 26 Property used more than 50% in a qualified business use: | | | | | | | | |
| | :   : | % | | | | | | |
| | :   : | % | | | | | | |
| | :   : | % | | | | | | |
| 27 Property used 50% or less in a qualified business use: | | | | | | | | |
| | :   : | % | | | | S/L · | | |
| | :   : | % | | | | S/L · | | |
| | :   : | % | | | | S/L · | | |
| 28 Add amounts in column (h), lines 25 through 27. Enter here and on line 21, page 1 ............... | | | | | | 28 | | |
| 29 Add amounts in column (i), line 26. Enter here and on line 7, page 1 ............... | | | | | | | 29 | |

**Section B - Information on Use of Vehicles**

Complete this section for vehicles used by a sole proprietor, partner, or other "more than 5% owner," or related person.

If you provided vehicles to your employees, first answer the questions in Section C to see if you meet an exception to completing this section for those vehicles.

| | (a) Vehicle | | (b) Vehicle | | (c) Vehicle | | (d) Vehicle | | (e) Vehicle | | (f) Vehicle | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 30 Total business/investment miles driven during the year (do not include commuting miles) ............... | | | | | | | | | | | | |
| 31 Total commuting miles driven during the year ... | | | | | | | | | | | | |
| 32 Total other personal (noncommuting) miles driven ............... | | | | | | | | | | | | |
| 33 Total miles driven during the year. Add lines 30 through 32 ............... | | | | | | | | | | | | |
| 34 Was the vehicle available for personal use during off-duty hours? | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No |
| 35 Was the vehicle used primarily by a more than 5% owner or related person? | | | | | | | | | | | | |
| 36 Is another vehicle available for personal use? | | | | | | | | | | | | |

**Section C - Questions for Employers Who Provide Vehicles for Use by Their Employees**

Answer these questions to determine if you meet an exception to completing Section B for vehicles used by employees who are **not** more than 5% owners or related persons.

| | Yes | No |
|---|---|---|
| 37 Do you maintain a written policy statement that prohibits all personal use of vehicles, including commuting, by your employees? ............... | | |
| 38 Do you maintain a written policy statement that prohibits personal use of vehicles, except commuting, by your employees? See instructions for vehicles used by corporate officers, directors, or 1% or more owners ............... | | |
| 39 Do you treat all use of vehicles by employees as personal use? ............... | | |
| 40 Do you provide more than five vehicles to your employees, obtain information from your employees about the use of the vehicles, and retain the information received? ............... | | |
| 41 Do you meet the requirements concerning qualified automobile demonstration use? ............... | | |
| Note: *If your answer to 37, 38, 39, 40, or 41 is "Yes," do not complete Section B for the covered vehicles.* | | |

**Part VI** Amortization

| (a) Description of costs | (b) Date amortization begins | (c) Amortizable amount | (d) Code section | (e) Amortization period or percentage | (f) Amortization for this year |
|---|---|---|---|---|---|
| 42 Amortization of costs that begins during your 2001 tax year: | | | | | |
| | :   : | | | | |
| | :   : | | | | |
| 43 Amortization of costs that began before your 2001 tax year ............... | | | | 43 | |
| 44 Total. Add amounts in column (f). See instructions for where to report ............... | | | | 44 | |

EXHIBIT
PAGE

110252
03-20-02

Form 4562 (2001) (Rev. 3-2002)



# We Serve It ™

2219 W. 6th Street, Brooklyn, NY 11223-4620
Phone: (718) 946-1780    Fax: (718) 946-1781

*March 26, 2008*

I, Maria L. Bass, am duly sworn on oath state:

1.      I am the owner of "We Serve It Process Service, which is a process service company in New York, New York.

2.      Loai F. Sarsour is employed as a process server for my company.

3.      That in January 2005 we were contracted to serve documents upon National Credit Systems, Inc., a New York corporation.

4.      On January 11, 2005, we attempted service upon National Credit Systems, Inc. at 2 Fifth Avenue, New York, New York. This address is a residential address, access to which was denied to the process server, Loai F. Sarsour, by the building doorman per Mrs. Samuel Berke's instruction.

5.      On January 12, 2005, we completed upon National Credit Systems, Inc. with an address of 11 E. 36th Street, 10th Floor, New York, New York, by serving the secretary for the company. She refused to provide her last name and I included a physical description in the affidavit of service.

6.      It is our business practice to ensure proper service by identifying the company or the individual that we are contracted to serve.

7.      To date, we recall being asked to serve this same business two (2) months later, but National Credit Systems, Inc. had then moved.

8.      Further sayeth naught.

Dated this 26th day of March, 2008.

Maria L. Bass, Owner of:
"We Serve It Process Service"

Subscribed and sworn to before me, Harry Bass on this 26th day of March, 2008.

Notary Public

HARRY BASS
Notary Public, State of New York
No. 01BA5061277
Qualified in Kings County
Commission Expires July 16, 2011

EXHIBIT F
PAGE 1