IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

ROBERT W. KRAMER, III, d/b/a
CIS INTERNET SERVICES,

        Plaintiff,                    No. 3-03-CV-80109-CRW-TJS

                                                                 FINDINGS,
vs.                                       CONCLUSIONS OF LAW, and
                                               JUDGMENT FOR DEFENDANT
                                           NATIONAL CREDIT SYSTEMS, INC.
NATIONAL CREDIT SYSTEMS, INC.
et al.,

        Defendants.

        The court held a bench trial on June 2, 3, and 4, 2010, addressing only the claims asserted by plaintiff (Robert W. Kramer, III., here "Kramer") against defendant National Credit Systems, Inc. (here "NCS"). The court allowed post-trial briefs, including proposed final decisions, and received summations in person and by telephone conference call. With this piece of the multi-defendant case now fully submitted, the court concludes that Kramer has not proved that NCS is liable for damages on any of Kramer's theories for recovery of damages and other relief. The clerk of court shall enter judgment for defendant NCS and against Kramer, with no costs assessed against either party.[1]

        <u>Background.</u> Before setting forth facts and law governing Kramer's substantive claims against NCS, the court summarizes the extensive backdrop for the trial.

---

[1] Costs are not assessed against NCS, the prevailing party, nor against plaintiff Kramer because the pretrial proceedings during a six-year span involved missteps by each party for which the other was not at fault.

1

Kramer filed two separate lawsuits: this case filed in 2003 against about three hundred named and unnamed defendants, and a separate lawsuit filed in 2004 against several other defendants. In both lawsuits Kramer, an Internet Service Provider using the name "CIS Internet Services," contended that the defendants had flooded his internet service with unsolicited bulk e-mail, severely damaging his capability to serve his internet clientele well. Before the present case reached trial last month, the lawsuit filed in 2004 reached a bench trial in 2008. The trial court entered judgment in favor of one defendant, but in favor of Kramer and against two other defendants for $236,480, 660 based on proved violations of the Iowa anti-spamming and spoofing statute [Iowa Code section 714E.2 (2004)]. But on February 19, 2010, the U.S. Court of Appeals for the Eighth Circuit reversed the judgment against the one defendant who had appealed. Kramer v. Perez, 595 F.3d 825 (8th Cir. 2010). That published decision clarified application of the Iowa statute to factual circumstances similar to those now before this court, giving this court considerable guidance on that part of this case concerning Iowa Code section 714E.2 (2004).

On February 20, 2004, Kramer amended his complaint in this case to seek damages and injunctive relief against NCS, who had not been named in the original complaint. Kramer sought to have a process server in New York City serve NCS, and thereafter the court entered a default judgment against NCS and several other defendants for substantial money damages and injunctive relief. But when Kramer attempted to enforce the default judgment, NCS moved to set aside the default on the ground service had been ineffective. Pursuant to a stipulation of Kramer and NCS, the court set aside the default judgment and scheduled pretrial proceedings, all leading at last to the bench trial held on June 2, 3, and 4, 2010.

Motion to Amend. During the second day of trial, Kramer's counsel orally requested that the court allow him to amend his Amended Complaint to add as defendants NCS Plus, Inc., a new corporation formed in 2005 by the two sole owners /officers of NCS, Chris Rekow and Lynn Goldberg. Kramer thereby sought to pierce NCS, a corporation, and enable any judgment to be enforceable against its owners and their successor corporation NCS Plus, Incorporated. The court immediately denied the motion to amend as untimely. Now that Kramer has renewed the motion, the court again denies the motion on the same ground stated on the record during trial. Kramer gave Rekow, Goldberg, and NCS Plus no advance notice that they would be defendants during the trial of this case, and they had the right to obtain counsel and prepare a defense well in advance of June 3, 2010, the second day of trial.

Critical Issues. Of the several factual and legal issues presented during trial, the court finds dispositive on all liability issues the question whether actions of an outside salesman named Stolars (referred to by one witness as now deceased) may be attributed to NCS. Stated another way, can NCS be held liable on any pleaded theory based on Stolars allegedly saying on the phone to Kramer and his lawyer Pete Welborn words to the effect that he was an NCS manager who was sending e-mail for the company? The court first decides if Stolars was an authorized agent for whose conduct in sending spam NCS is liable, then whether Kramer proved NCS is otherwise liable on any of Kramer's several theories for recovery.

Is NCS liable for Stolars' spamming conduct? Kramer contends NCS is liable for conduct of salesman Stolars. Kramer's evidence on the issue is quite limited. Kramer at trial and his former lawyer Pete Welborn by deposition testified that in 2002 they replied to an e-mail, talked on the telephone with an Aaron Stolars at a number set forth on the e-mail, and

3

received a phone call back from Stolars.  They recalled but did not adequately document that Stolars said he was an NCS manager.  The court finds Kramer and Welborn not sufficiently credible to support this basic contention about Stolars' authority to engage in e-mail marketing as an agent for NCS.  Both had incentive to stretch the truth about what Stolars told them on the phone.  Welborn was very combative during his deposition, arguing with counsel and ineffectively trying to promote Kramer's theory about NCS's liability for the bulk e-mails Stolars may or may not have sent.  Kramer exaggerated in giving extensive testimony on all of his claims of Stolars' misconduct, NCS responsibility, and his claimed damages.  Kramer's testimony was not always consistent with the content of documentary evidence.  He gave guarded and unpersuasive answers when asked about some of  his other activities involving the internet, including his bad faith use of a domain name <menards.net> and attempts to hold and use, for no apparent purpose,  many other domain names.

On the issue of Stolars' relationship to NCS, the most persuasive evidence was the testimony of its officers Rekow and Goldberg, entirely consistent with Exhibit P, the typical written agent agreement NCS had with Stolars and other outside sales representatives.  Nothing in that general agent agreement, nor in the NCS sales manual (Exhibit Q),  mentioned nor implied that Stolars and other sales personnel were encouraged or ever authorized to use e-mail in marketing NCS services.  They were not authorized to engage in any bulk e-mail techniques.  The court finds that neither Rekow nor Goldberg, nor any other authorized NCS agent, initiated SPAM e-mails to market NCS's debt collection business or for any other purpose.  Indeed, the territory NCS served did not embrace Kramer's service area in and around Clinton, Iowa, nor have any reasonable relationship to that geographic area.  No evidence suggests Stolars' e-mail

activity generated business for NCS.  In sum, Stolars was not authorized to say he was a manager for NCS,  and Stolars was not authorized to act for NCS and was not acting as NCS's agent when engaging in bulk e-mail activity, if indeed he was the person who initiated the offending bulk e-mail.

Law.  The applicable legal tests for determining who is an authorized agent are essentially the same under Iowa and Eighth Circuit federal law governing vicarious liability and respondeat superior.  See, e.g.; Godar v. Edwards, 588 N.W. 2d 701, 705 (Iowa 1999); Sandman v. Hagan, 154 N.W.2d 113, 117 (Iowa 1967); Wilde v. County of Kandiyohi, 15 F.3d 103, 105 (8th Cir. 1994); see Ernster v. Luxco, Inc., 596 F.3d 1000 (8th Cir. 2010)(applying common law test derived from Restatement (Second) of Agency §220 (2) (1958)).   Summarized in Community for Creative Non-Violence v. Reid, 490 U.S. 730, 751-52 (1989), that test provides

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished.  Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

Applied here, the preponderance of the credible evidence shows that NCS did not suggest or control Stolars' e-mail marketing activity, had no e-mail marketing skill to give Stolars, did not provide him his e-mail hardware or software, did not exercise control over when and where he worked, hired no assistants for him, and did not provide him benefits usually given employees. On balance, the court concludes NCS is not liable for Stolars' e-mail conduct, if any, whether

criminal or tortious in nature.

Kramer's Theories for NSC Liability.  Given that NCS is not liable for Stolars' conduct in sending bulk e-mail that allegedly harmed Kramer's internet equipment and service, does Kramer still have a basis in fact and law for obtaining damages and injunctive relief from NCS?

Under the Iowa statute governing unsolicited bulk e-mail, Kramer had to prove that NCS used an interactive computer service to initiate the sending of spam. Iowa Code §714E.1 (2) (2004); Kramer, 595 F.3d 825. No credible evidence proved that NCS violated that Iowa statute.

Did NCS violate 18 U.S.C. sections 1962 (a)-(d) and 18 U.S.C. section 1961 (5) by committing mail fraud, wire fraud, and the federal RICO statute? Only could NCS be liable if it knew and actively participated in what Stolars allegedly did in sending bulk unsolicited e-mails. But the credible evidence proves that NCS did not know about and is not liable for Stolars' e-mail conduct, so NCS is not liable under the pleaded federal law theory based on alleged violation of criminal statutes.

Did NCS commit trespass to chattels under Iowa common law? Kramer did not prove that theory that he based entirely on wrongful spam e-mail allegations, because he did not prove that NCS is responsible for initiating spam directed to persons using Kramer's internet service.

Did NCS intentionally interfere with Kramer's contractual relations with others or with his "prospective business advantage?" These theories too hinge on Kramer's allegation that NCS maliciously and improperly sent bulk e-mail that interfered with Kramer's business and

contractual relations.    Kramer did not prove that NCS knew about, had control of, or engaged in any wrongful e-mail activity, even if its outside salesman Stolars initiated e-mail that adversely affected Kramer's business.  Kramer failed to prove the elements for establishing NCS liability on these two Kramer theories requiring intentional wrongful conduct.

Finally, Kramer contends NCS engaged in questionable conduct during discovery proceedings in this case, destroying or withholding evidence that would have helped Kramer prove one or more of his liability theories.  See Doctor John's, Inc. v. City of Sioux City, 486 F. Supp.2d 953, 955 (N.D. Iowa 2007)(outlining spoliation principles).  Kramer did not prove that NCS intentionally or even negligently withheld or destroyed evidence.  NCS was evicted from its offices and lost documents in transit to another location.  This created no inference favoring Kramer.  Kramer simply failed to present credible evidence at trial to prove his multiple theories for wy NCS should be found liable to him for damages and other relief.

Conclusion.  The clerk of court shall enter judgment in favor of defendant National Credit Systems, Inc. and against plaintiff Robert W. Kramer.  Each party shall bear its own costs of this lawsuit.

IT IS SO ORDERED.

Dated this 16th day of July, 2010.

_____
CHARLES R. WOLLE, JUDGE
U.S. DISTRICT COURT